1  William N. Lobel (CA Bar No. 93202)
   Ira D. Kharasch (CA Bar No. 109084)
2  Victoria A. Newmark (CA Bar No. 183581)
   Erin Gray (CA Bar No. 157658)
3  PACHULSKI STANG ZIEHL & JONES LLP
   650 Town Center Drive, Suite 1500
4  Costa Mesa, California  92626
   Telephone:  (714) 384-4740
5  Facsimile:  (714) 384-4741
   E-mail:   wlobel@pszjlaw.com
6            ikharasch@pszjlaw.com
             vnewmark@pszjlaw.com
7            egray@pszjlaw.com

8  [Proposed] Attorneys for Debtor and Debtor-in-Possession,
   Bridgemark Corporation

9

10              **UNITED STATES BANKRUPTCY COURT**

11      **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| | |
|---|---|
| 12  In re: | Case No.: 8:20-bk-10143-TA |
| 13  BRIDGEMARK CORPORATION[1], | Chapter 11 |
| 14       Debtor and Debtor-in Possession, | **NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION OF DEBTOR FOR AN ORDER AUTHORIZING THE DEBTOR TO (I) PAY AND/OR HONOR PREPETITION WAGES, SALARIES, EMPLOYEE BENEFITS, AND OTHER COMPENSATION; (II) REMIT WITHHOLDING OBLIGATIONS; AND (III) MAINTAIN EMPLOYEE COMPENSATION AND BENEFITS PROGRAMS AND PAY RELATED ADMINISTRATIVE OBLIGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Date:  January 17, 2020 Time:  11:00 a.m. Place:  Courtroom 5B 411 West Fourth Street Santa Ana, CA  92701 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[1] The Debtor's last four digits of its taxpayer identification number are (1669).  The headquarters and service address for the above-captioned Debtor is 17671 Irvine Blvd., Suite 217, Tustin, CA  92780.

# TABLE OF CONTENTS

I.  STATEMENT OF FACTS ...................................................................................................... 6

   A.  Jurisdiction and Venue .................................................................................................. 6

   B.  Background ..................................................................................................................... 6

   C.  General Description of the Debtor ................................................................................. 6

   D.  The Employees ............................................................................................................... 7

   E.  The Wages and Benefits Programs ................................................................................ 8

   1.  Wages, Salaries and Associated Withholdings ............................................................ 8

      **2.  Withholding Obligations** ...................................................................................... 10

      **3.  Corporation Credit Cards and Boot Allowance** ................................................ 10

      **4.  Health Benefits** ..................................................................................................... 11

      **5.  Medical Plans** ....................................................................................................... 12

      **6.  401(k) Plan** ............................................................................................................ 13

II.  ARGUMENT .................................................................................................................... 14

   A.  The Court Has Authority Pursuant to Sections 105(a), 363(b), and 507(a)(4) & (a)(5) of the Bankruptcy Code to Grant the Requested Relief .......................................................... 14

   B.  Bankruptcy Rules 6003 and 6004 Should Be Waived .................................................. 18

   C.  No Assumption or Assignment of Employee Benefits ................................................. 18

III.  CONCLUSION ................................................................................................................. 19

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_NY 39688.001 v2

# TABLE OF AUTHORITIES

## Cases

Begier v. IRS,
  496 U.S. 53 (1990) .................................................................................................... 17

In re American Suzuki Motor Corp.,
  8:12-22808-SC (Bankr. C.D. Cal. Nov. 7, 2012) .................................................. 15

In re B&W Enterprises,
  713 F.2d 534 (9th Cir. 1983), ............................................................................... 16

In re CEI Roofing, Inc.,
  315 B.R. 50, 60 (Bankr. N.D. Tex. 2004) .............................................................. 15

In re Equalnet Communications Corp.,
  258 B.R. 368 (Bankr. S.D. Tex. 2000) .................................................................. 15

In re Freedom Communications, Inc.,
  8:15-bk-15311-MW (Bankr. C.D. Cal. Nov. 5, 2015) ........................................... 15

In re Gordian Medical, Inc.,
  8:12-12399-MW (Bankr. C.D. Cal. Mar. 5, 2012) ................................................ 15

In re Gulf Air, Inc.,
  112 B.R. 152, 153 (Bankr. W.D. La. 1989) ........................................................... 15

In re Ocean Park Hotels – Toy, LLC,
  1:10-bk-15358-GM (Bankr. C.D. Cal. May 11, 2010) ........................................... 15

In re Victor Valley Community Hospital,
  6:10-39537-CB (Bankr. C.D. Cal. Sept. 17, 2010) ............................................... 15

Norwest Bank Worthington v. Ahlers,
  485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed. 2d 169 (1988) ........................... 14

## Statutes

11 U.S.C § 105(a) ........................................................................................................ 14

11 U.S.C § 363(c) ........................................................................................................ 14

11 U.S.C. § 1107(a) ....................................................................................................... 6

11 U.S.C. § 1108 ........................................................................................................... 6

11 U.S.C. § 362(d) ...................................................................................................... 14

11 U.S.C. § 363(b) .................................................................................................. 14, 15

11 U.S.C. § 363(c)(1) .................................................................................................. 14

11 U.S.C. § 365 ........................................................................................................... 18

