John T. Kraemer
jkraemer@nfp.com
777 South Hwy 101, Suite 210
Solana Beach, CA 92075
Telephone: (858) 350-1907

Creditor in Pro Per

FILED
MAR 26 2021
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

UNITED STATES BANKRUPTCY COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

BY FAX

In Re:

BRIDGEMARK CORPORATION,

Debtor and Debtor in Possession

Case No.:8:20-bk-10143-TA

SUPPLEMENTAL DECLARATION OF JOHN T. KRAEMER RE: CREDITOR REQUEST FOR CONTINUANCE OF HEARING ON MOTION PURSUANT TO 11 U.S.C. §105(a), 363(b) AND 365 AND FED. R. BANKR. P. 9019 FOR ENTRY OF ORDER:

1) APPROVING SETTLEMENT AGREEMENT BETWEEN THE DEBTOR, ROBERT J. HALL, AND PLACENTIA DEVELOPMENT COMPANY AND RELATED AGREEMENTS;

2) APPROVING SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS;

3) APPROVING ASSUMPTION AND/OR ASSIGNMENT OF CERTAIN EXECUTORY LEASES

Date: March 31, 2021
Time: 10:00 a.m.
Place: ZoomGov

///
///
///
///

# DECLARATION OF JOHN T. KRAEMER

I, John T. Kraemer, do hereby declare as follows:

## Capacity to Testify

1. I am a named creditor in the above bankruptcy case of Debtor, Bridgemark Corporation ("Debtor"). On March 25, 2021 I filed a request for the Court to continue the March 31, 2021 hearing regarding the motion of the Debtor Approving Sale of Substantially All Assets of the Debtor Free and Clear of Liens for at least sixty (60) days. That request was verified by me. I, since the filing of the request on March 25, 2021, have located some additional information which is, I believe, pertinent to my request and thus file this supplement thereto.

2. I have personal knowledge of the facts contained in this declaration and, if called and sworn as a witness would and could testify competently thereto.

## My Prior Offer of $10,000,000.00 To Toll Brothers, Parent Company of PDC for Surface Rights

3. In my request for continuance, I made reference to negotiations years ago regarding accessing mineral rights through the oil fields owned by the Debtor. A second offer of $10,000,000.00 was made in 2016 for 16.4 contiguous acres together with other individual lots according to the terms of a letter of intent. I have located the term sheet offer dated October 18, 2016 made by myself and by Paul Kraemer for the same acreage which is the subject of this motion. A true and correct copy of that offer is attached hereto as Exhibit "A" and incorporated herein by reference. As set forth therein, the offer is for the sum of $10,000,000.00. The deal was not consummated and we did not pursue it further Toll advised me that they needed more time "to understand what they owned."

## The E&B Resources Offer

4. Since the March 25, 2021 filing of my request for continuance, I also reviewed notes of my conversations with the pertinent parties regarding the 2019 E&B Resources offer to Bridgemark for their oil operation referenced in my filed request. That offer, I was advised, was for $15,000,000.00 and included keeping up to ten wells in

production on the 16.4 acre site. My understanding is that those ten wells are either active or dormant and any could be re-started if need be through diligent management or investment by the operator.

### Numeric Solutions

5. In 2020, I was contacted by a company called Numeric Solutions. Numeric Solutions advised me that they had been engaged by the Debtor in connection with the lawsuit with PDC to establish the value of the Debtor's rights regarding the very same operations which appear to be the subject of the motion before the Court. Numeric Solutions told me they were now representing the Debtor and, as I recall, that they looking for a price of $30,000,000.00 for the operation. I replied that I had no interest in the assets at $30,000,000.00 but would be interested at a lower price. I never heard back from Numeric Solutions.

### Other Mineral Rights Owners

6. Since March 26, 2021, I have contacted other mineral rights owners regarding the operations of the Debtor, including 2 owners of KBFMO, LLC. The aforementioned 2 owners are interested to participate in my request for a 60 day continuance of this matter. These 2 owners also will be contacting their other family members who have mineral rights similar to mine. There are still other such owners whose rights are also being affected that may want to be heard. I will need the contact information of such others from the Debtor, other creditors of the Court.

