| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Robert J. Pfister (State Bar No. 241370)<br>Samuel M. Kidder (State Bar No. 284015)<br>KTBS LAW LLP<br>1801 Century Park East, 26th Floor<br>Los Angeles, California 90067<br>Tel:    (310) 407-4000<br>Fax:    (310) 407-9090<br>Email:  rpfister@ktbslaw.com<br>       skidder@ktbslaw.com<br><br>☐ Individual *appearing without an attorney*<br>☒ *Attorney for:* Placentia Development Company, LLC | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

| In re:<br><br>Bridgemark Corporation,<br><br><br><br>                                          Debtor(s) | CASE NO.: 8:20-bk-10143-TA<br><br>CHAPTER: 11<br><br>---<br><br>**NOTICE OF LODGMENT OF ORDER IN BANKRUPTCY CASE RE:** (*title of motion[1]*):<br>Motion Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 365 and Fed. R. Bankr. P. 9019 for Entry of Order [Etc.] |
|---|---|

PLEASE TAKE NOTE that the order titled *Order (I) Approving Settlement Agreement Between the Debtor, Robert J. Hall, and Placentia Development Company and Related Agreements, (II) Approving Sale of Substantially All Assets of the Debtor Free and Clear of Liens, (III) Approving Assumption and/or Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Modifying Order Authorizing Employment of Numeric Solutions LLC, and (V) Granting Related Relief*
was lodged on (*date*) April 22, 2021 and is attached.  This order relates to the motion which is docket number 392.

**PLEASE TAKE FURTHER NOTE that the attached order is identical to the proposed order that was filed with the motion and served on all parties, modified only to conform to the revised proposed order that was filed on March 24, 2021 and served on all parties.  *See* Docket No. 406 at Exhibit A.**

**PLEASE TAKE FURTHER NOTE that Bridgemark Corporation has raised a question as to whether the proposed order should be modified.  Bridgemark's concerns (together with Placentia Development Company, LLC's reply thereto) are set out in the concurrently-filed *Joint Submission Comprising Statement of Bridgemark Corporation Regarding Proposed Order and Response of Placentia Development Company, LLC Thereto.***

---

[1]  Please abbreviate if title cannot fit into text field.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2012*                    Page 1                    **F 9021-1.2.BK.NOTICE.LODGMENT**

1  Robert J. Pfister (CA Bar No. 241370)
   KTBS LAW LLP
2  1801 Century Park East, 26th Floor
   Los Angeles, CA 90067
3  Telephone:    (310) 407-4000
   Facsimile:    (310) 407-9090
4  E-mail:        rpfister@ktbslaw.com

5  Counsel for Placentia Development Company, LLC

6

7                    **UNITED STATES BANKRUPTCY COURT**

8                    **CENTRAL DISTRICT OF CALIFORNIA**

9                        **SANTA ANA DIVISION**

10  In re                                    Case No. 8:20-bk-10143-TA

11  BRIDGEMARK CORPORATION,[1]               Chapter 11

12                          Debtor.          **ORDER (I) APPROVING SETTLEMENT**
                                             **AGREEMENT BETWEEN THE DEBTOR,**
13                                           **ROBERT J. HALL, AND PLACENTIA**
                                             **DEVELOPMENT COMPANY AND**
14                                           **RELATED AGREEMENTS,**
                                             **(II) APPROVING SALE OF**
15                                           **SUBSTANTIALLY ALL ASSETS OF THE**
                                             **DEBTOR FREE AND CLEAR OF LIENS,**
16                                           **(III) APPROVING ASSUMPTION**
                                             **AND/OR ASSIGNMENT OF CERTAIN**
17                                           **EXECUTORY CONTRACTS AND**
                                             **UNEXPIRED LEASES, (IV) MODIFYING**
18                                           **ORDER AUTHORIZING EMPLOYMENT**
                                             **OF NUMERIC SOLUTIONS LLC, AND**
19                                           **(V) GRANTING RELATED RELIEF**

20

21          This matter having come before the Court on the *Motion Pursuant to 11 U.S.C.*

22  *§§ 105(a), 363(b), and 365 and Fed. R. Bankr. P. 9019 for Entry of Order (I) Approving*

23  *Settlement Agreement Between the Debtor, Robert J. Hall, and Placentia Development*

24  *Company and Related Agreements, (II) Approving Sale of Substantially All Assets of the*

25  *Debtor Free and Clear of Liens, (III) Approving Assumption and/or Assignment of Certain*

26  *Executory Contracts and Unexpired Leases, (IV) Modifying Order Authorizing*

27

28  _____
   [1]    The Debtor's last four digits of its taxpayer identification number are (1669), and its headquarters and
         service are 17671 Irvine Boulevard, Suite 217, Tustin, California 92780.

