1  William N. Lobel (CA Bar No. 93202)
   THEODORA ORINGHER PC
2  535 Anton Boulevard, Ninth Floor
   Costa Mesa, CA 92622-7109
3  Telephone:    (714) 549-6200
   Facsimile:    (714) 549-6201
4  E-mail:    wlobel@tocounsel.com

5  Counsel for Debtor and Debtor in Possession,
   Bridgemark Corporation
6

7  **UNITED STATES BANKRUPTCY COURT**
   **CENTRAL DISTRICT OF CALIFORNIA**
8  **SANTA ANA DIVISION**

9  In re                                    Case No. 8:20-bk-10143-TA

10 BRIDGEMARK CORPORATION,                   Chapter 11

11        Debtor and Debtor-in Possession.[1]  **NOTICE OF ENTRY OF APPROVAL**
                                              **ORDER AND CLOSING OF**
12                                            **TRANSACTIONS CONTEMPLATED**
                                              **THEREBY**
13

14 **TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY**

15 **JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, ALL CREDITORS,**

16 **ROYALTY HOLDERS, AND COUNTERPARTIES TO ASSIGNED CONTRACTS, AND**

17 **OTHER PARTIES IN INTEREST:**

18        PLEASE TAKE NOTICE that, on March 10, 2021, Bridgemark Corporation

19 ("Bridgemark") filed its *Motion Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 365 and Fed. R.*

20 *Bankr. P. 9019 for Entry of Order (I) Approving Settlement Agreement Between the Debtor,*

21 *Robert J. Hall, and Placentia Development Company and Related Agreements, (II) Approving*

22 *Sale of Substantially All Assets of the Debtor Free and Clear of Liens, (III) Approving Assumption*

23 *and/or Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Modifying Order*

24 *Authorizing Employment of Numeric Solutions LLC, and (V) Granting Related Relief* [Docket No.

25 392] (the "Approval Motion").  The Approval Motion was heard on regular notice on March 31,

26

27 _____

28 [1]  The Debtor's last four digits of its taxpayer identification number are (1669).  The headquarters and service address for the above-captioned Debtor is 17671 Irvine Blvd., Suite 217, Tustin, CA 92780.

1    2021, and was unopposed.[2]  The hearing on the Approval Motion was continued to April 7, 2021,

2    and at that hearing, the Court granted the Approval Motion.

3          PLEASE TAKE FURTHER NOTICE that, on April 28, 2021, the Court entered its order

4    [Docket No. 442] (the "Approval Order") granting the Approval Motion.  A copy of the Approval

5    Order is attached hereto as **Exhibit A**.  In addition, the parties entered into two letters clarifying

6    certain matters in advance of closing, the first of which was dated April 22, 2021 and is attached

7    hereto as **Exhibit B**, and the second of which was dated April 28, 2021 and is attached hereto as

8    **Exhibit C**.

9          PLEASE TAKE FURTHER NOTICE that, on April 30, 2021 (the "Closing Date"), all

10    conditions to closing were satisfied or waived and the closing of the transactions occurred.  On the

11    Closing Date, all of the Assigned Contracts (as defined in the Approval Motion), including,

12    without limitation, all of Bridgemark's oil leases, were assigned and/or assumed and assigned to

13    Buyer.  No objections to the assumption and/or assignment of the Assigned Contracts or to the

14    cure costs associated therewith were filed.  Accordingly, the cure costs set forth in Exhibit A to the

15    Approval Motion are "finally determined as of the entry of [the Approval Order] and any

16    [contract] counterparty [is] barred from challenging, objecting to or denying the validity of the

17    cure cost."  Approval Motion ¶ 42.  For the avoidance of doubt, the cure cost associated with each

18    of the Assigned Contracts is $0.00.  *See* Approval Motion, Ex. A.

19

20    May 6, 2021                         THEODORA ORINGHER PC

21                                        By:   */s/ William N. Lobel*
                                              William N. Lobel (State Bar No. 93202)
22
                                        *Counsel for Debtor and Debtor in Possession,*
23                                      *Bridgemark Corporation*

24

25    _____

26    [2]  One royalty holder – John T. Kraemer ("Kraemer") – requested a continuance of the hearing on the Motion, but did

27    not submit any opposition to the Motion.  *See Creditor's Request for Continuance of Hearing [Etc.]* [Docket No.
      408] (the "Request to Continue").  The Court's tentative ruling denying the Request to Continue was read into the
28    record at the March 31 hearing.  In advance of the April 7, 2021 hearing, Kraemer withdrew the Request to
      Continue.

# EXHIBIT A

1    Robert J. Pfister (CA Bar No. 241370)
     KTBS LAW LLP
2    1801 Century Park East, 26th Floor
     Los Angeles, CA 90067
3    Telephone:    (310) 407-4000
     Facsimile:    (310) 407-9090
4    E-mail:       rpfister@ktbslaw.com

5    Counsel for Placentia Development Company, LLC

6

**FILED & ENTERED**

**APR 28 2021**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY deramus  DEPUTY CLERK

7                    **UNITED STATES BANKRUPTCY COURT**

8                     **CENTRAL DISTRICT OF CALIFORNIA**

9                          **SANTA ANA DIVISION**

10    In re                                    Case No. 8:20-bk-10143-TA

11    BRIDGEMARK CORPORATION,[1]                Chapter 11

12                       Debtor.                **ORDER (I) APPROVING SETTLEMENT
                                                AGREEMENT BETWEEN THE DEBTOR,**
13                                              **ROBERT J. HALL, AND PLACENTIA
                                                DEVELOPMENT COMPANY AND**
14                                              **RELATED AGREEMENTS,
                                                (II) APPROVING SALE OF**
15                                              **SUBSTANTIALLY ALL ASSETS OF THE
                                                DEBTOR FREE AND CLEAR OF LIENS,**
16                                              **(III) APPROVING ASSUMPTION
                                                AND/OR ASSIGNMENT OF CERTAIN**
17                                              **EXECUTORY CONTRACTS AND
                                                UNEXPIRED LEASES, (IV) MODIFYING**
18                                              **ORDER AUTHORIZING EMPLOYMENT
                                                OF NUMERIC SOLUTIONS LLC, AND**
19                                              **(V) GRANTING RELATED RELIEF**

20

21         This matter having come before the Court on the *Motion Pursuant to 11 U.S.C.*

22    *§§ 105(a), 363(b), and 365 and Fed. R. Bankr. P. 9019 for Entry of Order (I) Approving*

23    *Settlement Agreement Between the Debtor, Robert J. Hall, and Placentia Development*

24    *Company and Related Agreements, (II) Approving Sale of Substantially All Assets of the*

25    *Debtor Free and Clear of Liens, (III) Approving Assumption and/or Assignment of Certain*

26    *Executory Contracts and Unexpired Leases, (IV) Modifying Order Authorizing*

27    _____

28    [1]    The Debtor's last four digits of its taxpayer identification number are (1669), and its headquarters and
           service are 17671 Irvine Boulevard, Suite 217, Tustin, California 92780.