11 U.S.C. § 507(a)(4) ........................................................................................ 9, 14, 15

11 U.S.C. § 507(a)(5) .................................................................................................. 14

11 U.S.C. § 507(a)(8) .................................................................................................. 17

28 U.S.C. § 1409 ........................................................................................................... 6

28 U.S.C. §§ 1334 ......................................................................................................... 6

28 U.S.C. §§ 1408 ......................................................................................................... 6

28 U.S.C. §§ 157 ........................................................................................................... 6

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**Rules**

Fed. R. Bankr. P. 6003 ........................................................................................................... 17, 18

Fed. R. Bankr. P. 6004 ........................................................................................................... 17, 18

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE 20 LARGEST UNSECURED CREDITORS, SECURED CREDITORS AND OTHER PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that Bridgemark Corporation, the above-captioned debtor and debtor in possession ("Bridgemark" or the "Debtor") hereby moves pursuant to sections 105(a) and 366 of the United States Code (the "Bankruptcy Code") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the Debtor, in the ordinary course of business and in accordance with pre-petition practices to (i) pay and/or honor prepetition wages, salaries, employee benefits, and other employee compensation or reimbursements; (ii) remit withholding obligations; and (iii) maintain employee compensation and benefits programs and pay related administrative obligations.

In connection with the normal operation of its business, the Debtor incurs obligations for (a) employee wages and salaries (the "Wages"), (b) employee benefits and other compensation or reimbursements (the "Benefits" and, collectively, with the Wages, the "Wages and Benefits"), (c) withholding obligations ("Withholding Obligations"), (d) vacation and sick leave, and (e) other obligations related to the preservation of the Debtor's work force (collectively, the "Employee Obligations").

Bridgemark has twelve (12) employees, seven (7) of whom are paid salaries and five (5) of whom are paid based on hours worked (the "Employees"). Five of the salaried Employees are insiders (the "Insider Employees"). **This Motion does not seek permission to pay compensation to any Insider Employee**. Any compensation for Insider Employees will be paid only after the Debtor has served the Notices of Setting Insider Compensation as required by the Guidelines of the Office of the United States Trustee ("OUST").

The Employees, who are divided between the field and the office, are vital to the orderly administration of the Debtor's estate and those of its affiliates. Bridgemark also supplements its workforce with numerous independent contractors who provide services such as information technology, engineering, geological services, financial, legal and accounting and field security.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_NY 39688.001 v2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Payment of, and otherwise honoring, the Employee Obligations is necessary to maintain the Employees' morale through the administration of the Debtor's case and to prevent many of the Employees from suffering extreme personal hardship or from leaving the Debtor during the pendency of its case.  Moreover, the payment of, and otherwise honoring, the prepetition Wages and other Employee Obligations in the ordinary course of business will not prejudice general unsecured creditors or materially affect the Debtor's estate because these claims would otherwise be entitled to priority under sections 507(a)(4) and (a)(8)(D) of the Bankruptcy Code and would be entitled to be paid ahead of general unsecured claims.  The payment of such amounts by the Debtor is critical to the Debtor's ability to operate. Should the Employee Obligations not be met, there is a significant risk that the Employees would cease working with the Debtor, and the Debtor's operations would be irreparably damaged, to the detriment of all parties.

**PLEASE TAKE FURTHER NOTICE** that the Debtor requests that the relief sought herein be granted on an emergency basis because the uninterrupted payment and honoring of the Employee Obligations, in the ordinary course of business, is essential to the Debtor's survival in that failure to pay and honor such obligations would damage Employee morale and risk disruption in the operation of the Debtor's business operations.  Among other things, the Debtor's management would be distracted from the reorganization process in an attempt to deal with the issues resulting from non-payment of Employee Obligations, such as Employee attrition or assessments of unpaid obligations directly against insiders.  The Debtor, therefore, pursuant to Rule 2081-1(a)(6) of the of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California, effective January 2, 2019 (the "Local Bankruptcy Rules"),[1] requests that this Motion be heard on an emergency basis.  Granting the relief requested in this Motion on an emergency basis will benefit the estate immediately as set forth above.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on the attached Memorandum of Points and Authorities, the *Declaration of Robert J. Hall, President of Bridgemark Corporation, in Support of Chapter 11 Filing and First Day Motions* (the "First Day Declaration"),

---

[1] Pursuant to Local Bankruptcy Rule 9075-1(a)(3), no separate motion for an expedited hearing is required.

the arguments of counsel, and other admissible evidence properly brought before the Court at or before the hearing on this Motion.  In addition, the Debtor requests that the Court take judicial notice of all documents filed with the Court in this Case.

**PLEASE TAKE FURTHER NOTICE** that any opposition or objection to the Motion must be filed with the Court and served on proposed counsel for the Debtor at the above address any time before the hearing or may be presented at the hearing on the Motion.  Failure to timely object may be deemed by the Court to constitute consent to the relief requested herein.

**PLEASE TAKE FURTHER NOTICE** that the Debtor will serve this Notice and Motion and the attached Memorandum of Points and Authorities, and the First Day Declaration, on:  (1) the Office of the United States Trustee; (2) the creditors appearing on the lists filed in accordance with Fed. R. Bankr. P. 1007(d) by the Debtor unless and until an official committee of unsecured creditors (the "Committee") is appointed, then in that event, to counsel to the Committee; (3) parties that file with the Court and serve upon the Debtor a request for notice of all matters in accordance with Bankruptcy Rule 2002(i); and (4) the Debtor's secured creditors or their counsel of record.