### Conclusion

7. I again request that this matter be continued sixty (60) days for further investigation. The rights of myself and others as mineral owners are in jeopardy of being forever destroyed by way of a hastily filed motion to sell this land without concern to our said rights and, from what I can tell, too low a price with no consideration of the mineral owners. This all without an opportunity to engage proper counsel to represent myself and other mineral right owners similarly situated.

///

I declare under penalty of perjury of the laws of the State of California and the United States of American that the foregoing is true and correct.

Executed this 26th day of March 2021 at Solana Beach, California

*John T. Kraemer*
John T. Kraemer

**EXHIBIT "A"**

Regional President - Jim Boyd

Division Vice President – Frank Su

Toll Brothers, Inc.

11280 Corbin Avenue

Porter Ranch, CA 91326

United States of America

October 18, 2016

RE:    Approximately 16.4 contiguous acres located in the City of Placentia, along with individual encumbered and unencumbered individual lots in the City of Placentia and City of Yorba Linda. Property Descriptions or APNs can be found in the attached Exhibit B. Descriptions and APNs to be verified by the time of signing of a Purchase and Sale Agreement.

Dear Mr. Boyd and Mr. Su,

The Kraemer Family (or "Assignee") herby expresses its interest in purchasing from the Toll Brothers ("Seller") the above referenced properties ("Properties") subject to the following terms and conditions:

1. **Purchase Price**
   The purchase price for the Properties in their present as is condition would be Ten Million Dollars ($10,000,000).

2. **Option Period**
   Assignee would hold an option to purchase the properties for the Purchase Price by making option payments as described below. Assignee would have up to twenty seven (27) months after making the first option payment in which to exercise the option ("Option Period") as further described in the Purchase and Sale Agreement.

3. **Initial Payment**
   Within three (3) business days after execution of the formal option agreement, Assignee would pay to Seller the amount of Fifty Thousand Dollars ($50,000) ("Initial Payment") which would become non-refundable when made, except in the event of a Seller default, and would be applicable to the first Option Payment.

4. **Option Payment**
   Assignee would hold an option to purchase the Property by making option payments of Fifty Thousand Dollars ($50,000) each ("Option Payments") starting on January 31, 2017 and continuing each calendar quarter thereafter for up to eight (8) total quarters at Assignee's election. The Option Payments would become non-refundable when made, except in the event of a Seller default, and would be applicable to the Purchase Price. Failure to make an Option Payment when due would result in a termination of Assignee's option to purchase the Property.

5. **Project Investigation**
   As soon as practical after execution of an option agreement, Seller would provide to Assignee the most current versions of any leases, environmental reports, site plans, tentative or proposed maps, and related reports concerning the Property which are in Seller's possession or are readily obtainable by Seller. Assignee would have until the date of the first Option Payment to review and approve any Seller provided materials and to undertake any and all other investigations of the Property that Assignee may deem appropriate ("Investigation Period").

6. **Payment of Purchase Price**
   The Purchase Price, less the sum of the Options Payments previously made, would be paid in cash at the close of escrow.

7. **Exercise of Option**
   At any time during the Option Period, Assignee may exercise its option to purchase the Property by delivering written notice to Seller to close ninety (90) days after notice and the opening of escrow. Escrow would be held by the Irvine office of First American Title Insurance Company (attn. Jeanne Gould) or by some other mutually acceptable company.

8. **Close of Escrow**
   Escrow would close within three (3) calendar months after the opening of escrow provided that the closing conditions set forth below have been satisfied.