*Employment of Numeric Solutions LLC, and (V) Granting Related Relief* (the "Motion");
and the Court having read and considered the Motion, and being fully advised of the
premises, for good cause shown,

   IT IS HEREBY ORDERED that the Court makes the following findings of fact and
conclusions of law:[2]

   1.  On January 14, 2020 (the "Petition Date"), Bridgemark Corporation
("Bridgemark") filed a voluntary petition for relief under chapter 11 of the Bankruptcy
Code, commencing the above-captioned case (the "Bankruptcy Case"). Bridgemark has
continued to operate its business and manage its affairs as debtor-in-possession pursuant to
Sections 1107(a) and 1108 of the Bankruptcy Code.

   2.  Bridgemark's primary assets are certain oil and gas leases and related
agreements and rights pursuant to which Bridgemark operates wells in Placentia,
California and Anaheim, California. Bridgemark also has certain non-operating interests
in wells in Mobile, Alabama; Fullerton, California; and Nueces County, Texas, as well as
certain other assets, including through Bridgemark's two non-debtor subsidiaries, Gregson
Energy Group, LLC ("Gregson") and Bridgemark Texas, LLC ("Bridgemark Texas," and
together with Gregson, the "Non-Debtor Subsidiaries").

   3.  Of the wells that Bridgemark operates in Placentia, California, a portion are
situated on land (the "PDC Parcel") owned by Placentia Development Company, LLC
("PDC"), on which PDC intends to build residential homes. Bridgemark also owns and
operates an oil tank farm on a portion of real property within the PDC Parcel (the
"Remainder Tract," as more specifically defined in the Transaction Agreement).

   4.  On December 31, 2019, a judgment (as subsequently amended, the "PDC
Judgment") was entered in favor of PDC and against Bridgemark. The PDC Judgment was

---

[2]  The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of
law pursuant to Federal Rule of Civil Procedure 52, made applicable to these proceedings pursuant to
Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"). To the
extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.
To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as
such.

1    originally in the principal amount of approximately $42 million, and was subsequently

2    amended in post-judgment proceedings such that it is now in the principal amount of

3    approximately $38 million.  An appeal of the PDC Judgment (the "Appeal") is pending but

4    stayed.

5          5.      Broadly speaking, and without rehashing the details of the multi-year

6    proceedings that culminated in the PDC Judgment or the parties' claims and contentions

7    related thereto, the PDC Judgment arose out of Bridgemark's failure to plug and abandon

8    oil wells on the PDC Parcel, as the state court determined that Bridgemark was legally

9    obligated to do, such that PDC could develop the residential homes on the PDC Parcel.

10         6.      Pursuant to that certain *Stipulation Between Bridgemark Corporation and*

11   *Placentia Development Company, LLC Regarding (I) Use of Cash Collateral Pursuant to*

12   *11 U.S.C. § 363; and (II) Grant of Adequate Protection Pursuant to 11 U.S.C. § 361, 362,*

13   *and 363* [Docket No. 140] and the order approving same [Docket No. 155], funds subject

14   to PDC's liens have been deposited in a restricted debtor-in-possession account at East

15   West Bank (the "Customer DIP Account").  There is no dispute that PDC holds valid,

16   perfected, first-position liens on the funds in the Customer DIP Account, although

17   Bridgemark's Adversary Proceeding alleges that the liens are avoidable (an allegation PDC

18   denies).

19         7.      On April 14, 2020, the Court entered the *Order Approving Application of*

20   *Debtor and Debtor in Possession to Employ Numeric Solutions LLC as Expert Valuation*

21   *Consultant and John Harris as Expert Witness Effective as of February 24, 2020* [Docket

22   No. 162] (the "Numeric Solutions Employment Order"), pursuant to which the Court

23   authorized Bridgemark to employ and retain John Harris and Numeric Solutions LLC

24   ("Numeric Solutions") as estate professionals.

25         8.      On April 15, 2020, PDC, Bridgemark, and Robert J. Hall ("Hall") executed

26   that certain *Term Sheet* (the "Term Sheet"), as clarified by the correspondence dated

27   August 10, 2020, pursuant to which they agreed to compromise and resolve all disputes

28   between them on the terms set out therein, with the proviso that definitive documentation

(the "Definitive Documentation") would thereafter be executed.  The Term Sheet contemplated that the Definitive Documentation would ultimately bind Hall and also certain related persons and entities (the "Hall-Related Parties").  Hall deposited $4.375 million of his personal funds (the "Hall Cash Contribution") into an escrow account pursuant to the Term Sheet.  This Court approved Bridgemark's entry into the Term Sheet by order dated June 26, 2020.

9.    On May 13, 2020, the Court entered the *Order Authorizing Debtor to Assume Certain Executory Contracts and Unexpired Leases Pursuant to Bankruptcy Code Section 365(a)* [Docket No. 203] (the "Prior Assumption Order"), pursuant to which the Court authorized Bridgemark to assume, *inter alia*, the oil and gas leases listed on Exhibit 1 thereto.