1  *Employment of Numeric Solutions LLC, and (V) Granting Related Relief* (the "Motion");

2  and the Court having read and considered the Motion, and being fully advised of the

3  premises, for good cause shown,

4       IT IS HEREBY ORDERED that the Court makes the following findings of fact and

5  conclusions of law:[2]

6       1.    On January 14, 2020 (the "Petition Date"), Bridgemark Corporation

7  ("Bridgemark") filed a voluntary petition for relief under chapter 11 of the Bankruptcy

8  Code, commencing the above-captioned case (the "Bankruptcy Case").  Bridgemark has

9  continued to operate its business and manage its affairs as debtor-in-possession pursuant to

10  Sections 1107(a) and 1108 of the Bankruptcy Code.

11      2.    Bridgemark's primary assets are certain oil and gas leases and related

12  agreements and rights pursuant to which Bridgemark operates wells in Placentia,

13  California and Anaheim, California.  Bridgemark also has certain non-operating interests

14  in wells in Mobile, Alabama; Fullerton, California; and Nueces County, Texas, as well as

15  certain other assets, including through Bridgemark's two non-debtor subsidiaries, Gregson

16  Energy Group, LLC ("Gregson") and Bridgemark Texas, LLC ("Bridgemark Texas," and

17  together with Gregson, the "Non-Debtor Subsidiaries").

18      3.    Of the wells that Bridgemark operates in Placentia, California, a portion are

19  situated on land (the "PDC Parcel") owned by Placentia Development Company, LLC

20  ("PDC"), on which PDC intends to build residential homes.  Bridgemark also owns and

21  operates an oil tank farm on a portion of real property within the PDC Parcel (the

22  "Remainder Tract," as more specifically defined in the Transaction Agreement).

23      4.    On December 31, 2019, a judgment (as subsequently amended, the "PDC

24  Judgment") was entered in favor of PDC and against Bridgemark.  The PDC Judgment was

25

26  [2]   The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of
      law pursuant to Federal Rule of Civil Procedure 52, made applicable to these proceedings pursuant to
27    Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").  To the
      extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.
28    To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as
      such.

1  originally in the principal amount of approximately $42 million, and was subsequently

2  amended in post-judgment proceedings such that it is now in the principal amount of

3  approximately $38 million.  An appeal of the PDC Judgment (the "Appeal") is pending but

4  stayed.

5          5.        Broadly speaking, and without rehashing the details of the multi-year

6  proceedings that culminated in the PDC Judgment or the parties' claims and contentions

7  related thereto, the PDC Judgment arose out of Bridgemark's failure to plug and abandon

8  oil wells on the PDC Parcel, as the state court determined that Bridgemark was legally

9  obligated to do, such that PDC could develop the residential homes on the PDC Parcel.

10         6.        Pursuant to that certain *Stipulation Between Bridgemark Corporation and*

11  *Placentia Development Company, LLC Regarding (I) Use of Cash Collateral Pursuant to*

12  *11 U.S.C. § 363; and (II) Grant of Adequate Protection Pursuant to 11 U.S.C. § 361, 362,*

13  *and 363* [Docket No. 140] and the order approving same [Docket No. 155], funds subject

14  to PDC's liens have been deposited in a restricted debtor-in-possession account at East

15  West Bank (the "Customer DIP Account").  There is no dispute that PDC holds valid,

16  perfected, first-position liens on the funds in the Customer DIP Account, although

17  Bridgemark's Adversary Proceeding alleges that the liens are avoidable (an allegation PDC

18  denies).

19         7.        On April 14, 2020, the Court entered the *Order Approving Application of*

20  *Debtor and Debtor in Possession to Employ Numeric Solutions LLC as Expert Valuation*

21  *Consultant and John Harris as Expert Witness Effective as of February 24, 2020* [Docket

22  No. 162] (the "Numeric Solutions Employment Order"), pursuant to which the Court

23  authorized Bridgemark to employ and retain John Harris and Numeric Solutions LLC

24  ("Numeric Solutions") as estate professionals.

25         8.        On April 15, 2020, PDC, Bridgemark, and Robert J. Hall ("Hall") executed

26  that certain *Term Sheet* (the "Term Sheet"), as clarified by the correspondence dated

27  August 10, 2020, pursuant to which they agreed to compromise and resolve all disputes

28  between them on the terms set out therein, with the proviso that definitive documentation

3

1  (the "Definitive Documentation") would thereafter be executed.  The Term Sheet

2  contemplated that the Definitive Documentation would ultimately bind Hall and also

3  certain related persons and entities (the "Hall-Related Parties").  Hall deposited $4.375

4  million of his personal funds (the "Hall Cash Contribution") into an escrow account

5  pursuant to the Term Sheet.  This Court approved Bridgemark's entry into the Term Sheet

6  by order dated June 26, 2020.

7       9.      On May 13, 2020, the Court entered the *Order Authorizing Debtor to*

8  *Assume Certain Executory Contracts and Unexpired Leases Pursuant to Bankruptcy Code*

9  *Section 365(a)* [Docket No. 203] (the "Prior Assumption Order"), pursuant to which the

10  Court authorized Bridgemark to assume, *inter alia*, the oil and gas leases listed on Exhibit

11  1 thereto.