**PLEASE TAKE FURTHER NOTICE** that, to the extent necessary, the Debtor requests that the Court waive compliance with Local Bankruptcy Rule 9075-1(a)(1) and approve service (in addition to the means of service set forth in such Local Bankruptcy Rule) by overnight delivery or email.  In the event that the Court grants the relief requested by the Motion, the Debtor shall provide notice of the entry of the order granting such relief upon each of the foregoing parties and any other parties in interest as the Court directs.  The Debtor submits that such notice is sufficient and that no other or further notice be given.

**WHEREFORE**, for all the foregoing reasons, and such additional reasons as may be advanced at or prior to the hearing on this Motion, the Debtor respectfully requests that the Court enter an order (i) authorizing, but not directing, the Debtor to honor or pay Employee Obligations in the ordinary course of business that come due postpetition; (ii) directing banks and financial

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   institutions to honor and process checks and transfers related thereto; and (iii) granting such other

2   and further relief as is just and proper.

3

4   Dated: January 15, 2020                    PACHULSKI STANG ZIEHL & JONES LLP

5                                              By:    */s/ William N. Lobel*

6                                                     William N. Lobel (CA Bar No. 93202)
                                                      Ira D. Kharasch (CA Bar No. 109084)
7                                                     Victoria A. Newmark (CA Bar No. 183581)
                                                      Erin Gray (CA Bar No. 157658)
8
                                                      [Proposed] Attorneys for Debtor and Debtor-in-
9                                                     Possession, Bridgemark Corporation

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

5

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    STATEMENT OF FACTS**

**A.    Jurisdiction and Venue**

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**B.    Background**

On January 14, 2020 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manage its affairs as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or an examiner in this chapter 11 case, and no official committee has yet been appointed by the Office of the United States Trustee.

**C.    General Description of the Debtor**

Headquartered in Tustin, California, Bridgemark is a family-owned company that owns and operates proven oil and gas reserve leases and leasehold interests in Orange County California.  Bridgemark was incorporated in 1992 with the California Secretary of State. It is a privately held California corporation that has made an election under subchapter S of the Internal Revenue Code. It is owned 100% by the Hall family through various trusts.

As is set forth in more detail in the First Day Declaration, Bridgemark owns 100% of the Working Interests under fourteen (14) oil & gas leases (the "Leases") and two (2) unit agreements (the "Unit Agreements") pursuant to which it operates forty-two (42) active wells (31 producers and 11 injectors) in its Richfield Field in Placentia, California and four (4) active wells in its Dowling Field in Anaheim, California. In addition, Bridgemark has six (6) shut in wells in the Richfield Field. In total, Bridgemark has fifty-two (52) wells in the Richfield and Dowling Fields (the "Wells").  Collectively, the Wells produce approximately 450 BBL (or barrels) of crude oil per day.  Bridgemark also has a number of  Working Interests and/or Royalty Interests in the following oil and gas leasehold interests that it does not operate: (i) Chunchula Unit in Mobile Alabama; (ii) the

Hualde Dome Unit in the Coyote-East Field in Fullerton, CA; and (iii) through one of its wholly-owned subsidiaries (Bridgemark Texas, LLC), leasehold interests in Nueces County, Texas. Additional detailed factual background regarding the Debtor, its business, capital structure, and the events precipitating the commencement of its chapter 11 case is set forth in the concurrently filed First Day Declaration.

**D.    The Employees**

Bridgemark has 12 employees, seven (7) of whom are salaried and five (5) of whom are hourly (the "Employees"). Five of the salaried Employees are insiders (the "Insider Employees").[2] **This Motion does not seek permission to pay compensation to any Insider Employee.**  As was noted above, any compensation for Insider Employees will be paid only after the Debtor has complied with the Notices of Setting Insider Compensation as required by the Guidelines of the Office of the United States Trustee ("OUST").  The Employees, who are divided between the field and the office, are vital to the orderly administration of the Debtor's estate and those of its affiliates. Bridgemark supplements its workforce with certain independent contractors who provide services such as information technology, engineering, geological services, financial, legal and accounting and field security (the "Independent Contractors") whose services are equally important to the smooth administration of the company's operations.[3]

Payment of, and otherwise honoring, the Employee Obligations is necessary to maintain the Employees' morale through the administration of the Debtor's case and to prevent many of the Employees from suffering extreme personal hardship or from leaving the Debtor during the pendency of its case.  Moreover, the payment of, and otherwise honoring, the prepetition Wages and other Employee Obligations in the ordinary course of business will not prejudice general unsecured creditors or materially affect the Debtor's estate because these claims would otherwise be entitled to priority under sections 507(a)(4) and (a)(8)(D) of the Bankruptcy Code and would be entitled to be paid ahead of general unsecured claims.  The payment of such amounts by the Debtor is critical to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[2] The Insider Employees are Robert J. Hall (President, CEO and Chairman of the Board of Directors ("BOD")), Kevin Mugavero (Chief Operating Officer, BOD member), Greg Hall (BOD member), Chad Hall (BOD member), Mark Hall (BOD member).