9. **Closing Conditions**
   The close of escrow would occur after the following conditions have either been satisfied or waived in writing by Assignee.

   a. Title to the Property would have been delivered by Seller to Assignee free and clear except for non-delinquent property taxes and any other liens and encumbrances approved by Assignee in writing prior to the end of the Investigation Period. Seller would have caused the title company to issue to Assignee a policy of title insurance covering the Property in the amount equal to the Purchase Price and subject only to those title exceptions approved by Assignee.

   b. Seller would have kept the developable portions of the Property clear of vegetation and toxic materials in compliance with the requirements of all governmental entities having applicable jurisdiction. If escrow fails to close as scheduled due to any of the above conditions not being satisfied or waived by Assignee, then Assignee would be entitled to pursue specific performance or terminate the transaction and obtain an immediate refund of the Option Agreement.

10. **Assignee's Security**
    Legal to review.

11. **Broker's Commission**
    Assignee and Seller would each warrant and represent to the other that no person or entity has a claim for any brokerage commissions, finder's fee, or other compensation in connection with Assignee's purchase of the Property and would agree to indemnify the other party for any such

claim by any broker, finder or other intermediary alleging to have been employed or hired by the indemnifying party.

12. **Processing of Entitlements**
Assignee would be responsible for obtaining land development rights for the Property and would pursue those rights in a diligent manner and its own cost. Seller would cooperate with Assignee's efforts to obtain the land development rights. Assignee and Seller would invite each other to any meetings with governmental officials concerning the Property. Seller shall have the reasonable approval rights. Legal to review.

13. **Title and Escrow Costs**
Seller would pay the cost of a standard coverage ALTA owner's policy of title insurance in the amount of the Purchase Price including a mechanic's lien endorsement, one half of the escrow holder's customary escrow fee, the documentary transfer tax, preparation and recordation of the grant deed, and such other costs as are customarily charged to a seller. Assignee would pay the cost of one half of the escrow holder's customary escrow fee, the additional cost of an extended coverage ALTA owner's policy of title insurance if desired by Assignee, and such other costs as are customarily charged to a buyer in the county the Property is located.

14. **Right to Entry**
During the Option Period, Assignee and Assignee's agents would have the right to enter the Property for any purpose in connection with the purchase of the Property after giving reasonable notice to Seller. Assignee would restore the Property to its condition prior to Assignee's entry. Assignee would keep the Property clear of any mechanic's liens arising out of such entry and would agree to indemnify Seller against any claims resulting from Assignee's or Assignee's agent's entry onto the Property.

15. **Property Encumbrances**
Seller would not borrow against the Property in an amount exceeding half of the minimum Purchase Price, would keep property taxes current, and would not allow other monetary liens to encumber the Property.

16. **Possession**
Seller would deliver possession of the Property to Assignee at the close of escrow free of all rights of third parties to use of the Property. Seller would have the right to remove any improvements from the Property prior to the close of escrow at Seller's expense.

17. **Notice and Cure**
Other than pertaining to the first Option Payment, Assignee or Seller would not be considered to be in default with respect to performance within any time periods contemplated herein unless the non-performing party has received notice of a lapsed time period from the benefitting party and the non–performing party has not performed within ten (10) calendar days after receipt of notice.

18. **Non-Binding Letter**
Except for this section, which shall be binding on the parties, this letter is not intended to be binding on either party in any way but rather is intended as the basis of the formal option agreement ("Agreement") to be prepared by counsel. Assignee and Seller shall use their best

efforts to complete and execute the Agreement within thirty (30) days after the date hereof. During this period, Seller shall neither solicit nor accept offers pertaining to the Property from any other parties and Seller shall negotiate exclusively with Assignee.

This concludes the major points of the proposal. Assignee appreciates your consideration of the proposal and hopes that Seller accepts it by signing and returning a copy of this letter to the parties below at their respective stated addresses, emails, or other suitable method of contact. If Assignee does not receive a signed copy of this letter within ten (10) days from the date of this letter, the proposal is deemed revoked.

Paul and I are available Thursday or Friday for a phone call to discuss the parcels. We are also available to meet with you next time you are in Orange County. We could meet at our family office off the 91 freeway in Anaheim off Weir Canyon, (www.KraemerLand.com). We look forward to meeting with you.