10.    Bridgemark, PDC, and Hall (both individually and as agent for the Hall-Related Parties) have negotiated that certain *Settlement Agreement* (the "Settlement Agreement"), which – together with that certain *Asset Purchase Agreement by and among Bridgemark Corporation, Gregson Energy Group, LLC, and Bridgemark Texas LLC, collectively, as Seller, and California Natural Resources Group Orange County, LLC, Realm California, LLC, and Alatex E&P LLC, collectively, as Buyer* (the "Asset Purchase Agreement"), that certain *Transaction Agreement* (the "Transaction Agreement"), and that certain *Surface Use and Cooperation Agreement* (the "Surface Use Agreement," and together with the Settlement Agreement, the Asset Purchase Agreement, and the Transaction Agreements, the "Agreements") – collectively constitute the Definitive Documentation contemplated by the Term Sheet.  The Hall-Related Parties are specifically identified in Exhibit A to the Settlement Agreement.

11.    California Natural Resources Group, LLC ("CalNRG OC"), a third-party buyer, is a party to the Asset Purchase Agreement, the Transaction Agreement, and the Surface Use Agreement.  Realm California LLC ("Realm"), an affiliate of CalNRG OC, is a party to the Asset Purchase Agreement and the Surface Use Agreement.  Alatex E&P LLC ("Alatex"), an affiliate of CalNRG OC and Realm, is a party to the Asset Purchase

4

1   Agreement.  Except where necessary for the sake of clarity, CalNRG OC, Realm, and

2   Alatex are referred to herein collectively as "Buyer."

3       12.    By the Motion, Bridgemark seeks this Court's approval of the Agreements

4   as well as authorization and direction to proceed with the consummation of the transactions

5   contemplated by the Agreements.

6       13.    In broad strokes – and subject entirely to the specific terms of the actual

7   Agreements – the transactions contemplated by the Agreements will result in essentially all

8   of Bridgemark's non-cash assets that are **not** located on the PDC Parcel being transferred

9   to Buyer, which will also assume certain liabilities of Bridgemark (such purchase, sale,

10  assignment, and assumption collectively, the "Sale Transaction"); PDC, in turn, will

11  transfer the Remainder Tract to Realm, which is CalNRG OC's affiliate; the settlement

12  between PDC, Bridgemark, and Hall (the "Settlement") will go into effect – all on a date

13  (the "Closing Date") to occur shortly following the entry of this Order.  The specific

14  allocation of the Purchased Assets among CalNRG, Realm, and Alatex is set forth in

15  Exhibit A-10 to the Asset Purchase Agreement.

16      14.    The Asset Purchase Agreement provides for Bridgemark to assign certain

17  contracts and agreements (collectively, the "Assigned Contracts") to Buyer.  A complete

18  list of the Assigned Contracts and the cure costs associated therewith is set forth in Exhibit

19  A to the Motion.[3]  Certain of the Assigned Contracts (the "Prior Assumed Contracts") were

20  previously assumed by Bridgemark pursuant to the Prior Assumption Order, as set forth in

21  Exhibit A to the Motion.  The remainder of the Assigned Contracts (the "Remaining

22  Contracts") were not previously assumed.  Through the Motion, Bridgemark seeks to

23  assign the Prior Assumed Contracts and assume and assign the Remaining Contracts to

24  Buyer.

25

26  _____

27  [3]   Inclusion of any document or agreement on the list of Assigned Contracts shall not constitute or be
        deemed to be a determination or admission by Bridgemark, Buyer, PDC, or any other party that such
28      document or agreement is, in fact, an executory contract or unexpired lease within the meaning of the
        Bankruptcy Code, all rights with respect thereto being expressly reserved.

15. Following the Closing Date, Bridgemark will be left with only minimal non-cash assets – primarily the wells on the PDC Parcel. Bridgemark will immediately stop pumping from those wells. John Harris of Numeric Solutions will be appointed Chief Wind-Down Officer. Bridgemark, under the direction and control of the Chief Wind-Down Officer, will pursue confirmation of a non-impaired chapter 11 plan of liquidation that is consistent with the Plan Term Sheet attached to the Settlement Agreement. The primary purpose of the plan will be the creation of a liquidation trust tasked with plugging and abandoning the remaining wells on the PDC Parcel so that PDC can develop residential homes on the PDC Parcel.

16. Following the Closing Date, neither Hall nor any of the Hall-Related Parties shall serve as an officer or director of Bridgemark, nor shall they have any involvement in or right to participate in or manage the business or affairs of Bridgemark's limited remaining operations. In addition, although certain Hall-Related Parties will continue to the be equityholders of Bridgemark until a chapter 11 plan of liquidation that cancels their equity interests takes effect (as provided for in the Plan Term Sheet), they are waiving their rights to receive any distributions on account of such equity (subject to Paragraph 5(c) of the Settlement Agreement) or to vote, manage, or otherwise exercise direct or indirect control with respect to Bridgemark on account of such equity, and thus will have no legal or practical control over Bridgemark such that it would not be lawful or appropriate for Hall or any Hall-Related Parties to have or incur any legal liability on account of such post-Closing-Date equity ownership.

17. The Court has subject matter jurisdiction over the Bankruptcy Case and authority to hear and determine the Motion. The Motion was timely served on the parties listed on the Proof of Service filed with respect to the Motion – which include all potentially affected landowners, royalty holders, regulators, contract counterparties, lienholders, and other parties in interest – and appropriate notice and opportunity to be heard regarding the relief requested has been provided.