12      10.      Bridgemark, PDC, and Hall (both individually and as agent for the Hall-

13  Related Parties) have negotiated that certain *Settlement Agreement* (the "Settlement

14  Agreement"), which – together with that certain *Asset Purchase Agreement by and among*

15  *Bridgemark Corporation, Gregson Energy Group, LLC, and Bridgemark Texas LLC,*

16  *collectively, as Seller, and California Natural Resources Group Orange County, LLC,*

17  *Realm California, LLC, and Alatex E&P LLC, collectively, as Buyer* (the "Asset Purchase

18  Agreement"), that certain *Transaction Agreement* (the "Transaction Agreement"), and that

19  certain *Surface Use and Cooperation Agreement* (the "Surface Use Agreement," and

20  together with the Settlement Agreement, the Asset Purchase Agreement, and the

21  Transaction Agreements, the "Agreements") – collectively constitute the Definitive

22  Documentation contemplated by the Term Sheet.  The Hall-Related Parties are specifically

23  identified in Exhibit A to the Settlement Agreement.

24      11.      California Natural Resources Group, LLC ("CalNRG OC"), a third-party

25  buyer, is a party to the Asset Purchase Agreement, the Transaction Agreement, and the

26  Surface Use Agreement.  Realm California LLC ("Realm"), an affiliate of CalNRG OC, is

27  a party to the Asset Purchase Agreement and the Surface Use Agreement.  Alatex E&P

28  LLC ("Alatex"), an affiliate of CalNRG OC and Realm, is a party to the Asset Purchase

1  Agreement.  Except where necessary for the sake of clarity, CalNRG OC, Realm, and

2  Alatex are referred to herein collectively as "Buyer."

3          12.     By the Motion, Bridgemark seeks this Court's approval of the Agreements

4  as well as authorization and direction to proceed with the consummation of the transactions

5  contemplated by the Agreements.

6          13.     In broad strokes – and subject entirely to the specific terms of the actual

7  Agreements – the transactions contemplated by the Agreements will result in essentially all

8  of Bridgemark's non-cash assets that are *not* located on the PDC Parcel being transferred

9  to Buyer, which will also assume certain liabilities of Bridgemark (such purchase, sale,

10  assignment, and assumption collectively, the "Sale Transaction"); PDC, in turn, will

11  transfer the Remainder Tract to Realm, which is CalNRG OC's affiliate; the settlement

12  between PDC, Bridgemark, and Hall (the "Settlement") will go into effect – all on a date

13  (the "Closing Date") to occur shortly following the entry of this Order.  The specific

14  allocation of the Purchased Assets among CalNRG, Realm, and Alatex is set forth in

15  Exhibit A-10 to the Asset Purchase Agreement.

16          14.     The Asset Purchase Agreement provides for Bridgemark to assign certain

17  contracts and agreements (collectively, the "Assigned Contracts") to Buyer.  A complete

18  list of the Assigned Contracts and the cure costs associated therewith is set forth in Exhibit

19  A to the Motion.[3]  Certain of the Assigned Contracts (the "Prior Assumed Contracts") were

20  previously assumed by Bridgemark pursuant to the Prior Assumption Order, as set forth in

21  Exhibit A to the Motion.  The remainder of the Assigned Contracts (the "Remaining

22  Contracts") were not previously assumed.  Through the Motion, Bridgemark seeks to

23  assign the Prior Assumed Contracts and assume and assign the Remaining Contracts to

24  Buyer.

25

26  _____

27  [3]    Inclusion of any document or agreement on the list of Assigned Contracts shall not constitute or be
        deemed to be a determination or admission by Bridgemark, Buyer, PDC, or any other party that such
28      document or agreement is, in fact, an executory contract or unexpired lease within the meaning of the
        Bankruptcy Code, all rights with respect thereto being expressly reserved.

15.     Following the Closing Date, Bridgemark will be left with only minimal non-cash assets – primarily the wells on the PDC Parcel.  Bridgemark will immediately stop pumping from those wells.  John Harris of Numeric Solutions will be appointed Chief Wind-Down Officer.  Bridgemark, under the direction and control of the Chief Wind-Down Officer, will pursue confirmation of a non-impaired chapter 11 plan of liquidation that is consistent with the Plan Term Sheet attached to the Settlement Agreement.  The primary purpose of the plan will be the creation of a liquidation trust tasked with plugging and abandoning the remaining wells on the PDC Parcel so that PDC can develop residential homes on the PDC Parcel.

16.     Following the Closing Date, neither Hall nor any of the Hall-Related Parties shall serve as an officer or director of Bridgemark, nor shall they have any involvement in or right to participate in or manage the business or affairs of Bridgemark's limited remaining operations.  In addition, although certain Hall-Related Parties will continue to the be equityholders of Bridgemark until a chapter 11 plan of liquidation that cancels their equity interests takes effect (as provided for in the Plan Term Sheet), they are waiving their rights to receive any distributions on account of such equity (subject to Paragraph 5(c) of the Settlement Agreement) or to vote, manage, or otherwise exercise direct or indirect control with respect to Bridgemark on account of such equity, and thus will have no legal or practical control over Bridgemark such that it would not be lawful or appropriate for Hall or any Hall-Related Parties to have or incur any legal liability on account of such post-Closing-Date equity ownership.

17.     The Court has subject matter jurisdiction over the Bankruptcy Case and authority to hear and determine the Motion.  The Motion was timely served on the parties listed on the Proof of Service filed with respect to the Motion – which include all potentially affected landowners, royalty holders, regulators, contract counterparties, lienholders, and other parties in interest – and appropriate notice and opportunity to be heard regarding the relief requested has been provided.

6

1       18.     The Agreements for which approval is sought and the Sale Transaction and

2 Settlement contemplated thereby are all fair, reasonable, and in the best interests of

3 Bridgemark and its estate, creditors, and all parties in interest.  Subject to Paragraph 57

4 below, no creditor, royalty holder, or other party in interest shall have any claim for

5 damages arising from the Sale Transaction or the transactions contemplated in the Plan

6 Term Sheet, including, without limitation, the plugging and abandonment contemplated

7 thereby.