[3] One Independent Contractor, Carolyn P. Curry is the Chief Financial Officer of the company and is therefore an insider. This Motion does not seek any authority to pay any compensation to Ms. Curry.

7

the Debtor's ability to operate. Should the Employee Obligations not be met, there is a significant risk that the Employees would cease working with the Debtor, and the Debtor's operations would be irreparably damaged, to the detriment of all parties.

**E.    The Wages and Benefits Programs**

The Debtor has been paying and/or honoring the Wages and Benefits in the ordinary course of business up to the Petition Date. The Debtor represents that it will have sufficient funds available postpetition to pay or honor promptly all amounts related to the Wages and Benefits, to the extent described herein, on an ongoing basis and in the ordinary course of business. Consequently, there is no reason for the regular payment of Wages and Benefits to be disrupted, which disruption would directly harm the Debtor's Employees and its reorganization prospects, to the detriment of all parties. The Debtors' aggregate semi-monthly gross payroll (excluding Insider Employees) averages approximately $40,000 which figure includes wages and taxes paid by the Debtor on behalf of the Employees (including withholding taxes), and withholdings for various Employee benefits, which are described more fully below. None of the Debtor's Employees are associated with a union.

**1.    Wages, Salaries and Associated Withholdings**

The Employees typically are paid on the 10th and the 26th of each month (each, an "Employee Pay Date"). The Debtor's last Employee Pay Date before the Petition Date was January 10, 2020, which paid salaried Employees through January 15, 2020 and hourly employees through December 31, 2019. The first Employee Pay Date after the Petition Date will be on January 24, 2020 (the Friday before Sunday, January 26, 2020). This payroll will pay salaried Employees for January 16, 2020-January 31, 2020 and hourly Employees through January 15, 2020.

On the first Employee Pay Date to be funded after the Petition Date (January 24, 2020), approximately $53,000 in Wages (including direct deposits, and accounting for Withholding Obligations) will be owing to Employees. Due to the filing date of January 14, 2020, no **prepetition** Wages are owing to non-insider salaried Employees. Specifically, of the $41,728.33 in Wages that will be paid on January 24, 2020, $21,728.33 will be **postpetition** wages for non-insider salaried Employees for the period 1/16/20-1/31/20 (which is entirely post-petition) and $20,000.00 will be Prepetition Wages owing to hourly Employees for the period 1/1/20-1/14/20.)

8

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The Debtor utilizes Paychex, a payroll processing provider, to process its payroll. Paychex withdraws from the Debtor's bank account the amounts to be paid to Employees and for taxes one (1) business day before the Employee Pay Date. As part of the relief requested hereunder, the Debtor seeks authority to permit Paychex to continue to process the payroll of the Debtor's Employees in the ordinary course of business. On a monthly basis, the Debtor pays Paychex approximately $250 in fees to process payroll. To the extent that any fees are outstanding to Paychex as of the Petition Date, the Debtor requests authority to pay any amounts owing to Paychex in the ordinary course.

By this Motion, the Debtor seeks authority to pay Employees these Wages for the prepetition period. The Debtor will also continue to make such payments on account of Employee Wages for the postpetition period in the ordinary course of business following the Petition Date. As is set forth in the *Debtor's Emergency Motion for Order Authorizing (a) Maintenance of Existing Bank Accounts (b) Continuance of Existing Cash Management System, Bank Accounts, Checks and (c) Related Relief* (the "Cash Management Motion") filed concurrently herewith, the Debtor anticipates that the Employee payroll scheduled to be paid in the ordinary course on January 26, 2020 will be paid from a newly established DIP Account**.** To the extent that any checks remain outstanding from the Pre-Petition period related to Employee Obligations, however, the Debtor requests authority to have said checks reissued out of the newly established DIP Account. The Debtor represents that it has or will have sufficient postpetition funding to pay promptly all Employee Wages and Benefits, to the extent described herein, on an ongoing basis and in the ordinary course of business.[4] The Debtor requests authority to pay all of the processing fees associated with payment of the Employee Wages and Benefits including, but not limited to, any fees owed to any third party administrators (including, without limitation, Paychex), as described in the Motion.

Finally, the Debtor's Independent Contractors invoice the Debtor for their services, typically on a monthly basis in arrears. Compensation of the Independent Contractors historically averages

---

[4] Nothing contained in this Motion, however, shall constitute a request for authority to assume any agreements, policies, or procedures relating to Employee Wages and Benefits. Further, the Debtor seeks to retain the discretion to decide which Employee Wages and Benefits it will pay and honor, and nothing in this Motion shall be deemed an admission by the Debtor that any Employee Wages and Benefits will in fact be paid or honored.

9

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

approximately $8,000 per month (excluding Insiders).  As the amount owing depends on hours actually spent, the precise amount of prepetition amounts owing to the Independent Contractors is unknown.  Accordingly, the Debtor hereby seeks authorization in its discretion to pay up to the amount of $8,000 on account of prepetition amounts that may be owing to Independent Contractors.

No payments to any single Employee or Independent Contractor on account of prepetition Wages (including any  discretionary bonus) will exceed the $13,650 priority cap of section 507(a)(4) of the Bankruptcy Code.