Regards,

_____          *John Kraemer  10-18-16*
Paul Kraemer          Date          John Kraemer          Date
                                    990 Highland Dr., Ste. 301
                                    Solana Beach, CA  92075
                                    john@beachwalk.com
                                    858-344-0355

## Exhibit A

**Placentia**

1) APN 339-061-30 (Backs Lane - Angelina easement)

2) *"Vanderbilt Parcels"*
   548 Vanderbilt - APN: 340-401-29
   554 Vanderbilt - APN: 340-401-28

3) *"Bridgemark Parcel"*
   The property has a final map with 66 lots having sequential, individual APN numbers.

   APNs   341-501-01 thru 341-501-66

   Ownership entity on all is currently shown as "Placentia Development Co LLC".

   Note that the parcels include the 2 small strips along Alta Vista which are APNs: 341-501-63 and 341-501-64

   The street running through the project does not show an APN number. We presume the final map was recorded and the street was deeded over to the city as a public street. Please provide us additional information and verify if these facts are correct, or if there are different facts.

**Yorba Linda:**

4) *"Thaggard Parcel"* -   20260 Thaggard - APN: 357-061-18

5) *"Hidden Hills"* - **Address Reference: Vacant Land, Yorba Linda, CA**
   Real property in the City of Yorba Linda, County of Orange, State of California, described as follows:

   APN: 329-031-02   Lot 2 Tract 13230;
   APN: 329-031-04   Lot 1 Tract 13230;
   APN: 329-032-01   Lot 4 Tract 13230; and
   APN: 329-032-02   Lot 5 Tract 13230.

**SHORT TITLE:** In Re: Bridgemark Corporation
**CASE NO.:** 8:20-bk-10143-TA

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the City of Irvine, County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is 114 Pacifica, Suite 250, Irvine, California 92618. On March 26, 2021, I served the documents named below on the parties in this action as follows:

**DOCUMENTS(S) SERVED:** Supplemental Declaration of John T. Kraemer Creditor Request for Continuance of Hearing on Motion Pursuant to 11 U.S.C. §105(a), 363(b) AND 365 and Fed. R. Bankr. P. 9019 for Entry of Order: 1) Approving Settlement Agreement Between the Debtor, Robert J. Hall, and Placentia Development Company and Related Agreements; 2) Approving Sale of Substantially All Assets of the Debtor Free and Clear of Lines; 3) Approving Assumption And/or Assignment of Certain Executory Leases

**SERVED UPON:**

See Attachment

__XX__ (BY FEDERAL EXPRESS) By placing a true copy in a separate envelope for each addressee named above with the name and address of the person served shown on the envelope as set forth above, and by sealing the envelope and placing it for collection and delivery by Federal Express with delivery fees paid or provided for in accordance with ordinary business practices. I am familiar with the practice at my place of business for collection and processing of correspondence for overnight delivery by Federal Express. Such correspondence will be deposited with a facility regularly maintained by Federal Express for receipt on the same day in the ordinary course of business.

__XX__ I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Executed on March 26, 2021 at Laguna Hills, California.

_____
Heather Hiner

- 1 -

**SHORT TITLE:** In Re: Bridgemark Corporation
**CASE NO.:** 8:20-bk-10143-TA

**Attachment to Proof of Service**

Erin E Gray, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd 13th Fl
Los Angeles, CA 90067
(Counsel for Debtor)

William N. Lobel, Esq.
Theodora Oringher, Esq.
535 Anton Blvd., Ninth Floor
Costa Mesa, CA 92626
(Counsel for Debtor)

Matthew J Pero, Esq.
Anglin Flewelling Rasmussen Campbell Trytten
301 North Lake Avenue
Suite 1100
Pasadena, CA 91101-4158
(Counsel for Debtor)

Frank Cadigan, Esq.
411 W 4th St Ste 7160
Santa Ana, CA 92701
(Counsel for U.S. Trustee)

Nancy S Goldenberg, Esq.
411 W 4th St Ste 7160
Santa Ana, CA 92701
(Counsel for U.S. Trustee)