18.     The Agreements for which approval is sought and the Sale Transaction and

Settlement contemplated thereby are all fair, reasonable, and in the best interests of

Bridgemark and its estate, creditors, and all parties in interest.  No creditor, royalty holder,

or other party in interest shall have any claim for damages arising from the Sale

Transaction or the transactions contemplated in the Plan Term Sheet, including, without

limitation, the plugging and abandonment contemplated thereby.

19.     Bridgemark has demonstrated sound business reasons for the Agreements

for which approval is sought and the Sale Transaction and Settlement contemplated

thereby, all of which are the product of extensive arms'-length, good-faith negotiations and

are not tainted by fraud or collusion.  All terms of the Sale Transaction and Settlement, as

well as the genesis and background of the arrangements, have been appropriately disclosed

to the Court and all parties in interest.

20.     CalNRG OC, Realm, Alatex, and PDC are acquiring the assets they are

acquiring in good faith and qualify as good-faith purchasers within the meaning of Section

363(m) of the Bankruptcy Code.  CalNRG OC, Realm, and Alatex are not related to

Bridgemark or PDC, and all material terms of the arrangements have been disclosed.

Accordingly, the Agreements may not be avoided and no party shall be entitled to damages

or other recovery pursuant to section 363(n) of the Bankruptcy Code.

21.     The Agreements and the Sale Transaction and Settlement contemplated

thereby constitute the highest and best offer for the assets being acquired, and will provide

a greater recovery for the estate than would be provided by any other available alternative.

Bridgemark's determination that the Agreements and the Sale Transaction and Settlement

contemplated thereby constitute the highest and best offer for the assets being acquired

constitutes a valid and sound exercise of Bridgemark's business judgment.  The

consideration to be provided is fair and adequate, and constitutes reasonably equivalent

value and fair consideration under the Bankruptcy Code and under other applicable law.

22.     No party to the Agreements has entered into the Agreements, or proposes

consummating the Sale Transaction and Settlement contemplated thereby, for the purpose

1  of hindering, delaying, or defrauding any present or future creditor.  Nor is any party to the

2  Agreements a continuation or successor to Bridgemark or its estate.  None of the

3  transactions contemplated by the Agreements amount to a consolidation, merger, or *de*

4  *facto* merger of any entity.

5        23.    PDC, as Bridgemark's secured creditor, has consented to the sale of the

6  assets being sold to Buyer on the terms set forth in the Agreements.  In addition, the

7  automobile lenders, as Bridgemark's other secured creditors, will be paid in full in cash on

8  the Closing Date.  Accordingly, the conditions for a sale free and clear of all encumbrances

9  pursuant to Section 363(f) of  the Bankruptcy Code have been satisfied.

10        24.    Bridgemark has satisfied all conditions and requirements for assumption,

11  assignment, and sale of the assigned contracts and leases pursuant to Section 365 of the

12  Bankruptcy Code.  The assignment of the Prior Assumed Contracts and the assumption

13  and assignment of the Remaining Contracts is a sound exercise of Bridgemark's business

14  judgment.

15        25.    The transactions contemplated by the Agreements are legal, valid, and

16  properly authorized under all applicable provisions of the Bankruptcy Code, including,

17  without limitation, Sections 105(a), 363(b), 363(f), 363(m), 365(a) and 365(f) and all

18  applicable requirements of such Sections have been complied with in respect of the

19  transaction.

20        26.    The appointment of John Harris of Numeric Solutions as Chief Wind-Down

21  Officer – and the modification of the Numeric Solutions Employment Order consistent

22  therewith – is reasonable, appropriate, and in the best interest of the estate and creditors.

23        27.    The relinquishment by Hall and all Hall-Related Parties from all officer and

24  director positions and their exclusion from any involvement in or right to participate in or

25  manage the business or affairs of Bridgemark's limited remaining operations following the

26  Closing Date is reasonable, appropriate, and in the best interest of the estate and creditors.

27  The amendments to Bridgemark's bylaws and the other governance changes provided for

28

1   in the Settlement Agreement are reasonable, appropriate, and in the best interest of the

2   estate and creditors.

3        28.    Given the relinquishment by Hall and the Hall-Related Parties of all direct

4   or indirect control of Bridgemark pursuant to the Settlement Agreement approved hereby,

5   the Court has jurisdiction and authority to conclude and order that neither Hall nor any

6   Hall-Related Party shall have or incur any legal liability solely on account of post-Closing-

7   Date equity ownership of Bridgemark.  *Cf. Blixseth v. Credit Suisse (In re Yellowstone*

8   *Mountain Club, LLC)*, 961 F.3d 1074, 1081–1085 (9th Cir. 2020).

9        29.    This Order is a final and appealable order.  Notwithstanding Bankruptcy

10   Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and

11   Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy

12   Rule 7054, this Court expressly finds that there is no reason to delay implementation of

13   this Order.