8       19.     Bridgemark has demonstrated sound business reasons for the Agreements

9 for which approval is sought and the Sale Transaction and Settlement contemplated

10 thereby, all of which are the product of extensive arms'-length, good-faith negotiations and

11 are not tainted by fraud or collusion.  All terms of the Sale Transaction and Settlement, as

12 well as the genesis and background of the arrangements, have been appropriately disclosed

13 to the Court and all parties in interest.

14       20.     CalNRG OC, Realm, Alatex, and PDC are acquiring the assets they are

15 acquiring in good faith and qualify as good-faith purchasers within the meaning of Section

16 363(m) of the Bankruptcy Code.  CalNRG OC, Realm, and Alatex are not related to

17 Bridgemark or PDC, and all material terms of the arrangements have been disclosed.

18 Accordingly, the Agreements may not be avoided and no party shall be entitled to damages

19 or other recovery pursuant to section 363(n) of the Bankruptcy Code.

20       21.     The Agreements and the Sale Transaction and Settlement contemplated

21 thereby constitute the highest and best offer for the assets being acquired, and will provide

22 a greater recovery for the estate than would be provided by any other available alternative.

23 Bridgemark's determination that the Agreements and the Sale Transaction and Settlement

24 contemplated thereby constitute the highest and best offer for the assets being acquired

25 constitutes a valid and sound exercise of Bridgemark's business judgment.  The

26 consideration to be provided is fair and adequate, and constitutes reasonably equivalent

27 value and fair consideration under the Bankruptcy Code and under other applicable law.

28

1        22.    No party to the Agreements has entered into the Agreements, or proposes

2  consummating the Sale Transaction and Settlement contemplated thereby, for the purpose

3  of hindering, delaying, or defrauding any present or future creditor. Nor is any party to the

4  Agreements a continuation or successor to Bridgemark or its estate. None of the

5  transactions contemplated by the Agreements amount to a consolidation, merger, or *de*

6  *facto* merger of any entity.

7        23.    PDC, as Bridgemark's secured creditor, has consented to the sale of the

8  assets being sold to Buyer on the terms set forth in the Agreements. In addition, the

9  automobile lenders, as Bridgemark's other secured creditors, will be paid in full in cash on

10 the Closing Date. Accordingly, the conditions for a sale free and clear of all encumbrances

11 pursuant to Section 363(f) of the Bankruptcy Code have been satisfied.

12       24.    Bridgemark has satisfied all conditions and requirements for assumption,

13 assignment, and sale of the assigned contracts and leases pursuant to Section 365 of the

14 Bankruptcy Code. The assignment of the Prior Assumed Contracts and the assumption

15 and assignment of the Remaining Contracts is a sound exercise of Bridgemark's business

16 judgment.

17       25.    The transactions contemplated by the Agreements are legal, valid, and

18 properly authorized under all applicable provisions of the Bankruptcy Code, including,

19 without limitation, Sections 105(a), 363(b), 363(f), 363(m), 365(a) and 365(f) and all

20 applicable requirements of such Sections have been complied with in respect of the

21 transaction.

22       26.    The appointment of John Harris of Numeric Solutions as Chief Wind-Down

23 Officer – and the modification of the Numeric Solutions Employment Order consistent

24 therewith – is reasonable, appropriate, and in the best interest of the estate and creditors.

25       27.    The relinquishment by Hall and all Hall-Related Parties from all officer and

26 director positions and their exclusion from any involvement in or right to participate in or

27 manage the business or affairs of Bridgemark's limited remaining operations following the

28 Closing Date is reasonable, appropriate, and in the best interest of the estate and creditors.

1  The amendments to Bridgemark's bylaws and the other governance changes provided for

2  in the Settlement Agreement are reasonable, appropriate, and in the best interest of the

3  estate and creditors.

4          28.      Given the relinquishment by Hall and the Hall-Related Parties of all direct

5  or indirect control of Bridgemark pursuant to the Settlement Agreement approved hereby,

6  the Court has jurisdiction and authority to conclude and order that neither Hall nor any

7  Hall-Related Party shall have or incur any legal liability solely on account of post-Closing-

8  Date equity ownership of Bridgemark.  *Cf. Blixseth v. Credit Suisse (In re Yellowstone*

9  *Mountain Club, LLC)*, 961 F.3d 1074, 1081–1085 (9th Cir. 2020).

10         29.      This Order is a final and appealable order.  Notwithstanding Bankruptcy

11  Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and

12  Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy

13  Rule 7054, this Court expressly finds that there is no reason to delay implementation of

14  this Order.

15                                  *        *        *

16         Based on the foregoing findings of fact and conclusions of law, IT IS HEREBY

17  ORDERED, ADJUDGED, and DECREED that:

18         30.      The Motion is GRANTED in its entirety.

19         31.      The Settlement Agreement, the Asset Purchase Agreement, the Transaction

20  Agreement, and the Surface Use Agreement – including each and every term and condition

21  in each – are approved in their entirety.  The failure to identify any particular provision of

22  the Settlement Agreement or any of the other the Agreements in this Order shall not

23  diminish or impair the effectiveness of such provision, it being the intent of this Court that

24  the Agreements be authorized and approved in their entirety.

25         32.      Bridgemark is authorized and directed to perform all obligations under the

26  Agreements to which it is a party and to take any and all actions reasonably necessary and

27  appropriate to consummate the Agreements and to perform any and all obligations

28  contemplated therein.

33.    Upon the closing of the Sale Transaction, Buyer shall take title to and possession of the Purchased Assets (as defined in the Asset Purchase Agreement). Pursuant to Section 363(f), the transfer of title to the Purchased Assets shall be free and clear of any and all liens, interests, and encumbrances except for any obligations expressly assumed by Buyer.