## 2.    Withholding Obligations

In the ordinary course of its business, the Debtor (and Paychex on behalf of the Debtor) routinely withhold from Wages certain amounts that the Debtor is required to transmit to third parties for purposes such as social security and Medicare, federal and state or local income taxes, garnishment, child support or similar obligations pursuant to court order or law (collectively, the "Withholding Obligations").  Prior to the Petition Date, the Debtor's average semi-monthly Withholding Obligations were approximately $10,000, including payroll tax obligations, payroll fees and garnishments. In connection with the relief requested herein, the Debtor requests authority for itself and its agents, on behalf of the Debtor, to remit tax withholdings to the appropriate taxing agencies on account of any current Withholding Obligations that come due during the Case and to satisfy the other Withholding Obligations in connection with the payment of the Wages and Benefits.

## 3.    Corporation Credit Cards and Boot Allowance

Certain of the Debtor's Employees incur business expenses in the ordinary course of performing their duties on behalf of the Debtor.  Such expenses are limited to gas purchases made on corporate credit cards ("Gas Card Purchases")[5] and a boot allowance for the Debtor's field employees (the "Boot Allowance" and, together with the Gas Card Purchases, the "Employee Incurred Expenses").

Historically, the Employee Incurred Expenses are either incurred directly by the Employee and submitted for reimbursement in the case of the Boot Allowance or charged to corporate credit

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[5] The corporate credit cards are issued by Valley Bank and are non-recourse to the Employees.

1   cards issued in the name of certain Employees but invoiced directly to the Debtor.  On an average

2   monthly basis, the Debtor has paid approximately $6,000 on account of the corporate credit cards

3   and an additional $150 for the Boot Allowance reimbursements.

4        As of the Petition Date, the Debtor believes it owes up to the amount of $7,500 on account of

5   Employee Incurred Expenses.  In an abundance of caution, the Debtor seeks authorization to pay in

6   its discretion up to the amount of $10,000 of prepetition Employee Incurred Expenses.  The Debtor

7   also requests authority to continue to honor Employee Incurred Expenses incurred postpetition in the

8   ordinary course of the Debtor's business.

9        **4.    Health Benefits**

10       The Debtor provides health insurance to certain Employees, including medical, vision, and

11  dental, and life insurance (collectively, the "Health Plans"), as described in more detail below.  The

12  administrators of the Health Plans invoice the Debtor in advance for the full amount of fixed

13  premiums owing as of the first of each month for that month's coverage period.  The Debtor requests

14  authority to remit any amounts owing on account of its portion of the Health Plans for the prepetition

15  period.  As described in greater detail below, for the Health Plans, Employees make contributions

16  towards the Health Plan premiums and the Debtor deducts the Employees' portion of the premiums

17  owing under the Health Plans from their Wages every pay period.  The Debtor then provides the

18  administrator of the Health Plan with the full payment of premiums, the cost of which is shared by

19  the Debtor and the Employees.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

11

DOCS_NY:39688.4 10804/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 5.    Medical Plans

The Debtor provides eligible Employees with HMO/PPO medical insurance plans offered by Blue Shield[6] and/or Health Net of California[7] (the "Medical Plans").  The Medical Plans provide an inclusive package of general health, dental, vision and life insurance benefits.  Of the Employees' fixed premiums under the Medical Plans, the Debtor pays 100% for a single Employee and 70% of each dependent.  On an average monthly basis, the Debtor remits approximately $10,000 in the aggregate to Blue Shield and Health Net of California on account of the Medical Plans, approximately $1,600 of which is the Employees' share.  As of the Petition Date, the Debtor is current on the payment of invoiced premiums and claims due and owing to Blue Shield and Health Net of California.  The Debtor seeks authority to pay premiums and claims as they come due under the Medical Plans and to continue to offer the Medical Plans postpetition in the ordinary course of business and in its discretion.  While the Debtor is current on obligations owing, in the abundance of caution, the Debtor seeks herein authorization to pay up to $25,000 (which figure includes the Employees' share) of prepetition claims on account of the Medical Plans.

### 5.    Holidays, Vacation, and Leave

The Debtor pays for ten (10) paid holidays for its Eligible Employees.  The Debtor also provides its Eligible Employees with regular paid time off ("PTO") to cover sick leave and vacation time. PTO is determined in large part by the length of employment of the Eligible Employee.  Full-time Employees are entitled to accrue vacation at a rate per year that is based upon the number of years that such Employee has been employed by the Debtor, up to maximum aggregate limits.  All Employees are also entitled to five (5) days per year of paid sick leave. If not used, the hourly Employees are paid their accrued PTO quarterly and the Debtor seeks authority to continue to do so.  Approximately $7,000.00 in prepetition PTO may be owing to Employees, which would be paid to Employees, should they so desire, on a quarterly basis.

---

[6] The Debtor's Employees are eligible for coverage if they work 32 or more hours per week (the "Eligible Employees").  Eligible Employees are eligible for coverage under the Blue Shield HMO plan.

[7] Mark Hall, director and equity holder of the Debtor, is the only individual covered under the Health Net of California plan. Directors and equity holders Gregson Hall and Chad Hall are the only two individuals covered under the Blue Shield PPO plan. Unless and until the Debtor complies with the Notices of Setting Insider Compensation, any portion of the premiums paid on behalf of Insiders will be reimbursed by the Insider.