14                          *        *        *

15        Based on the foregoing findings of fact and conclusions of law, IT IS HEREBY

16   ORDERED, ADJUDGED, and DECREED that:

17        30.    The Motion is GRANTED in its entirety.

18        31.    The Settlement Agreement, the Asset Purchase Agreement, the Transaction

19   Agreement, and the Surface Use Agreement – including each and every term and condition

20   in each – are approved in their entirety.  The failure to identify any particular provision of

21   the Settlement Agreement or any of the other the Agreements in this Order shall not

22   diminish or impair the effectiveness of such provision, it being the intent of this Court that

23   the Agreements be authorized and approved in their entirety.

24        32.    Bridgemark is authorized and directed to perform all obligations under the

25   Agreements to which it is a party and to take any and all actions reasonably necessary and

26   appropriate to consummate the Agreements and to perform any and all obligations

27   contemplated therein.

28

33.    Upon the closing of the Sale Transaction, Buyer shall take title to and possession of the Purchased Assets (as defined in the Asset Purchase Agreement). Pursuant to Section 363(f), the transfer of title to the Purchased Assets shall be free and clear of any and all liens, interests, and encumbrances except for any obligations expressly assumed by Buyer.

34.    Neither Buyer nor PDC is a successor and neither shall be deemed a successor to Bridgemark or its estate as a result of the consummation of the Sale Transaction or for any other reason.  Buyer and PDC have given substantial consideration under the Agreements for the ultimate benefit of Bridgemark, its estate, and the holders of any encumbrances.  The consideration given by Buyer and PDC is valid and valuable consideration for the releases of any potential claims of successor or transferee liability against Buyer and PDC, which releases shall be deemed to have been given in favor of Buyer and PDC by all holders of encumbrances against Bridgemark or any of the Purchased Assets.  Therefore, following the closing date of the Sale Transaction, all persons and entities are forever prohibited and enjoined from taking any action against Bridgemark or its estate that would adversely affect or interfere with the ability of Bridgemark to sell and transfer the Purchased Assets to Buyer in accordance with the Agreements and this Order to the fullest extent provided by Section 363 or adversely affect or interfere with Buyer's title to or use and enjoyment of the Purchased Assets based on or related to any such Claim or based on any actions Bridgemark may take in this chapter 11 case.

35.    Except as expressly set forth herein or in the Agreements, Buyer and PDC, and their respective successors and assigns shall have no liability for any claim against Bridgemark or its estate, whether known or unknown as of the closing date of the Sale Transaction, now existing or hereafter arising, whether fixed or contingent, whether derivatively, vicariously, as a transferee, successor, *alter ego*, or otherwise, of any kind, nature or character whatsoever, by reason of any theory of law or equity, including claims arising under, without limitation: (i) any employment or labor agreements or the

1 termination thereof relating to Bridgemark; (ii) any pension, welfare, compensation or

2 other employee benefit plans, agreements, practices and programs, including, without

3 limitation, any pension plan of or related to Bridgemark or any affiliate or predecessor or

4 any current or former employee of any of the foregoing, including, without limitation, any

5 participation or other agreements related to any of the foregoing, or the termination of any

6 of the foregoing; (iii) Bridgemark's business operations or the cessation thereof; (iv) any

7 litigation involving Bridgemark; and (v) any employee, workers' compensation,

8 occupational disease or unemployment or temporary disability related law, including,

9 without limitation, claims that might otherwise arise under or pursuant to: (A) the

10 Employee Retirement Income Security Act of 1974, as amended; (B) the Fair Labor

11 Standards Act; (C) Title VII of the Civil Rights Act of 1964; (D) the Federal Rehabilitation

12 Act of 1973; (E) the National Labor Relations Act; (F) the Worker Adjustment and

13 Retraining Notification Act of 1988; (G) the Age Discrimination and Employee Act of

14 1967 and Age Discrimination in Employment Act, as amended; (H) the Americans with

15 Disabilities Act of 1990; (I) the Consolidated Omnibus Budget Reconciliation Act of 1985;

16 (J) the Multiemployer Pension Plan Amendments Act of 1980; (K) state and local

17 discrimination laws; (L) state and local unemployment compensation laws or any other

18 similar state and local laws; (M) state workers' compensation laws; (N) any other state,

19 local or federal employee benefit laws, regulations or rules or other state, local or federal

20 laws, regulations or rules relating to, wages, benefits, employment, or termination of

21 employment with Bridgemark or any predecessor; (O) any antitrust laws; (P) any product

22 liability or similar laws, whether state or federal or otherwise; (Q) any environmental laws,

23 rules, or regulations, including, without limitation, under the Comprehensive

24 Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, or

25 similar state statutes; (R) any bulk sales or similar laws; (S) any federal, state or local tax

26 statutes, regulations or ordinances, including, without limitation, the Internal Revenue

27 Code of 1986, as amended; and (T) any common-law doctrine of *de facto* merger or

28 successor or transferee liability, successor-in-interest liability theory or any other theory of

1  or related to successor liability.  For the avoidance of doubt nothing in this paragraph shall

2  (i) restrict a party's right to appeal this Order or (ii) release Buyer or PDC from an

3  applicable authority's proper exercise of police and regulatory powers.