34.    Neither Buyer nor PDC is a successor and neither shall be deemed a successor to Bridgemark or its estate as a result of the consummation of the Sale Transaction or for any other reason.  Buyer and PDC have given substantial consideration under the Agreements for the ultimate benefit of Bridgemark, its estate, and the holders of any encumbrances.  The consideration given by Buyer and PDC is valid and valuable consideration for the releases of any potential claims of successor or transferee liability against Buyer and PDC, which releases shall be deemed to have been given in favor of Buyer and PDC by all holders of encumbrances against Bridgemark or any of the Purchased Assets.  Therefore, following the closing date of the Sale Transaction, all persons and entities are forever prohibited and enjoined from taking any action against Bridgemark or its estate that would adversely affect or interfere with the ability of Bridgemark to sell and transfer the Purchased Assets to Buyer in accordance with the Agreements and this Order to the fullest extent provided by Section 363 or adversely affect or interfere with Buyer's title to or use and enjoyment of the Purchased Assets based on or related to any such Claim or based on any actions Bridgemark may take in this chapter 11 case.

35.    Except as expressly set forth herein or in the Agreements, Buyer and PDC, and their respective successors and assigns shall have no liability for any claim against Bridgemark or its estate, whether known or unknown as of the closing date of the Sale Transaction, now existing or hereafter arising, whether fixed or contingent, whether derivatively, vicariously, as a transferee, successor, *alter ego*, or otherwise, of any kind, nature or character whatsoever, by reason of any theory of law or equity, including claims arising under, without limitation: (i) any employment or labor agreements or the

1   termination thereof relating to Bridgemark; (ii) any pension, welfare, compensation or

2   other employee benefit plans, agreements, practices and programs, including, without

3   limitation, any pension plan of or related to Bridgemark or any affiliate or predecessor or

4   any current or former employee of any of the foregoing, including, without limitation, any

5   participation or other agreements related to any of the foregoing, or the termination of any

6   of the foregoing; (iii) Bridgemark's business operations or the cessation thereof; (iv) any

7   litigation involving Bridgemark; and (v) any employee, workers' compensation,

8   occupational disease or unemployment or temporary disability related law, including,

9   without limitation, claims that might otherwise arise under or pursuant to: (A) the

10  Employee Retirement Income Security Act of 1974, as amended; (B) the Fair Labor

11  Standards Act; (C) Title VII of the Civil Rights Act of 1964; (D) the Federal Rehabilitation

12  Act of 1973; (E) the National Labor Relations Act; (F) the Worker Adjustment and

13  Retraining Notification Act of 1988; (G) the Age Discrimination and Employee Act of

14  1967 and Age Discrimination in Employment Act, as amended; (H) the Americans with

15  Disabilities Act of 1990; (I) the Consolidated Omnibus Budget Reconciliation Act of 1985;

16  (J) the Multiemployer Pension Plan Amendments Act of 1980; (K) state and local

17  discrimination laws; (L) state and local unemployment compensation laws or any other

18  similar state and local laws; (M) state workers' compensation laws; (N) any other state,

19  local or federal employee benefit laws, regulations or rules or other state, local or federal

20  laws, regulations or rules relating to, wages, benefits, employment, or termination of

21  employment with Bridgemark or any predecessor; (O) any antitrust laws; (P) any product

22  liability or similar laws, whether state or federal or otherwise; (Q) any environmental laws,

23  rules, or regulations, including, without limitation, under the Comprehensive

24  Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, or

25  similar state statutes; (R) any bulk sales or similar laws; (S) any federal, state or local tax

26  statutes, regulations or ordinances, including, without limitation, the Internal Revenue

27  Code of 1986, as amended; and (T) any common-law doctrine of *de facto* merger or

28  successor or transferee liability, successor-in-interest liability theory or any other theory of

or related to successor liability.  For the avoidance of doubt nothing in this paragraph shall

(i) restrict a party's right to appeal this Order or (ii) release Buyer or PDC from an

applicable authority's proper exercise of police and regulatory powers.

36.    Except as expressly permitted or otherwise specifically provided in the

Agreements or this Order, all persons or entities holding encumbrances in all or any

portion of the Purchased Assets (other than any obligations expressly assumed by Buyer)

arising under or from, or in any way relating to Bridgemark, the Purchased Assets, the

operation of Bridgemark's business prior to the Closing Date or the transfer of the

Purchased Assets to Buyer, are forever barred, estopped, and permanently enjoined from

asserting against Buyer or PDC or their respective successors or assigns, or their property

such persons' or entities' encumbrances in and to the Purchased Assets, or in any way

asserting or pursuing any action against Buyer, Buyer's successors or assigns, PDC, PDC's

successors or assigns, and/or the Purchased Assets based on any theory of successor or

transferee liability.  Effective as of the Closing Date, each creditor is authorized and

directed to execute such documents and take all other actions as may be necessary to

release any encumbrances on the Purchased Assets, as provided herein, that may have been

recorded or may otherwise exist.  If a creditor fails to cause an encumbrance to be released,

Bridgemark is hereby authorized and directed, and Buyer is hereby authorized, to execute

and file such statements, instruments, releases and other documents on behalf of such

person or entity with respect to the Purchased Assets.  The transactions authorized herein

shall be of full force and effect, regardless of Bridgemark's lack of good standing in any

jurisdiction in which it is formed or authorized to transact business.

37.    All persons and entities that are in possession of some or all of the

Purchased Assets on the closing date of the Sale Transaction are directed to surrender

possession of such Purchased Assets to Buyer at the Closing Date.  The provisions of this

Order authorizing the Sale Transaction by Bridgemark free and clear of encumbrances

shall be self-executing, and none of Bridgemark, Buyer, PDC, or any other party shall be

required to execute or file releases, termination statements, assignments, cancellations,

1   consents or other instruments to effectuate, consummate, and/or implement the provisions

2   hereof with respect to the Sale Transaction; ***provided, however,*** that this paragraph shall

3   not excuse such parties from performing any and all of their respective obligations under

4   the Agreements or as otherwise set forth in this Order, requested by Buyer, or sought by

5   PDC.

6        38.    Without limiting the foregoing, a certified copy of this Order may be filed

7   with the appropriate clerk or recorded to act to cancel any encumbrances on the Purchased

8   Assets of record.  This Order is binding upon all persons and entities, including, without

9   limitation, all filing agents, filing officers, title agents, title companies, recorders of

10   mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental

11   departments, secretaries of state, federal and local officials, and all other persons or entities

12   who may be required by operation of law, the duties of their office, or contract, to accept,

13   file, register, or otherwise record or release any documents or instruments, or who may be

14   required to report or insure any title or state of title in or to any lease; and each of the

15   foregoing persons and entities is hereby directed to accept for filing any and all of  the

16   documents and instruments necessary and appropriate to consummate the transactions of

17   Bridgemark contemplated by the Agreements; provided that nothing herein shall relieve

18   any entity of the obligation to pay filing fees required to be paid under applicable non-

19   bankruptcy law.