12

The Debtor requests authority in its discretion to honor and pay (as indicated above) existing PTO earned by its Employees and continue to honor similar PTO policies regarding vacation time, sick time, and holidays on a postpetition basis and in the ordinary course of the Debtor's business. In the event that an Employee is terminated, then the Debtor requests authority in its sole discretion, to pay such Employee any earned but unused vacation (to the extent the Employee has not elected to have them paid on a quarterly basis) and to the extent that such payments do not exceed the limits under section 507(a)(4) of the Bankruptcy Code when combined with any outstanding prepetition Wages paid.

### 6.  Workers' Compensation Insurance

Under applicable states' laws, the Debtor is required to maintain workers' compensation insurance to provide its Employees with coverage for injury claims arising from or related to their employment with the Debtor.  The Debtor obtains workers' compensation insurance through State Compensation Insurance Fund of California (the "WC Insurer").

The Debtor is required to pay premiums to the WC Insurer (the "Workers' Compensation Obligations").  The Debtor pays premiums to its WC Insurer based on self-reported payroll.  The estimated aggregate annual premium for the 2019/2020 coverage year is approximately $14,700.  At the end of each coverage year, amounts owing by the WC Insurer to the Debtor or vice versa are trued up and come due.  As of the Petition Date, the Debtor is current on monthly premiums.

The Debtor submits that the continuance of its Workers' Compensation Policy is appropriate in the ordinary course of business, but out of an abundance of caution, seeks authority to maintain its workers' compensation and other liability insurance in accordance with applicable law postpetition and to pay all deductibles and premium installments as they come due in the ordinary course of business.  By this Motion, in an abundance of caution, however, the Debtor requests permission to pay any portion of any premium or audit exposure that might arguably be attributable to the prepetition period.

### 6.  401(k) Plan

The Debtor provides Employees with a 401(k) retirement plan (the "401(k) Plan").  The Debtor also matches up to 4% of Employee contributions.  Employee contributions are withheld

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

13

1   from paychecks as Withholding Obligations.  The Debtor's matching contributions are made to the

2   401(k) Plan in connection with each applicable payroll and are subsequently deposited to the

3   participating Employees' respective 401(k) accounts.  To the extent any prepetition 401(k)

4   contributions have not yet been made, the Debtor seeks authority to process those contributions.  The

5   Debtors also seek authority, in their discretion, to continue to their 401(k) Plan postpetition in the

6   ordinary course of business, including continuing to match Employee contributions to the 401(k)

7   Plan consistent with their 401(k) Plan policy. As the 401(k) Plan is a "safe harbor" 401(k) plan that

8   is not subject to the complex annual nondiscrimination tests that apply to traditional 401(k) plans,

9   the Debtor does not employ an auditor for purposes of IRS compliance monitoring or incur any

10  annual expenses that are not covered by the assets of the 401(k) Plan itself.

## II.    ARGUMENT

## A.    The Court Has Authority Pursuant to Sections 105(a), 363(b), and 507(a)(4) & (a)(5) of the Bankruptcy Code to Grant the Requested Relief

14          Statutory support for the requested relief exists pursuant to sections 105(a), 362(d), 363(b)(1)

15  and (c)(1), and 507(a) of the Bankruptcy Code and the "necessity of payment" doctrine (discussed

16  infra).  Bankruptcy Code section 363(b)(1) authorizes a debtor in possession to use property of the

17  estate other than in the ordinary course of business after notice and a hearing.  Bankruptcy Code

18  section 363(c) authorizes a debtor in possession to enter into transactions in the ordinary course of

19  business without notice and a hearing.  Bankruptcy Code section 105(a) further provides, in pertinent

20  part, that this Court may issue any order, process, or judgment that is necessary or appropriate to

21  carry out the provisions of the Bankruptcy Code.

22          Section 105(a) of the Bankruptcy Code empowers the bankruptcy court to "issue any order,

23  process, or judgment that is necessary or appropriate to carry out the provisions of this title."

24  11 U.S.C. § 105(a).  As a general rule, however, the bankruptcy court may not use its section 105(a)

25  powers to authorize an action that would be inconsistent with or prohibited by another provision of

26  the Bankruptcy Code.  *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963,

27  969, 99 L.Ed. 2d 169 (1988).  In other words, section 105(a) must be used in combination with

28  another provision of the Bankruptcy Code.  In this case, the coupling provisions are Bankruptcy

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

14

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Code section 507(a)(4)(A) and 507(a)(5) which grant priority status to employee claims for wages, salaries, or commissions, including vacation, severance, and sick leave pay, and contributions to certain employee benefit plans earned within 180 days before the Petition Date to the extent of $13,650 per Employee.[8]