4        36.     Except as expressly permitted or otherwise specifically provided in the

5  Agreements or this Order, all persons or entities holding encumbrances in all or any

6  portion of the Purchased Assets (other than any obligations expressly assumed by Buyer)

7  arising under or from, or in any way relating to Bridgemark, the Purchased Assets, the

8  operation of Bridgemark's business prior to the Closing Date or the transfer of the

9  Purchased Assets to Buyer, are forever barred, estopped, and permanently enjoined from

10  asserting against Buyer or PDC or their respective successors or assigns, or their property

11  such persons' or entities' encumbrances in and to the Purchased Assets, or in any way

12  asserting or pursuing any action against Buyer, Buyer's successors or assigns, PDC, PDC's

13  successors or assigns, and/or the Purchased Assets based on any theory of successor or

14  transferee liability.  Effective as of the Closing Date, each creditor is authorized and

15  directed to execute such documents and take all other actions as may be necessary to

16  release any encumbrances on the Purchased Assets, as provided herein, that may have been

17  recorded or may otherwise exist.  If a creditor fails to cause an encumbrance to be released,

18  Bridgemark is hereby authorized and directed, and Buyer is hereby authorized, to execute

19  and file such statements, instruments, releases and other documents on behalf of such

20  person or entity with respect to the Purchased Assets.  The transactions authorized herein

21  shall be of full force and effect, regardless of Bridgemark's lack of good standing in any

22  jurisdiction in which it is formed or authorized to transact business.

23        37.     All persons and entities that are in possession of some or all of the

24  Purchased Assets on the closing date of the Sale Transaction are directed to surrender

25  possession of such Purchased Assets to Buyer at the Closing Date.  The provisions of this

26  Order authorizing the Sale Transaction by Bridgemark free and clear of encumbrances

27  shall be self-executing, and none of Bridgemark, Buyer, PDC, or any other party shall be

28  required to execute or file releases, termination statements, assignments, cancellations,

1 consents or other instruments to effectuate, consummate, and/or implement the provisions

2 hereof with respect to the Sale Transaction; *provided, however,* that this paragraph shall

3 not excuse such parties from performing any and all of their respective obligations under

4 the Agreements or as otherwise set forth in this Order, requested by Buyer, or sought by

5 PDC.

6        38.    Without limiting the foregoing, a certified copy of this Order may be filed

7 with the appropriate clerk or recorded to act to cancel any encumbrances on the Purchased

8 Assets of record.  This Order is binding upon all persons and entities, including, without

9 limitation, all filing agents, filing officers, title agents, title companies, recorders of

10 mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental

11 departments, secretaries of state, federal and local officials, and all other persons or entities

12 who may be required by operation of law, the duties of their office, or contract, to accept,

13 file, register, or otherwise record or release any documents or instruments, or who may be

14 required to report or insure any title or state of title in or to any lease; and each of the

15 foregoing persons and entities is hereby directed to accept for filing any and all of  the

16 documents and instruments necessary and appropriate to consummate the transactions of

17 Bridgemark contemplated by the Agreements; provided that nothing herein shall relieve

18 any entity of the obligation to pay filing fees required to be paid under applicable non-

19 bankruptcy law.

20        39.    Any and all governmental recording offices and all other parties, persons, or

21 entities are authorized to accept this Order for recordation on or after the closing date of

22 the Sale Transaction as conclusive evidence of the free, clear, and unencumbered, transfer

23 of all right, title, interest, and ownership in and to the Purchased Assets conveyed to Buyer

24 upon closing.

25        40.    Bridgemark is authorized and directed to (i) assign and sell each of the Prior

26 Assumed Contracts to Buyer, and (ii) assume, assign and sell each Remaining Contract to

27 Buyer, in each case free and clear of all encumbrances, as described herein.  The Prior

28 Assumed Contracts having been previously assumed by Bridgemark, any and all

1  objections to assignment of such leases are overruled.  *Cf. In re Catapult Entm't, Inc.*, 165

2  F.3d 747, 754 (9th Cir. 1999).  Bridgemark is authorized to pay any cure costs, as

3  contemplated by the Asset Purchase Agreement.  The payment of the applicable cure costs

4  (if any) in connection with an Assigned Contract shall (a) effect a cure of all defaults

5  existing thereunder as of the closing date of the Sale Transaction and (b) compensate for

6  any actual pecuniary loss to such non-debtor party resulting from such default.  Buyer shall

7  then have assumed the assigned contracts and assigned real property leases and, pursuant

8  to section 365(f) of the Bankruptcy Code, the assignment by Bridgemark of such Assigned

9  Contracts shall not be a default thereunder.  Upon the payment of the relevant cure costs, if

10  any, Bridgemark shall have no further liabilities to the counterparties to the Assigned

11  Contracts that accrue and become due and payable on or after the closing date of the Sale

12  Transaction except as provided in the Agreements.  *See* 11 U.S.C. § 365(k).

13  41.  Upon the assumption of an assigned contract and assigned real property

14  lease and the payment of the relevant cure costs, if any, in accordance with the Asset

15  Purchase Agreement, Buyer shall be deemed to be substituted for Bridgemark as a party to

16  the applicable Assigned Contracts and Bridgemark shall be relieved, pursuant to Section

17  365(k) of any further liability under the Assigned Contracts.  Bridgemark may assume (in

18  the case of the Remaining Contracts), assign and sell the Assigned Contracts

19  notwithstanding the provision in any such contract or lease that prohibits or restricts

20  assumption or assignment or that conditions assumption or assignment upon the consent of

21  the non-debtor counterparty thereto.