20        39.    Any and all governmental recording offices and all other parties, persons, or

21   entities are authorized to accept this Order for recordation on or after the closing date of

22   the Sale Transaction as conclusive evidence of the free, clear, and unencumbered, transfer

23   of all right, title, interest, and ownership in and to the Purchased Assets conveyed to Buyer

24   upon closing.

25        40.    Bridgemark is authorized and directed to (i) assign and sell each of the Prior

26   Assumed Contracts to Buyer, and (ii) assume, assign and sell each Remaining Contract to

27   Buyer, in each case free and clear of all encumbrances, as described herein.  The Prior

28   Assumed Contracts having been previously assumed by Bridgemark, any and all

1    objections to assignment of such leases are overruled.  *Cf. In re Catapult Entm't, Inc.*, 165

2    F.3d 747, 754 (9th Cir. 1999).  Bridgemark is authorized to pay any cure costs, as

3    contemplated by the Asset Purchase Agreement.  The payment of the applicable cure costs

4    (if any) in connection with an Assigned Contract shall (a) effect a cure of all defaults

5    existing thereunder as of the closing date of the Sale Transaction and (b) compensate for

6    any actual pecuniary loss to such non-debtor party resulting from such default.  Buyer shall

7    then have assumed the assigned contracts and assigned real property leases and, pursuant

8    to section 365(f) of the Bankruptcy Code, the assignment by Bridgemark of such Assigned

9    Contracts shall not be a default thereunder.  Upon the payment of the relevant cure costs, if

10   any, Bridgemark shall have no further liabilities to the counterparties to the Assigned

11   Contracts that accrue and become due and payable on or after the closing date of the Sale

12   Transaction except as provided in the Agreements.  *See* 11 U.S.C. § 365(k).

13            41.      Upon the assumption of an assigned contract and assigned real property

14   lease and the payment of the relevant cure costs, if any, in accordance with the Asset

15   Purchase Agreement, Buyer shall be deemed to be substituted for Bridgemark as a party to

16   the applicable Assigned Contracts and Bridgemark shall be relieved, pursuant to Section

17   365(k) of any further liability under the Assigned Contracts.  Bridgemark may assume (in

18   the case of the Remaining Contracts), assign and sell the Assigned Contracts

19   notwithstanding the provision in any such contract or lease that prohibits or restricts

20   assumption or assignment or that conditions assumption or assignment upon the consent of

21   the non-debtor counterparty thereto.

22            42.      To the extent any counterparty to an Assigned Contract failed to timely

23   object to the cure cost set forth in Exhibit A to the Motion, such cure cost shall be deemed

24   to be finally determined as of the entry of this Order and any such counterparty shall be

25   barred from challenging, objecting to or denying the validity of the cure cost.  All other

26   requirements and conditions under Sections 363 and 365 for the assumption by

27   Bridgemark and the assignment and sale to Buyer of the Assigned Contracts have been

28   satisfied.  Upon the closing of the Sale Transaction, in accordance with Sections 363 and

1  365, Buyer shall be fully and irrevocably vested with all legal, equitable, and beneficial

2  right, title, and interest of Bridgemark under the Assigned Contracts.

3       43.     To the extent necessary and applicable, Buyer has provided adequate

4  assurance of future performance under the Assigned Contracts within the meaning of

5  Sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B).  Subject to

6  Paragraph 57 below, pursuant to Sections 105(a), 363, and 365, all counterparties to the

7  Assigned Contracts are forever barred and permanently enjoined from raising or asserting

8  against Bridgemark, Buyer, or PDC any assignment fee, default, breach or claim of

9  pecuniary loss, or condition to assignment, arising under or related to the Assigned

10  Contracts existing as of the closing of the Sale Transaction or arising by reason of such

11  closing.

12       44.     The assumption and assignment of the Remaining Contracts and the

13  assignment of the Prior Assumed Contracts shall be effective upon entry of this Order

14  (conditioned upon the closing of the Sale Transaction) notwithstanding timely unresolved

15  objections to the proposed cure costs, which objections are hereby preserved and shall not

16  delay closing of the Sale Transaction.  The undisputed portion of the proposed cure costs,

17  if any, shall be paid by Bridgemark within three days after the Closing Date.  Any

18  remaining disputed cure costs must be paid by the earlier of (a) when Bridgemark, Buyer,

19  PDC, and the Assigned Contract counterparty can agree to an amount or (b) the date

20  specified in a final and non-appealable order entered by this Court.  With respect to any

21  cure objections resolved by the Court at the hearing on the Motion, Bridgemark shall pay

22  the cure cost, if any, no later than three days after the Closing Date.  Bridgemark shall use

23  commercially reasonable efforts to cooperate with Buyer and PDC in resolving any

24  disputed cure costs arising after the closing of the Sale Transaction.

25       45.     Nothing in this Order or any documents related to the Motion shall be

26  construed to authorize or permit the assumption and assignment of any existing Argonaut

27  Insurance Company ("Argonaut") surety bonds or indemnity agreements.  Nothing herein

28  shall be deemed to provide Argonaut's consent to the substitution of any principal under

1    any existing surety bond or existing indemnity agreement.  Except as provided for herein,

2    the Buyer shall not be (a) liable for any existing surety bonds and/or obligations arising

3    under any existing indemnity agreements to the extent they relate to any assets that are not

4    transferred to the Buyer or (b) deemed a substitute principal under any existing surety bond

5    or as an indemnitor under any existing indemnity agreement.  Nothing in this Order or any

6    other document, agreement or instrument shall be deemed to (a) alter, limit, expand,

7    modify, prejudice, waive, or release any rights or claims of Argonaut against Bridgemark

8    under the existing surety bond, the existing indemnity agreement, or (b) alter, limit,

9    expand, modify, prejudice, waive, or release any rights or claims of Argonaut against any

10    non-debtors.