Where business exigencies require, courts have exercised their equitable powers under Bankruptcy Code section 105(a) to authorize a debtor to pay prepetition employee wage and benefit claims that would be entitled to priority pursuant to Bankruptcy Code sections 507(a)(4) and (5). *See e.g.*, *In re CEI Roofing, Inc.*, 315 B.R. 50, 60 (Bankr. N.D. Tex. 2004) ("Thus, there has evolved a rule for the payment of prepetition wages and benefits which is based on both common sense and the express provisions of the Bankruptcy Code. If employees are not paid, they will leave. If they leave the Debtor's business, the bankruptcy case fails shortly after the filing. No one will benefit from the process."); *In re Gulf Air, Inc.*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989) (endorsing the debtor's payment of prepetition employee wage claims because "retention of skills, organization and reputation for performance must be considered valuable assets contributing to going concern value and aiding rehabilitation where that is possible."). In this district, courts have routinely granted such relief. *See e.g., In re Ruby's Diners, Inc.*, 8:18-bk-13311-CB (Bankr. C.D. Cal. Sept. 10, 2018); *In re Freedom Communications, Inc.*, 8:15-bk-15311-MW (Bankr. C.D. Cal. Nov. 5, 2015) [Dkt. No. 43]; *In re American Suzuki Motor Corp.*, 8:12-22808-SC (Bankr. C.D. Cal. Nov. 7, 2012) [Dkt. No. 67]; *In re Gordian Medical, Inc.*, 8:12-12399-MW (Bankr. C.D. Cal. Mar. 5, 2012) [Dkt. No. 57]; *In re Ocean Park Hotels – Toy, LLC*, 1:10-bk-15358-GM (Bankr. C.D. Cal. May 11, 2010) [Dkt. No. 25]; *In re Victor Valley Community Hospital*, 6:10-39537-CB (Bankr. C.D. Cal. Sept. 17, 2010) [Dkt. No. 30]. Because Bankruptcy Code section 507(a) grants priority payment to certain

---

[8] Bankruptcy Code section 507(a)(4)(A) provides, "The following expenses and claims have priority in the following order . . . Fourth, allowed unsecured claims, but only to the extent of $13,650 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for— (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual . . . . " Bankruptcy Code section 507(a)(5) provides, "The following expenses and claims have priority in the following order . . . Fifth, allowed unsecured claims for contributions to an employee benefit plan— (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first . . . ." Bankruptcy Code section 363(b)(1), which authorizes a debtor in possession to use property of the estate other than in the ordinary course of business after notice and a hearing, may also be another appropriate coupling provision.

15

employee wage and benefit claims, the payment of those claims prior to confirmation of a plan of

reorganization merely represents an acceleration of the payment of those claims, which does not

offend the distribution scheme of the Bankruptcy Code.

This is sometimes called the "Necessity of Payment" doctrine.  As the court explained in *In re Equalnet Communications Corp.*, 258 B.R. 368 (Bankr. S.D. Tex. 2000):

> [C]ertain types of claim enjoy a priority status in addition to sometimes being critical
> to the ongoing nature of the business.  For example, employee wage claims and
> certain tax claims are both priority claims in whole or in part.  The need to pay those
> claims in the ordinary course of business time frame is simple common sense.
> Employees are more likely to stay in place and refrain from actions that are
> detrimental to the case and/or the estate if their pay and benefits remain intact and
> uninterrupted.

*Id.* at 370.

As discussed above, the Wages and PTO owing to Employees relate to the 180-day period

prior to the Petition Date and do not exceed $13,650 per Employee.  In addition, as noted above, the

Debtor is current on all premiums and other amounts owing to third parties for Benefits.  The Debtor

believes, therefore, that the Wages and PTO must be paid in full before any general unsecured

obligations of the Debtor may be satisfied.  Accordingly, payment of such obligations will not

prejudice the rights of general unsecured creditors or other parties in interest.

Furthermore, payment of wages and benefits is critically necessary.  Due to the timing of the

commencement of the Case, the Employees are owed accrued Wages and may also have incurred

expenses that are covered under the Health Plans or Dental Plan for which payment is due

postpetition.  These obligations cannot be paid without the approval of this Court.  The failure of the

Debtor to pay the Employee Obligations timely in the ordinary course of business would result in a

blow to Employee morale that in all likelihood would lead to turnover and other serious and

irreparable disruptions of the Debtor's operations.

The Debtor submits that the amounts to be paid pursuant to this Motion are comparatively

small in comparison to the importance and necessity of preserving the Employees' services and

morale and the difficulties and losses the Debtor will suffer if Employees' morale is low or if they

leave in significant numbers.  The Debtor further submits that there is ample justification for its

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

16

belief that even the slightest delay in providing this relief to its Employees will hamper operations and damage the Debtor's estate. Under these circumstances, the "necessity of payment" doctrine authorizes the requested relief.[9]

Additionally, the Debtor submits that the Withholding Obligations do not constitute property of the Debtor's estate and principally represent employee earnings that governments (in the case of taxes), Employees (in the case of voluntary Withholding Obligations), and judicial authorities (in the case of involuntary Withholding Obligations), have designated for deduction from Employee paychecks. The failure to transfer these withheld funds could result in hardship to certain Employees. The Debtor expects inquiries from garnishers regarding the Debtor's failure to submit, among other things, child support and alimony payments, which are not the Debtor's property but, rather, have been withheld from Employee paychecks. Moreover, if the Debtor cannot remit these amounts, the Debtor's Employees may face legal action due to the Debtor's failure to submit these payments.