22  42.  To the extent any counterparty to an Assigned Contract failed to timely

23  object to the cure cost set forth in Exhibit A to the Motion, such cure cost shall be deemed

24  to be finally determined as of the entry of this Order and any such counterparty shall be

25  barred from challenging, objecting to or denying the validity of the cure cost.  All other

26  requirements and conditions under Sections 363 and 365 for the assumption by

27  Bridgemark and the assignment and sale to Buyer of the Assigned Contracts have been

28  satisfied.  Upon the closing of the Sale Transaction, in accordance with Sections 363 and

14

365, Buyer shall be fully and irrevocably vested with all legal, equitable, and beneficial

right, title, and interest of Bridgemark under the Assigned Contracts.

43.     To the extent necessary and applicable, Buyer has provided adequate

assurance of future performance under the Assigned Contracts within the meaning of

Sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B).  Pursuant to

Sections 105(a) 363, and 365, all counterparties to the Assigned Contracts are forever

barred and permanently enjoined from raising or asserting against Bridgemark, Buyer, or

PDC any assignment fee, default, breach or claim of pecuniary loss, or condition to

assignment, arising under or related to the Assigned Contracts existing as of the closing of

the Sale Transaction or arising by reason of such closing.

44.     The assumption and assignment of the Remaining Contracts and the

assignment of the Prior Assumed Contracts shall be effective upon entry of this Order

(conditioned upon the closing of the Sale Transaction) notwithstanding timely unresolved

objections to the proposed cure costs, which objections are hereby preserved and shall not

delay closing of the Sale Transaction.  The undisputed portion of the proposed cure costs,

if any, shall be paid by Bridgemark within three days after the Closing Date.  Any

remaining disputed cure costs must be paid by the earlier of (a) when Bridgemark, Buyer,

PDC, and the Assigned Contract counterparty can agree to an amount or (b) the date

specified in a final and non-appealable order entered by this Court.  With respect to any

cure objections resolved by the Court at the hearing on the Motion, Bridgemark shall pay

the cure cost, if any, no later than three days after the Closing Date.  Bridgemark shall use

commercially reasonable efforts to cooperate with Buyer and PDC in resolving any

disputed cure costs arising after the closing of the Sale Transaction.

45.     Nothing in this Order or any documents related to the Motion shall be

construed to authorize or permit the assumption and assignment of any existing Argonaut

Insurance Company ("Argonaut") surety bonds or indemnity agreements.  Nothing herein

shall be deemed to provide Argonaut's consent to the substitution of any principal under

any existing surety bond or existing indemnity agreement.  Except as provided for herein,

the Buyer shall not be (a) liable for any existing surety bonds and/or obligations arising under any existing indemnity agreements to the extent they relate to any assets that are not transferred to the Buyer or (b) deemed a substitute principal under any existing surety bond or as an indemnitor under any existing indemnity agreement.  Nothing in this Order or any other document, agreement or instrument shall be deemed to (a) alter, limit, expand, modify, prejudice, waive, or release any rights or claims of Argonaut against Bridgemark under the existing surety bond, the existing indemnity agreement, or (b) alter, limit, expand, modify, prejudice, waive, or release any rights or claims of Argonaut against any non-debtors.

46.     Nothing contained in any chapter 11 plan confirmed in this case, any order confirming any such chapter 11 plan, any order approving wind-down or dismissal of this chapter 11 case or any subsequent chapter 7 case, or any other order of any type or kind entered in this case shall conflict with or derogate from the provisions of the Agreements or this Order; and to the extent of any conflict or derogation between this Order or the Agreements and such future plan or order, the terms of this Order and the Agreements shall control.

47.     Pursuant to Bankruptcy Rules 7062, 9014, 6004(h), and 6006(d), this Order shall be effective immediately upon entry and Bridgemark, Buyer, Hall, and PDC are authorized to effectuate the Agreements and close the Sale Transaction immediately upon entry of this Order.

48.     The Sale Transaction shall be exempt from any "bulk sales" or similar law of any state or jurisdiction.  There are no brokers involved in consummating the Sale Transaction and no brokers' commissions are due.

49.     This Order may be recorded in the land records and relied upon by title insurers and subsequent purchasers.

50.     Immediately upon entry of the Approval Order, Bridgemark shall cease all active extraction of oil from the PDC Parcel.