11         46.    Nothing contained in any chapter 11 plan confirmed in this case, any order

12    confirming any such chapter 11 plan, any order approving wind-down or dismissal of this

13    chapter 11 case or any subsequent chapter 7 case, or any other order of any type or kind

14    entered in this case shall conflict with or derogate from the provisions of the Agreements

15    or this Order; and to the extent of any conflict or derogation between this Order or the

16    Agreements and such future plan or order, the terms of this Order and the Agreements shall

17    control.

18         47.    Pursuant to Bankruptcy Rules 7062, 9014, 6004(h), and 6006(d), this Order

19    shall be effective immediately upon entry and Bridgemark, Buyer, Hall, and PDC are

20    authorized to effectuate the Agreements and close the Sale Transaction immediately upon

21    entry of this Order.

22         48.    The Sale Transaction shall be exempt from any "bulk sales" or similar law

23    of any state or jurisdiction.  There are no brokers involved in consummating the Sale

24    Transaction and no brokers' commissions are due.

25         49.    This Order may be recorded in the land records and relied upon by title

26    insurers and subsequent purchasers.

27         50.    Immediately upon entry of the Approval Order, Bridgemark shall cease all

28    active extraction of oil from the PDC Parcel.

16

51.     The Chief Wind-Down Officer of Bridgemark from and after the Closing

Date shall be John Harris of Numeric Solutions, or any successor approved by the

Bankruptcy Court and consented to by PDC.  The Chief Wind-Down Officer is authorized

to perform the following services: (i) appropriate claim administration, reconciliation,

satisfactions, compromises, and/or objections with respect to claims that were not

Assumed Obligations transferred to Buyer; (ii) appropriate reconciliation and satisfaction

of any remaining obligations to royalty holders that were not Assumed Obligations

transferred to Buyer; (iii) appropriate disposition of any remaining assets that were not

Purchased Assets transferred to Buyer; (iv) appropriate resolution of all administrative

expense applications and related matters of Bankruptcy Case administration, including the

filing of all required reports and the payment of all required U.S. Trustee fees;

(v) appropriate formulation and prosecution of the liquidating chapter 11 plan

contemplated in the Plan Term Sheet; (vi) such other work as is reasonable and appropriate

in connection with the administration of the estate and consistent with Bridgemark's

bylaws.  The Numeric Solutions Employment Order is hereby modified, effective as of

March 10, 2021, to the extent necessary to authorize the performance of such services.

52.     Hall and each Hall-Related Party shall be prohibited from objecting to

confirmation of any chapter 11 plan that is materially consistent with the Plan Term Sheet.

53.     Neither Hall nor any Hall-Related Party shall have or incur any legal

liability relating solely to or arising solely out of post-Closing-Date equity ownership of

Bridgemark.

54.     The releases set forth in Section 5 of the Settlement Agreement are

approved, subject to the occurrence of the Closing Date.  For the avoidance of doubt, the

Hall-Related Parties (as defined in the Settlement Agreement) are Releasing Parties (as

defined in the Settlement Agreement) and are bound by the releases set forth in the

Settlement Agreement.

55.     The parties to the Settlement Agreement shall, upon request by one or more

of the other parties, execute such further documents, agreements, and contracts, and shall

1    perform such further acts as may be reasonably necessary to carry out and give full effect

2    to the terms of Agreements.  Without limiting the generality of the preceding sentence,

3    Hall, in his individual capacity and in his capacity as agent and attorney-in-fact for the

4    Hall-Related Parties, and Bridgemark shall cooperate with PDC to adjust, initial, re-

5    execute and re-deliver the Agreements and any amendments thereto, or any closing

6    statements or closing certificates, estoppels, authorizing resolutions, certificates, deeds,

7    assignments, confirmations, ratifications, releases, withdrawals, or similar documents if,

8    as, and when deemed necessary or desirable in the reasonable discretion of PDC to provide

9    for consistency with or to effectuate the agreed terms of the Agreements.

10        56.    The Agreements, and any related agreements or other instruments (other

11   than this Order), may be modified, amended, or supplemented by the parties thereto and in

12   accordance with the terms thereof, without further notice to or order of this Court;

13   provided, however, that any such modification, amendment or supplement does not

14   materially affect Bridgemark's estate in adverse fashion.

15        57.    The language in Paragraphs 18 and 43 above does not prevent a royalty

16   holder from asserting a claim for damages against Bridgemark arising from the cessation

17   of extraction of oil from the wells on the PDC Parcel after entry of this Order or the right

18   of Bridgemark to object to and seek disallowance of all such claims.

19        58.    The terms of this Order shall govern any inconsistencies between the terms

20   of this Order and the Agreements.

21        59.    All time periods set forth in this Order shall be calculated in accordance

22   with Bankruptcy Rule 9006(a).

23   //

24   //

25   //

26   //

27   //

28   //

60.    This Court shall retain jurisdiction to, among other things, interpret,

implement, and enforce the terms of the Order and the Agreements, as well as all

amendments thereto and any waivers and consents thereunder and each of the agreements

executed in connection therewith, and to adjudicate, if necessary, any and all disputes

relating in any way to the Agreements or Sale Transaction.

###

Date: April 28, 2021

Theodor C. Albert
United States Bankruptcy Judge

# EXHIBIT B

# KTBS LAW LLP

1801 Century Park East
Twenty-Sixth Floor
Los Angeles, California 90067

voice: 310-407-4000
fax: 310-407-9090
www.ktbslaw.com

rpfister@ktbslaw.com
Direct Dial: 310-407-4065

April 22, 2021

**VIA ELECTRONIC MAIL**

David A. Ossentjuk, Esq.
(dossentjuk@oandblawyers.com)
Ossentjuk & Botti
2815 Townsgate Road, Suite 320
Westlake Village, California 91361

William N. Lobel, Esq.
(wlobel@tocounsel.com)
Theodora Oringher PC
535 Anton Boulevard, Ninth Floor
Costa Mesa, California 92626

Re:    *In re Bridgemark Corp.*, Case No. 8:20-bk-10143-TA (Bankr. C.D. Cal.)