The Debtor submits that, with respect to the wage-related taxes that constitute "trust fund" taxes, the payment of such taxes will not prejudice other creditors of the Debtor's estate given that the relevant taxing authorities would have a priority claim under section 507(a)(8) of the Bankruptcy Code with respect to such obligations. Moreover, the monies payable for trust fund taxes, as well as any other funds that are held in trust for the benefit of third parties are not property of the Debtor's estate. *See e.g.*, *Begier v. IRS*, 496 U.S. 53 (1990) (withholding taxes are property held by a debtor in trust for another and, as such, are not property of the debtor's estate).

Finally, the Employees have an intimate knowledge of the operation of the Debtor's business and are critical components to the success of the Case. Deterioration in the morale and welfare of the Employees at this critical time undoubtedly would adversely impact the Debtor and its ability to

---

[9] The Debtor is mindful that outside of the context of employee priority wage and benefit claims, there is a debate as to the proper application of the Necessity of Payment or so-called "Critical Vendor" doctrine. *See e.g., In re Kmart Corp.,* 359 F.3d 866 (7th Cir. 2004). As those cases do not involve priority employee wage claims, however, they are not applicable here. In addition, the Debtor is aware that in *In re B&W Enterprises*, 713 F.2d 534 (9th Cir. 1983), the Ninth Circuit refused to extend the Necessity of Payment doctrine beyond the railroad reorganization case where the debtor made unauthorized postpetition payments to trade suppliers on prepetition debts. That case is factually distinguishable from the instant one in that *B&W* (a) involved ordinary trade suppliers for which the claims were not entitled to priority, (b) did not seek prior court approval for the payments, and (c) was in liquidation, thereby rendering the "necessity" of such payments moot.

17

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

maximize the value of its assets.  Satisfaction of the Wages and Benefits, as described herein, is

necessary to maintain the Employees' morale during the Case and to ensure continued, efficient

operation in order to maximize value for all creditors.

**B.**     **Bankruptcy Rules 6003 and 6004 Should Be Waived**

Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure, "a motion to pay all

or part of a claim that arose before the filing of the petition" shall not be granted by the Court within

twenty-one (21) days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid

immediate and irreparable harm . . . ."  Fed. R. Bankr. P. 6003(b).  For the reasons described herein

and as supported by the First Day Declaration, the Debtor submits that the requirements of Rule

6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and

irreparable harm to the Debtor and its estate.  To implement the foregoing successfully, the Debtor

seeks a waiver of the requirements under Bankruptcy Rule 6004, including the fourteen-day stay of

an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent

these rules are applicable.

**C.**     **No Assumption or Assignment of Employee Benefits**

To the extent any Employee Benefit or related agreement is deemed an executory contract

within the meaning of section 365 of the Bankruptcy Code, the Debtor does not, at this time, seek to

assume any such contract.  Accordingly, if the Court authorizes the payments described above, such

payments should not be deemed to constitute a postpetition assumption or adoption of the programs,

policies, or agreements as executory contracts pursuant to section 365 of the Bankruptcy Code.

Moreover, authorization to pay all amounts on account of Employee Wages and Benefits shall not

affect the Debtor's right to contest the amount or validity of these obligations.

.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

18

### III.    CONCLUSION

**WHEREFORE**, for all the foregoing reasons, and such additional reasons as may be advanced at or prior to the hearing on this Motion, the Debtor respectfully requests that the Court enter an order (i) authorizing, but not directing, the Debtor to honor or pay prepetition and postpetition Employee Obligations in the ordinary course of business that come due postpetition; and (ii) granting such other and further relief as is just and proper.

Dated:  January 15, 2020                    PACHULSKI STANG ZIEHL & JONES LLP

By:    */s/ William N. Lobel*
                                           William N. Lobel (CA Bar No. 93202)
                                           Ira D. Kharasch (CA Bar No. 109084)
                                           Victoria A. Newmark (CA Bar No. 183581)
                                           Erin Gray (CA Bar No. 157658)

                                           [Proposed] Attorneys for Debtor and Debtor-in-Possession, Bridgemark Corporation

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

19

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**650 Town Center Drive, Suite 1500, Costa Mesa, CA  92626**

A true and correct copy of the foregoing document entitled: **NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION OF DEBTOR FOR AN ORDER AUTHORIZING THE DEBTOR TO (I) PAY AND/OR HONOR PREPETITION WAGES, SALARIES, EMPLOYEE BENEFITS, AND OTHER COMPENSATION; (II) REMIT WITHHOLDING OBLIGATIONS; AND (III) MAINTAIN EMPLOYEE COMPENSATION AND BENEFITS PROGRAMS AND PAY RELATED ADMINISTRATIVE OBLIGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** thereof will be served or was served **(a)** on the judge in chamber in the form and manner required by LBR 5005-2(d); and the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **1/15/2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **_____** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **1/15/2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 1/15/2020 | Nancy Lockwood | /s/ Nancy Lockwood |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:327031.1 10804/001

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Nancy S Goldenberg    nancy.goldenberg@usdoj.gov
- William N Lobel    wlobel@pszjlaw.com, nlockwood@pszjlaw.com;jokeefe@pszjlaw.com;banavim@pszjlaw.com
- Robert J Pfister    rpfister@ktbslaw.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

2. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**

Via Messenger
The Honorable Theodor C. Albert
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5085 / Courtesy Bin
Santa Ana, CA 92701-4593

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:327031.1 10804/001

**F 9013-3.1.PROOF.SERVICE**