51.    The Chief Wind-Down Officer of Bridgemark from and after the Closing Date shall be John Harris of Numeric Solutions, or any successor approved by the Bankruptcy Court and consented to by PDC.  The Chief Wind-Down Officer is authorized to perform the following services: (i) appropriate claim administration, reconciliation, satisfactions, compromises, and/or objections with respect to claims that were not Assumed Obligations transferred to Buyer; (ii) appropriate reconciliation and satisfaction of any remaining obligations to royalty holders that were not Assumed Obligations transferred to Buyer; (iii) appropriate disposition of any remaining assets that were not Purchased Assets transferred to Buyer; (iv) appropriate resolution of all administrative expense applications and related matters of Bankruptcy Case administration, including the filing of all required reports and the payment of all required U.S. Trustee fees; (v) appropriate formulation and prosecution of the liquidating chapter 11 plan contemplated in the Plan Term Sheet; (vi) such other work as is reasonable and appropriate in connection with the administration of the estate and consistent with Bridgemark's bylaws.  The Numeric Solutions Employment Order is hereby modified, effective as of March 10, 2021, to the extent necessary to authorize the performance of such services.

52.    Hall and each Hall-Related Party shall be prohibited from objecting to confirmation of any chapter 11 plan that is materially consistent with the Plan Term Sheet.

53.    Neither Hall nor any Hall-Related Party shall have or incur any legal liability relating solely to or arising solely out of post-Closing-Date equity ownership of Bridgemark.

54.    The releases set forth in Section 5 of the Settlement Agreement are approved, subject to the occurrence of the Closing Date.  For the avoidance of doubt, the Hall-Related Parties (as defined in the Settlement Agreement) are Releasing Parties (as defined in the Settlement Agreement) and are bound by the releases set forth in the Settlement Agreement.

55.    The parties to the Settlement Agreement shall, upon request by one or more of the other parties, execute such further documents, agreements, and contracts, and shall

perform such further acts as may be reasonably necessary to carry out and give full effect to the terms of Agreements.  Without limiting the generality of the preceding sentence, Hall, in his individual capacity and in his capacity as agent and attorney-in-fact for the Hall-Related Parties, and Bridgemark shall cooperate with PDC to adjust, initial, re-execute and re-deliver the Agreements and any amendments thereto, or any closing statements or closing certificates, estoppels, authorizing resolutions, certificates, deeds, assignments, confirmations, ratifications, releases, withdrawals, or similar documents if, as, and when deemed necessary or desirable in the reasonable discretion of PDC to provide for consistency with or to effectuate the agreed terms of the Agreements.

56.    The Agreements, and any related agreements or other instruments (other than this Order), may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further notice to or order of this Court; provided, however, that any such modification, amendment or supplement does not materially affect Bridgemark's estate in adverse fashion.

57.    The terms of this Order shall govern any inconsistencies between the terms of this Order and the Agreements.

58.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

59.    This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms of the Order and the Agreements, as well as all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, and to adjudicate, if necessary, any and all disputes relating in any way to the Agreements or Sale Transaction.

###

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
1801 Century Park East, 26th Floor, Los Angeles, California 90067

A true and correct copy of the foregoing document entitled: **NOTICE OF LODGMENT OF ORDER IN BANKRUPTCY CASE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) April 22, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) April 22, 2021, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 22, 2021 | Shanda D. Pearson | */s/ Shanda D. Pearson* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2012*                                    Page 2                          **F 9021-1.2.BK.NOTICE.LODGMENT**

1.      **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- J Scott Bovitz bovitz@bovitz-spitzer.com
- Frank Cadigan frank.cadigan@usdoj.gov
- Nancy S Goldenberg nancy.goldenberg@usdoj.gov
- Erin E Gray egray@pszjlaw.com
- James KT Hunter jhunter@pszjlaw.com
- Samuel M Kidder skidder@ktbslaw.com
- William N Lobel wlobel@tocounsel.com, jokeefe@tocounsel.com;sschuster@tocounsel.com
- Randall P Mroczynski randym@cookseylaw.com
- Matthew J Pero mpero@afrct.com, lhlista@afrct.com;AFRCTECF@afrct.com
- Kenneth D Peters kpeters@dresslerpeters.com, rmccandless@dresslerpeters.com
- Robert J Pfister rpfister@ktbslaw.com
- Christopher O Rivas crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- Robert K Wing rkw@rkwing.com

2.      **TO BE SERVED BY OVERNIGHT MAIL**:

| | |
|---|---|
| Hon. Theodor C. Albert<br>U.S. Bankruptcy Court<br>Ronald Reagan Federal Building<br>411 W. Fourth Street, Suite 5085<br>Santa Ana, CA 92701 | Nancy S Goldenberg<br>411 W Fourth St Ste 7160<br>Santa Ana, CA 92701-8000 |
| John T. Kraemer<br>777 South Hwy 101, Suite 210<br>Solana Beach, CA 92075 | William N Lobel<br>Theodora Oringher<br>535 Anton Blvd<br>Ninth Floor<br>Costa Mesa, CA 92626 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2012*                              Page 3                **F 9021-1.2.BK.NOTICE.LODGMENT**