Dear Dave and Bill:

I write on behalf of Placentia Development Company, LLC (PDC) to memorialize the understandings between PDC, Bridgemark Corporation (Bridgemark), and California Natural Resources Group Orange County, LLC, Realm California LLC, and Alatex E&P LLC (collectively, Buyer) with respect to the closing date and related matters in connection with the transactions approved by the Bankruptcy Court in the above-referenced chapter 11 case on April 7, 2021.[1]

With respect to the closing date, the fact that the transactions were not approved on the last day of March 2021 (as had been expected) has led to some uncertainty regarding April 2021 revenues. To resolve that uncertainty, PDC, Bridgemark, and Buyer agree that the transaction will close effective on the close of business on Friday, April 30, 2021, which is the last day of April. All wells will continue pumping through that date, and all April revenue (which is expected to be received in late May 2021) will accordingly be remitted by Buyer to Bridgemark, without proration. Upon closing, the wells on the PDC parcel will cease pumping.

With respect to certain open Notices of Violation (NOVs), Bridgemark is endeavoring to have these matters resolved prior to closing. If they are not resolved by April 29, 2021, however, PDC will place $100,000 in escrow (with an escrow agent of Buyer's choice), and these escrowed funds shall be used to satisfy the NOVs. All funds that remain in escrow after satisfaction of the NOVs will be returned to PDC.

To be clear, we all believe that the matters set forth herein are fully consistent with what has been approved by the Bankruptcy Court, and are essentially in the nature of clarifications.

---

[1]    The Bankruptcy Court announced its oral ruling on April 7, 2021, but has not yet entered the Approval Order. We expect the Approval Order will be entered shortly.

David A. Ossentjuk, Esq.
William N. Lobel, Esq.
April 22, 2021
Page 2


With the exception of the matters specifically addressed herein, all other terms and conditions of
the agreements approved by the Bankruptcy Court remain in full force and effect. A copy of this
letter may be filed with the Bankruptcy Court.

Very truly yours,

Robert J. Pfister

cc:    Yolanda Rodriguez, Esq.
       Ben Gold, Esq.

**THE FOREGOING IS AGREED AND CONFIRMED:**

On behalf of:
California Natural Resources Group Orange County, LLC
Realm California LLC
Alatex E&P LLC

_____

On behalf of:
Bridgemark Corporation

_William N. Lobel_
_____

# EXHIBIT C

# OSSENTJUK & BOTTI

### A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
### ATTORNEYS AT LAW

David A. Ossentjuk
direct: 805.557.8087
DOssentjuk@oandblawyers.com

2815 Townsgate Road, Suite 320
Westlake Village, California 91361

tel: 805.557.8081
fax: 805.456.7884
www.oandblawyers.com

April 28, 2021

**VIA EMAIL AND U.S. MAIL**

Robert J. Pfister, Esq.
(rpfister@ktbslaw.com)
KTBS Law
1801 Century Park East
Twenty-Sixth Floor
Los Angeles, California 90067

William N. Lobel, Esq.
(wlobel@tocounsel.com)
Theodora Oringher PC
535 Anton Boulevard
Ninth Floor
Costa Mesa, California 92626

*Re: Deposit of Funds to Cover Fines/Civil Penalties for Open NOVs*

Gentlemen:

When signed by you on behalf of your respective clients, this letter will confirm the general terms under which Ossentjuk & Botti ("O&B") will accept, hold and ultimately distribute the $100,000 (the "Funds") which Placentia Development Company ("PDC") will deliver to O&B at Closing pursuant to Section 4.13(e) of the Asset Purchase Agreement ("APA") and the side letter agreement dated April 22, 2021 between PDC, Bridgemark Corporation and California Energy Group Orange County, LLC ("CalNRG"). This letter shall also constitute an amendment to that letter agreement in that, instead of depositing the Funds with an escrow company, PDC, CalNRG and O&B have agreed that those Funds will be wired into O&B's trust account at Closing. Wire transfer instructions are attached.

Per the terms of the APA, the Funds will be used to pay fines or civil penalties levied by the South Coast Air Quality Management District (the "District") with respect to Bridgemark's two (2) prior and unresolved air quality violations. In the event that those fines or civil penalties exceed $100,000, Bridgemark will be responsible for that excess pursuant to Section 4.13(e) of the APA. In the event that any of the Funds remain after the fines or penalties are paid, O&B will return that unused portion to PDC. In any case, O&B will not disburse any of the Funds without first receiving written instructions to do so from each of PDC, Bridgemark and CalNRG. If the existing matters with the District are not resolved within two (2) years of Closing, O&B will return the Funds to PDC. In that event, CalNRG will be responsible for any fines or civil penalties assessed by the District.

By signing below, each of you is acknowledging on behalf of your respective clients the following: (i) notwithstanding the fact that O&B is taking on this role, PDC and Bridgemark understand and acknowledge that we will remain counsel for CalNRG through the completion of

{038008 v2}

## OSSENTJUK & BOTTI

A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
ATTORNEYS AT LAW

Robert J. Pfister. Esq.
William N. Lobel, Esq.
April 28, 2021
Page 2

this transaction and afterwards; (ii) O&B is not hereby creating any attorney-client relationship with PDC or Bridgemark; and (iii) nothing in this letter nor O&B's handling of the Funds shall be deemed to create any actual or potential conflict of interest which could prevent or limit O&B's representation of CalNRG and its affiliates in any way.

As stated in the April 22, 2021 letter agreement, we all believe that the matters set forth herein are fully consistent with what has been approved by the Bankruptcy Court, and are essentially in the nature of clarifications. With the exception of the matters specifically addressed herein, all other terms and conditions of the agreements approved by the Bankruptcy Court remain in full force and effect. A copy of this letter may be filed with the Bankruptcy Court.

Very truly yours,

OSSENTJUK & BOTTI

David A. Ossentjuk

cc:    Mr. Clif Simonson
       Mr. Jeff Katersky
       Yolanda Rodriguez, Esq.
       Ben Gold, Esq.

**THE FOREGOING IS AGREED AND CONFIRMED:**

**On Behalf Of:**

Placentia Development Company LLC

**On Behalf Of:**

Bridgemark Corporation

{038008 v2}