United States Bankruptcy Court

Central District of California

In re:                                                                                        Case No. 20-10143-TA

Bridgemark Corporation                                                                        Chapter 11

    Debtor

# CERTIFICATE OF NOTICE

| District/off: 0973-8 | User: admin | Page 1 of 2 |
|---|---|---|
| Date Rcvd: Aug 18, 2021 | Form ID: pdf042 | Total Noticed: 1 |

The following symbols are used throughout this certificate:

**Symbol**    **Definition**

+    Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Aug 20, 2021:**

| Recip ID | Recipient Name and Address |
|---|---|
| db | +  Bridgemark Corporation, 17671 Irvine Blvd., Suite 217, Tustin, CA 92780-3129 |

TOTAL: 1

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, \*duplicate of an address listed above, \*P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Aug 20, 2021                     Signature:          /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on August 18, 2021 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Christopher O Rivas | on behalf of Respondent Celia A Wallace crivas@reedsmith.com  chris-rivas-8658@ecf.pacerpro.com |
| Erin E Gray | on behalf of Consultant Numeric Solution LLC egray@pszjlaw.com |
| Erin E Gray | on behalf of Attorney Casso & Sparks LLP egray@pszjlaw.com |
| Erin E Gray | on behalf of Attorney Pachulski Stang Ziehl & Jones LLP egray@pszjlaw.com |
| Frank Cadigan | on behalf of U.S. Trustee United States Trustee (SA) frank.cadigan@usdoj.gov |
| J Scott Bovitz | on behalf of Creditor TPx Communications bovitz@bovitz-spitzer.com |

District/off: 0973-8

User: admin

Page 2 of 2

Date Rcvd: Aug 18, 2021

Form ID: pdf042

Total Noticed: 1

James KT Hunter

on behalf of Plaintiff Bridgemark Corporation jhunter@pszjlaw.com

Kenneth D Peters

on behalf of Creditor PBF Holding Company LLC kpeters@dresslerpeters.com  rmccandless@dresslerpeters.com

Matthew J Pero

on behalf of Debtor Bridgemark Corporation mpero@afrct.com  lhlista@afrct.com;AFRCTECF@afrct.com

Nancy S Goldenberg

on behalf of U.S. Trustee United States Trustee (SA) nancy.goldenberg@usdoj.gov

Randall P Mroczynski

on behalf of Creditor Ford Motor Credit Company LLC randym@cookseylaw.com

Robert J Pfister

on behalf of Creditor Placentia Development Company  LLC rpfister@ktbslaw.com

Robert J Pfister

on behalf of Defendant Placentia Development Company LLC rpfister@ktbslaw.com

Robert K Wing

on behalf of Interested Party Courtesy NEF rkw@rkwing.com

Robert K Wing

on behalf of Creditor Politiski Survivors' Trust rkw@rkwing.com

Samuel M Kidder

on behalf of Creditor Placentia Development Company  LLC skidder@ktbslaw.com

Samuel M Kidder

on behalf of Defendant Placentia Development Company LLC skidder@ktbslaw.com

Tracy K Hunckler

on behalf of Creditor John T Kraemer thunckler@daycartermurphy.com  cgori@daycartermurphy.com

United States Trustee (SA)

ustpregion16.sa.ecf@usdoj.gov

William N Lobel

on behalf of Attorney Theodora Oringher  PC wlobel@tocounsel.com, jokeefe@tocounsel.com;sschuster@tocounsel.com

William N Lobel

on behalf of Attorney Casso & Sparks LLP wlobel@tocounsel.com  jokeefe@tocounsel.com;sschuster@tocounsel.com

William N Lobel

on behalf of Debtor Bridgemark Corporation wlobel@tocounsel.com  jokeefe@tocounsel.com;sschuster@tocounsel.com

William N Lobel

on behalf of Financial Advisor GlassRatner Advisory & Capital Group  LLC wlobel@tocounsel.com, jokeefe@tocounsel.com;sschuster@tocounsel.com

William N Lobel

on behalf of Plaintiff Bridgemark Corporation wlobel@tocounsel.com  jokeefe@tocounsel.com;sschuster@tocounsel.com

William N Lobel

on behalf of Consultant Numeric Solution LLC wlobel@tocounsel.com  jokeefe@tocounsel.com;sschuster@tocounsel.com

TOTAL: 25

1 William N. Lobel, Esq. (State Bar No. 93202)
wlobel@tocounsel.com
2 THEODORA ORINGHER PC
535 Anton Boulevard, Ninth Floor
3 Costa Mesa, California 92626
Telephone:    (714) 549-6200
4 Facsimile:    (714) 549-6201

5 Counsel for Bridgemark Corporation

6 Robert J. Pfister, Esq. (State Bar No. 241370)
rpfister@ktbslaw.com
7 KTBS LAW LLP
1801 Century Park East, 26th Floor
8 Los Angeles, California 90067
Telephone:    (310) 407-4065
9 Facsimile:    (310) 407-9090

10 Counsel for Placentia Development Company, LLC

<table>
<tr><td colspan="2" align="center"><strong>FILED & ENTERED</strong></td></tr>
<tr><td colspan="2" align="center"><strong>AUG 18 2021</strong></td></tr>
<tr><td colspan="2" align="center"><strong>CLERK U.S. BANKRUPTCY COURT<br>Central District of California<br>BY deramus  DEPUTY CLERK</strong></td></tr>
</table>

11 **UNITED STATES BANKRUPTCY COURT**

12 **CENTRAL DISTRICT OF CALIFORNIA**

13 **SANTA ANA DIVISION**

| | |
|---|---|
| 14 In re | Case No. 8:20-bk-10143-TA |
| 15 BRIDGEMARK CORPORATION,[1] | Chapter 11 |
| 16               Debtor. | **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING JOINT CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY BRIDGEMARK CORPORATION AND PLACENTIA DEVELOPMENT COMPANY, LLC, DATED AS OF JUNE 30, 2021** |

21     The Court having considered the *Joint Chapter 11 Plan of Liquidation Proposed by*

22 *Bridgemark Corporation and Placentia Development Company, LLC, Dated as of June 30,*

23 *2021* [Docket No. 500] (a copy of which is attached hereto as **Exhibit A**, and as amended,

24 supplemented, or modified from time to time pursuant to the terms thereof, the "Plan")[2]

25 jointly proposed by Bridgemark Corporation ("Bridgemark" or the "Debtor") and Placentia

---

[1]   The Debtor's last four digits of its taxpayer identification number are (1669), and its headquarters and service are 17671 Irvine Boulevard, Suite 217, Tustin, California 92780.

[2]   Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan.

1  Development Company, LLC ("PDC" and, together with the Debtor, the "Plan

2  Proponents"); and the Plan Proponents having filed the *Notice of Motion and Joint Motion*

3  *for Order Confirming Joint Chapter 11 Plan of Liquidation Proposed by Bridgemark*

4  *Corporation and Placentia Development Company, LLC, Dated as of June 30, 2021*

5  [Docket No. 501] (the "Confirmation Motion"), the *Declaration of John Harris in Support*

6  *of Plan Confirmation* [Docket No. 502](the "Harris Confirmation Declaration"), the

7  *Supplemental Declaration of John Harris in Further Support of Plan Confirmation*

8  [Docket No. 559] (the "Supplemental Harris Confirmation Declaration"); and the Court

9  having reviewed the *Stipulation Regarding Disputed Administrative Expense Requests and*

10  *Plan Confirmation* [Docket No. 564] and entered an order approving such stipulation

11  [Docket No. 565]; and upon the proof of service filed reflecting notice of the Plan, the

12  Confirmation Motion, and the Harris Confirmation Declaration having been provided to all

13  creditors and other parties in interest entitled to notice; and no objections to the Plan

14  having been filed; and hearings having been held on July 28, 2021 and August 4, 2021 to

15  consider confirmation of the Plan and entry of this Confirmation Order (the "Confirmation

16  Hearing"); and upon the evidence adduced and proffered and the arguments of counsel

17  made at the Confirmation Hearing; and the Court having reviewed all documents in

18  connection with confirmation and having heard all parties desiring to be heard; and upon

19  the record of this Chapter 11 Case; and after due deliberation and consideration of all the

20  foregoing; and sufficient cause appearing therefor;

21       IT IS HEREBY ORDERED that the Court makes the following findings of fact and

22  conclusions of law:[3]

23       1.       The Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C.

24  §§ 157 and 1334 and the *Reference of Cases and Proceedings to the Bankruptcy Judges of*

25

26  [3]  The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of
    law pursuant to Federal Rule of Civil Procedure 52, made applicable to these proceedings pursuant to
27  Rules 7052 and 9014 of the Bankruptcy Rules.  To the extent that any of the following findings of fact
    constitute conclusions of law, they are adopted as such.  To the extent that any of the following
28  conclusions of law constitute findings of fact, they are adopted as such.

*the Central District of California, and Reference of Appeals to the Bankruptcy Appellate Panel* (General Order No. 13-05) of the United States District Court for the Central District of California.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of these proceedings and the Chapter 11 Case is proper in this district and in this Court pursuant to 28 U.S.C. § 1408 and 1409.

2.      On January 14, 2020 (the "Petition Date"), Bridgemark filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the Chapter 11 Case.  Bridgemark has continued to operate its business and manage its affairs as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.      Prior to the Sale Transaction (as defined below), Bridgemark's primary assets were certain oil and gas leases and related agreements and rights pursuant to which Bridgemark operated wells in Placentia, California and Anaheim, California.

4.      Of the wells that Bridgemark operated in Placentia, California, a portion are situated on land (the "PDC Parcel") owned by PDC, on which PDC intends to build residential homes.

5.      On December 31, 2019, the PDC Judgment was entered in favor of PDC and against Bridgemark.  The PDC Judgment was originally in the principal amount of approximately $42 million, and was subsequently amended in post-judgment proceedings to the principal amount of approximately $38 million.  An Appeal of the PDC Judgment is pending but stayed.

6.      Broadly speaking, and without rehashing the details of the multi-year proceedings that culminated in the PDC Judgment or the parties' claims and contentions related thereto, the PDC Judgment arose out of Bridgemark's failure to plug and abandon oil wells on the PDC Parcel, as the state court determined that Bridgemark was legally obligated to do, such that PDC could develop the residential homes on the PDC Parcel.

7.      On April 15, 2020, PDC, Bridgemark, and Robert J. Hall ("Hall") executed that certain *Term Sheet* (the "Term Sheet"), as clarified by the correspondence dated August 10, 2020, pursuant to which they agreed to compromise and resolve all disputes

between them on the terms set out therein, with the proviso that definitive documentation (the "Definitive Documentation") would thereafter be executed.  The Term Sheet contemplated that the Definitive Documentation would ultimately bind Hall and also certain related persons and entities (the "Hall-Related Parties").  Hall deposited $4.375 million of his personal funds (the "Hall Cash Contribution") into an escrow account pursuant to the Term Sheet.  This Court approved Bridgemark's entry into the Term Sheet by order dated June 26, 2020 [Docket No. 240].

8.    On May 13, 2020, the Court entered the *Order Authorizing Debtor to Assume Certain Executory Contracts and Unexpired Leases Pursuant to Bankruptcy Code Section 365(a)* [Docket No. 203] (the "First Assumption Order"), pursuant to which the Court authorized Bridgemark to assume, *inter alia*, the oil and gas leases listed on Exhibit 1 thereto.

9.    Bridgemark, PDC, and Hall (both individually and as agent for the Hall-Related Parties) executed that certain *Settlement Agreement* dated March 9, 2021 (the "Settlement Agreement"), which – together with that certain *Asset Purchase Agreement by and among Bridgemark Corporation, Gregson Energy Group, LLC, and Bridgemark Texas LLC, collectively, as Seller, and California Natural Resources Group Orange County, LLC, Realm California, LLC, and Alatex E&P LLC, collectively, as Buyer* (the "Asset Purchase Agreement"), that certain *Transaction Agreement* (the "Transaction Agreement"), and that certain *Surface Use and Cooperation Agreement* (the "Surface Use Agreement," and together with the Settlement Agreement, the Asset Purchase Agreement, and the Transaction Agreements, the "Agreements") – collectively constitute the Definitive Documentation contemplated by the Term Sheet.  The Hall-Related Parties are specifically identified in Exhibit A to the Settlement Agreement.

10.    On March 10, 2021, the Debtor filed a motion [Docket No. 392] (the "Approval Motion") seeking, *inter alia*, approval of the Agreements.  Due and proper notice of the Approval Motion was provided to all creditors, lienholders, royalty holders, and other parties in interest.

11.     On April 28, 2021, the Court entered its order [Docket No. 442] (the "Approval Order") granting the Approval Motion, approving the Agreements, and authorizing and directing the parties to proceed with the consummation of the transactions contemplated by the Agreements.  Due and proper notice of the Approval Order was provided to all creditors, lienholders, royalty holders, and other parties in interest.  No party in interest appealed the Approval Order.

12.     On April 30, 2021, all conditions to closing under the Agreements were satisfied or waived and the Closing Date (as defined below) occurred.

13.     In broad strokes – and subject entirely to the specific terms of the actual Agreements – the transactions contemplated by the Agreements resulted in essentially all of Bridgemark's non-cash assets that are ***not*** located on the PDC Parcel being transferred to Buyer (as defined in the Approval Order), which also assumed certain liabilities of Bridgemark (such purchase, sale, assignment, and assumption collectively, the "Sale Transaction"), and the Settlement Agreement between PDC, Bridgemark, and Hall went into effect – all of which occurred on April 30, 2021 (the "Closing Date").

14.     The Asset Purchase Agreement provided for Bridgemark to assign certain contracts and agreements (collectively, the "Assigned Contracts") to Buyer.  A complete list of the Assigned Contracts and the cure costs associated therewith was set forth in Exhibit A to the Approval Motion.  Certain of the Assigned Contracts (the "Prior Assumed Contracts") were previously assumed by Bridgemark pursuant to the First Assumption Order, as set forth in Exhibit A to the Motion.  The remainder of the Assigned Contracts (the "Remaining Contracts") were not previously assumed.  Through the Motion, Bridgemark sought to assign the Prior Assumed Contracts and assume and assign the Remaining Contracts to Buyer.

15.     The Approval Order approved the assumption and/or assignment of the Assigned Contracts to Buyer.  As set forth in the Approval Order, the Cure Amount in respect of each Assigned Contract was $0.00.

5

16.     Pursuant to the Approval Order, John Harris of Numeric Solutions, LLC ("Numeric Solutions") was appointed Chief Wind-Down Officer of Bridgemark as of the Closing Date.  As set forth in the Plan Term Sheet attached to the Settlement Agreement, Bridgemark, under the direction of the Chief Wind-Down Officer, has filed a non-impaired Plan that is consistent with the Plan Term Sheet.  The primary purposes of the Plan are to pay Allowed Claims in full and to create a Liquidation Trust tasked with, among other things, plugging and abandoning the remaining wells on the PDC Parcel so that PDC can develop residential homes on the PDC Parcel.

17.     The Plan and the Confirmation Motion were timely served on the parties listed on the proof of service filed with respect thereto – which include all potentially affected creditors, landowners, royalty holders, regulators, contract counterparties, lienholders, and other parties in interest – and appropriate notice and opportunity to be heard regarding the Plan has been provided.

18.     The Plan is fair, reasonable, and in the best interests of Bridgemark and its estate, creditors, and all parties in interest.

19.     All Classes of Claims and Interests are Unimpaired under the Plan, and thus all Holders of Claim and Interests are conclusively deemed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.  The Plan Proponents are not required to solicit acceptances or rejections of the Plan, and no disclosure statement is required in connection with the Plan.

20.     In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtor and PDC as proponents of the Plan.

21.     Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan since the filing of the Plan or set forth herein constitute technical changes or changes with respect to particular Claims made with the agreement of the Holders of such Claims and do not materially or adversely affect or change the treatment of any other Claims or Interests.  Pursuant to Bankruptcy Rule 3019, these modifications, if any, do not require additional disclosure under section 1125 of the Bankruptcy Code or the solicitation of

1   votes under section 1126 of the Bankruptcy Code.  The disclosure of any Plan

2   modifications prior to or on the record at the Confirmation Hearing constitutes due and

3   sufficient notice of any and all Plan modifications.  The Plan as modified shall constitute

4   the Plan submitted for Confirmation.

5         22.    The Plan Proponents have met their burden of proving the elements of

6   section 1129(a) of the Bankruptcy Code by a preponderance of the evidence.

7         23.    As set forth below, the Plan complies with all of the applicable provisions

8   of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

9         (a)    Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).  The classification of

10   Claims and Interests under the Plan is proper under the Bankruptcy Code.  In addition to

11   Administrative Expenses, Professional Fee Claims, and Priority Tax Claims, which need not be

12   classified, the Plan designates five (5) Classes of Claims and Interests.  The Claims or Interests

13   placed in each Class are substantially similar to other Claims or Interests, as the case may be, in

14   each such Class.  Valid business, factual, and legal reasons exist for separately classifying the

15   various Classes of Claims and Interests created under the Plan, and the Plan does not unfairly

16   discriminate between Holders of Claims and Interests.  Thus, the Plan satisfies sections 1122 and

17   1123(a)(1) of the Bankruptcy Code.

18         (b)    Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  Section 4.1

19   of the Plan specifies that all Classes are Unimpaired under the Plan.  Thus, the requirement of

20   section 1123(a)(2) of the Bankruptcy Code is satisfied.

21         (c)    Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).

22   Article III of the Plan designates five (5) Classes of Claims and Interests and specifies the

23   treatment of Claims and Interests in such Classes.  There are no Impaired Classes under the Plan,

24   and therefore section 1123(a)(3) of the Bankruptcy Code is inapplicable.

25         (d)    No Discrimination (11 U.S.C. § 1123(a)(4)).  The Plan provides for the

26   same treatment by the Plan Proponents for each Claim or Interest in each respective Class unless

27   the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim

28   or Interest.  Thus, the requirement of section 1123(a)(4) of the Bankruptcy Code is satisfied.

1    (e)  Implementation of the Plan (11 U.S.C. § 1123(a)(5)).  Article V of the Plan

2 provides adequate and proper means for the Plan's implementation.  Thus, the requirements of

3 section 1123(a)(5) of the Bankruptcy Code are satisfied.

4    (f)  Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).  The Plan does not

5 provide for the issuance of any securities, as the Debtor will be deemed liquidated and dissolved

6 as a legal entity on the Effective Date.  Therefore, the requirement of section 1123(a)(6) of the

7 Bankruptcy Code is inapplicable.

8    (g)  Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).  The Plan

9 identifies John Harris as the initial trustee of the Liquidation Trust.  *See* Plan § 5.3.1.  The

10 Liquidation Trust Agreement provides appropriate procedures for the removal of the Liquidation

11 Trustee and the nomination of a successor Liquidation Trustee.  *See* Liquidation Trust Agreement

12 §§ 8.03, 8.05.  The Plan Proponents have thus properly and adequately disclosed the identity and

13 affiliations of the initial Liquidation Trustee.  The manner of selection of the Liquidation Trustee

14 is consistent with the interests of Holders of Claims and Interests and with public policy.

15 Therefore, section 1123(a)(7) of the Bankruptcy Code is satisfied.

16    (h)  Additional Plan Provisions (11 U.S.C. § 1123(b)).  The Plan's additional

17 provisions are appropriate, in the best interests of the Debtor and its estate, and consistent with the

18 applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, including,

19 without limitation, provisions for (i) the distributions to Holders of Claims, (ii) the retention of,

20 and the right to enforce, sue on, settle, or compromise (or refuse to do any of the foregoing with

21 respect to) certain claims or causes of actions against third parties, (iii) the vesting of assets in the

22 Liquidation Trust, and (iv) completion of the P&A Work.

23   24.  Pursuant to section 1129(a)(2) of the Bankruptcy Code, the Plan Proponents

24 have complied with the applicable provisions of the Bankruptcy Code, including sections

25 1122, 1123, and 1124 of the Bankruptcy Code, and the Bankruptcy Rules governing notice

26 in connection with the Plan and all other matters considered by the Bankruptcy Court in

27 connection with the Chapter 11 Case.  As noted above, no solicitation of votes is required

28 because all Classes are Unimpaired under the Plan.

25.     The Plan Proponents have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Case, the Plan itself, and the process leading to its formulation.  The Plan is the result of extensive arm's-length negotiations among the Debtor, PDC, and Hall, and provides for payment in full in Cash of all Allowed Claims.  The Plan promotes the objectives and purposes of the Bankruptcy Code.

26.     The procedures set forth in the Plan for the Bankruptcy Court's approval of fees, costs, and expenses in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, satisfy the objectives of and are in compliance with section 1129(a)(4) of the Bankruptcy Code.

27.     The Plan Proponents have complied with section 1129(a)(5) of the Bankruptcy Code.  Specifically, the Plan Proponents have disclosed in the Plan the identity and the affiliation of John Harris, who shall serve as the initial Liquidation Trustee on and after the Effective Date.  The appointment of the Liquidation Trustee is consistent with the interests of Holders of Claims and Interests and with public policy.  Therefore, section 1129(a)(5) of the Bankruptcy Code is satisfied.

28.     The Plan does not provide for any rate change that requires regulatory approval.  Section 1129(a)(6) of the Bankruptcy Code is thus not applicable.

29.     Bankruptcy Code section 1129(a)(7) is not applicable because there are no Holders of Impaired Claims or Interests under the Plan.  Nevertheless, the Plan satisfies section 1129(a)(7) because all Holders of Allowed Claims will be paid in full in Cash, plus interest at the Legal Rate.  Accordingly, each Holder of a Claim will receive or retain, on account of such Claim, property under the Plan of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

30.     All Classes are left Unimpaired under the Plan, and are therefore conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Accordingly, section 1129(a)(8) of the Bankruptcy Code is satisfied.

31.     The treatment of Administrative Expenses, Priority Tax Claims, Priority Non-Tax Claims, and Professional Fee Claims pursuant to Articles II and III of the Plan satisfies the requirements of sections 1129(a)(9) of the Bankruptcy Code.

32.     Section 1129(a)(10) of the Bankruptcy Code is inapplicable because there are no Impaired Classes under the Plan.

33.     The Plan provides for the liquidation of the Debtor's property.  The Liquidation Trust is likely to be able to make the Distributions and other payments contemplated by the Plan.  Therefore the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

34.     All fees payable under 28 U.S.C. § 1930 through the Effective Date have been paid or will be paid on or before the Effective Date pursuant to Article II of the Plan, and all such fees payable on and after the Effective Date until the entry of a final decree in the Chapter 11 Case or until the Chapter 11 Case is converted or dismissed shall be paid by the Liquidation Trust, thus satisfying the requirement of section 1129(a)(12) of the Bankruptcy Code.

35.     Sections 1129(a)(13)–(16) of the Bankruptcy Code are inapplicable as the Debtor (i) does not provide "retiree benefits" as defined in Bankruptcy Code section 1114 (§ 1129(a)(13)), (ii) has no domestic support obligations (§ 1129(a)(14)), (iii) is not an individual (§ 1129(a)(15)), and (iv) is not a nonprofit corporation (§ 1129(a)(16)).

36.     The Plan is the only chapter 11 plan currently proposed in the Chapter 11 Case, and the requirements of section 1129(c) of the Bankruptcy Code are therefore satisfied.

37.     The principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of the application of section 5 of the Securities Act of 1933, and no party has

objected to the Confirmation of the Plan on any such grounds.  Accordingly, section 1129(d) of the Bankruptcy Code is inapplicable.

38.     Based upon the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

39.     The Debtor has exercised reasonable business judgment in determining to assume its remaining executory contracts and unexpired leases pursuant to Article VI of the Plan.  Each assumption of an executory contract or unexpired lease pursuant to Article VI of the Plan shall be legal, valid, and binding upon the Liquidation Trust and the Liquidation Trust's assignees or successors and all non-Debtor parties (and their assignees or successors) to such executory contracts or unexpired leases, all to the same extent as if such assumption had been effectuated pursuant to an order of the Court entered before the Confirmation Date under section 365 of the Bankruptcy Code.

40.     The Debtor has cured, or provided adequate assurance that the Liquidation Trust will cure, defaults (if any) under or relating to any executory contracts and unexpired leases that are being assumed by the Debtor pursuant to the Plan.  In addition, the Debtor has provided adequate assurance of future performance regarding any executory contracts and unexpired leases that are being assumed by the Debtor and assigned to the Liquidation Trust.

41.     The releases, exculpations, and injunctions provided in Sections 9.1, 9.2, and 9.3 of the Plan (i) are within the jurisdiction of the Bankruptcy Court under 28 U.S.C. § 1334; (ii) are an appropriate exercise of the Debtor's business judgment; (iii) are integral elements of the transactions incorporated into the Plan and inextricably bound with the other provisions of the Plan; (iv) are consistent with and effectuate the releases set forth in the Court-approved Settlement Agreement; (v) are in the best interests of the Debtor, its Estate, and creditors; (vi) are narrowly tailored, fair, equitable, and reasonable; (vii) are given and made after due notice and an opportunity to object and be heard with respect thereto; and (viii) are consistent with sections 105, 524, 1123, 1129, 1141, and other applicable provisions of the Bankruptcy Code and other applicable law.  PDC was

1  instrumental to the successful prosecution of this Chapter 11 Case, and provided a

2  substantial contribution to the Debtor, which value provided a significant benefit to the

3  Debtor's Estate, and which will allow for distributions that would not otherwise be

4  available to the Holders of Claims but for the contributions made by PDC in this Chapter

5  11 Case.

6      42.    The injunction provision set forth in Section 9.1 of the Plan (the

7  "Injunction") is necessary to implement, preserve, and enforce the distribution of the

8  Debtor's assets as set forth in the Plan and is narrowly tailored to achieve this purpose.

9      43.    The exculpation provision set forth in Section 9.2 of the Plan (the

10  "Exculpation") is essential to the Plan.  The record in this Chapter 11 Case fully supports

11  such Exculpation, which is appropriately tailored to protect the Exculpated Parties.  In light

12  of, among other things, the critical nature of the Exculpation to the Plan and the substantial

13  contribution of the Exculpated Parties to this Chapter 11 Case, the Exculpation is

14  appropriate.

15      44.    Section 9.3 of the Plan incorporates by reference the releases set forth in

16  Section 5 of the Settlement Agreement, which releases have already been approved by the

17  Court and found to be fair, reasonable, and in the best interests of the Debtor and its Estate.

18      45.    The Argo Bond Program (as defined below) and its treatment under

19  paragraphs 91 and 92 of this Order are essential elements of the Plan and are in the best

20  interests of the Debtor, the Estate, Holders of Claims and Interests, the Liquidation Trust,

21  the Liquidation Trustee, and PDC.  The terms and conditions of the Argo Bond Program

22  and its treatment under paragraph 91 of this Confirmation Order are fair and reasonable,

23  reflect the exercise of reasonable business judgment and are supported by reasonably

24  equivalent value and fair consideration.

25      46.    All of the settlements and compromises pursuant to and in connection with

26  the Plan comply with the requirements of section 1123(b)(3) of the Bankruptcy Code and

27  Bankruptcy Rule 9019.

28

47.     Any and all conditions to confirmation set forth in the Plan have been satisfied or waived in accordance with the terms of the Plan.

48.     Each of the conditions to the Effective Date, as set forth in Article XII of the Plan, is reasonably likely to be satisfied or waived in accordance with the terms of the Plan.

49.     The Court retains jurisdiction and power over the matters set forth in Article X of the Plan and section 1142 of the Bankruptcy Code.

50.     Under the circumstances, it is appropriate that the 14-day stay imposed by Bankruptcy Rules 3020(e) and 7062(a) be waived.  This Court expressly finds that there is no reason to delay implementation of this Order.

*       *       *

Based on the foregoing findings of fact and conclusions of law, and good and sufficient cause appearing therefor, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that:

51.     The Confirmation Motion is GRANTED in its entirety.

52.     The Plan, in the form attached hereto as **<u>Exhibit A</u>**, as and to the extent modified by this Confirmation Order, is approved and confirmed pursuant to section 1129 of the Bankruptcy Code.  Any objections to the Plan not withdrawn, resolved, or otherwise disposed of, are overruled on the merits.

53.     Upon the occurrence of the Effective Date, the terms of the Plan are immediately effective and enforceable and binding on the Debtor, the Liquidation Trust, Holders of Claims or Interests (regardless of whether such Holders have, or are deemed to have, accepted the Plan), all Persons that are parties to or are subject to the releases, exculpations, and injunctions in the Plan, each Person acquiring property under the Plan, and any and all non-debtor parties to executory contracts and unexpired leases with the Debtor to the extent set forth in the Plan and this Confirmation Order.

54.     Pursuant to section 1123 of the Bankruptcy Code, upon the Effective Date, all settlements and compromises set forth in the Plan are approved in all respects and constitute good faith compromises and settlements.

55.     The Plan's classification scheme is approved.

56.     The Debtor and the Liquidation Trustee, as applicable, are authorized to take or cause to be taken all corporate or other actions necessary or appropriate to implement all provisions of, and to consummate, the Plan and to execute, enter into or otherwise make effective all documents arising in connection therewith.

57.     On the Effective Date, the officers of the Debtor and the Liquidation Trustee are authorized to do all things and to execute and deliver all agreements, documents, instruments, notices, and certificates as are contemplated by the Plan and to take all necessary or appropriate actions required in connection therewith, in the name of and on behalf of the Debtor and the Liquidation Trust, as applicable.

58.     Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan or made in connection therewith (whether such transfers are made by the Debtor, Liquidation Trustee, or any other Person) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment to the fullest extent contemplated by section 1146(a) of the Bankruptcy Code.  Upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

59.     The fourth sentence of Section 5.3.10 of the Plan ("Certain Tax Matters Regarding Liquidation Trust") is hereby stricken from the Plan.

14

60.     The approvals and authorizations specifically set forth in this Confirmation Order are not intended to limit the authority of the Debtor or the Liquidation Trust to take any and all actions necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.

61.     Pursuant to sections 1123(a), 1141(a), and 1142 of the Bankruptcy Code, upon the Effective Date, the Plan and all Plan-related documents shall be valid, binding, and enforceable.

62.     On the Effective Date, the Debtor will be dissolved automatically without the need for any Corporate Action, without the need for any corporate filings, and without the need for any other or further actions to be taken by or on behalf of the Debtor or any other Person or any payments to be made in connection therewith; provided, however, that the Liquidation Trustee may in the Liquidation Trustee's discretion file any certificates of cancellation or dissolution as may be appropriate in connection with dissolution of the Debtor.

63.     On the Effective Date, the certificates of incorporation, bylaws, operating agreements, and articles of organization, as applicable, of the Debtor shall be deemed amended to the extent necessary to carry out the provisions of the Plan.  The entry of the Confirmation Order shall constitute authorization for the Debtor and the Liquidation Trustee, as applicable, to take or cause to be taken all actions (including, if applicable, Corporate Actions) necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on, and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule, or regulation.

64.     On the Effective Date, each of the Debtor's existing directors, officers, and managers shall be terminated automatically without the need for any corporate action and without the need for any corporate filings, and shall have no ongoing rights against or obligations to the Debtor or the Estate, including under any prepetition agreements (all of

which will be deemed terminated), provided, however, that the Liquidation Trustee may continue to consult with or cause the Liquidation Trust to employ the Debtor's former directors, officers, employees, and managers to the extent the Liquidation Trustee deems appropriate.

65.    As of the Effective Date, except as expressly provided in the Plan or by separate order of the Bankruptcy Court, the Liquidation Trust shall retain any stock or interests that the Debtor may hold in its non-Debtor affiliates or subsidiaries and retain any rights to which such stock or interests may be entitled under applicable law with respect to such shares or other interests.  After the Effective Date, the Liquidation Trust may sell, transfer, assign or otherwise dispose of such shares or interests as permitted by applicable law, or may, consistent with applicable non-bankruptcy law, cause the dissolution of such non-Debtor affiliates or subsidiaries.

66.    On and after the Effective Date, the initial Liquidation Trustee shall become and serve as Liquidation Trustee.  The Liquidation Trustee will receive (i) base compensation at an hourly rate of $175 per hour; and (ii) reimbursement of reasonable expenses, as may be more specifically set forth in the Liquidation Trust Agreement.

67.    The Liquidation Trust Agreement, substantially in the form attached as Exhibit A to the Plan, is approved.  On the Effective Date, the Chief Wind Down Officer and the Liquidation Trustee shall execute the Liquidation Trust Agreement and shall take any other steps necessary to establish the Liquidation Trust in accordance with the Plan. The Liquidation Trust shall be governed by the Liquidation Trust Agreement and administered by the Liquidation Trustee.  The powers, rights, and responsibilities of the Liquidation Trustee shall be as specified in the Liquidation Trust Agreement.

68.    The Liquidation Trust shall be established for the purpose of (i) collecting, administering, distributing and liquidating the Liquidation Trust Assets for the benefit of the Liquidation Trust Beneficiary in accordance with the terms of the Plan and the Liquidation Trust Agreement, (ii) completion of the P&A Work, and (iii) payment of Allowed Claims and statutory fees, in each case to the extent required by the Plan.  The

Liquidation Trust shall act in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

69.    On the Effective Date, the Liquidation Trust will automatically be vested with all of the Debtor's and the Estate's respective rights, title, and interest in and to all Liquidation Trust Assets.  Except as specifically provided in the Plan or this Confirmation Order, the Liquidation Trust Assets shall automatically vest in the Liquidation Trust free and clear of all Claims, Liens, or interests subject only to the interest of the Liquidation Trust Beneficiary, and such vesting shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax.  The Liquidation Trustee shall be the exclusive trustee of the Liquidation Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to Bankruptcy Code section 1123(b)(3) regarding all Liquidation Trust Assets. The Liquidation Trust shall hold and distribute the Liquidation Trust Assets in accordance with the provisions of the Plan and the Liquidation Trust Agreement.

70.    The Liquidation Trustee shall have the authority and discretion on behalf of the Debtor and the Estate and without the need for Bankruptcy Court approval (in each case, unless otherwise provided in the Plan) to carry out and implement all applicable provisions of the Plan, including to:

(a)    Hold legal title to the Liquidation Trust Assets and to any and all rights of the Debtor in or arising from the Liquidation Trust Assets.

(b)    Manage, invest, supervise, protect, and where appropriate, cause the Liquidation Trust to abandon the Liquidation Trust Assets, including causing the Liquidation Trust to invest any moneys held as Liquidation Trust Assets in accordance with the terms of section 3.08 of the Liquidation Trust Agreement.

(c)    Request, negotiate the terms of, and accept additional funding from the Liquidation Trust Beneficiary in accordance with Section 5.5.3 of the Plan.

(d)    To take all steps necessary or appropriate to terminate the corporate existence of the Debtor and any of the Debtor's non-Debtor subsidiaries consistent with the Plan.

17

1    (e)    Open and maintain bank accounts on behalf of or in the name of the

2    Liquidation Trust.

3    (f)    Cause the Liquidation Trust to enter into any agreement or execute any

4    document or instrument required by or consistent with the Plan, the Confirmation Order, or

5    Liquidation Trust Agreement, and to perform all obligations thereunder.

6    (g)    Use, manage, sell, abandon, convert to cash, and/or otherwise transfer or

7    dispose of the Liquidation Trust Assets for the purpose of making Distributions, fully

8    consummating the Plan, and/or taking other actions as are necessary and expedient in the

9    Liquidation Trustee's discretion.

10    (h)    Retain, compensate, and employ licensed contractors, professionals, and

11    other Persons to undertake the P&A Work.

12    (i)    Protect and enforce the rights to the Liquidation Trust Assets (including any

13    Causes of Action) vested in the Liquidation Trust and Liquidation Trustee by the Liquidation

14    Trust Agreement and the Plan by any method deemed appropriate, including, without limitation,

15    by judicial proceedings or otherwise.

16    (j)    Investigate any Liquidation Trust Assets, including potential Causes of

17    Action, and any objections to Claims, and cause the Liquidation Trust to seek the examination of

18    any Person pursuant to Federal Rules of Bankruptcy Procedure.

19    (k)    Subject to Section 5.3.6 of the Plan, cause the Liquidation Trust to employ

20    and pay professionals, claims agents, disbursing agents, and other agents and third parties pursuant

21    to Liquidation Trust Agreement without further order of the Bankruptcy Court.

22    (l)    Cause the Liquidation Trust to pay all of its lawful expenses, debts, charges,

23    taxes, and other liabilities, and make all other payments relating to the Liquidation Trust Assets.

24    (m)    Cause the Liquidation Trust to pursue, commence, prosecute, compromise,

25    settle, dismiss, release, waive, withdraw, abandon, or resolve all Liquidation Trust Actions.

26    (n)    Assert or waive any defenses, claims, counterclaims and rights of setoff,

27    recoupment or privilege of the Debtor, its Estate or any of the Debtor's non-Debtor subsidiaries,

28

1  including any attorney-client privilege or work-product privilege attaching to any documents or

2  communications (whether written or oral).

3           (o)     Calculate and make all Distributions on behalf of the Liquidation Trust to

4  the Holders of Allowed Claims provided for in, or contemplated by, the Plan and the Liquidation

5  Trust Agreement.

6           (p)     Establish, adjust, and maintain reserves for Disputed Claims required to be

7  administered by the Liquidation Trust.

8           (q)     Cause the Liquidation Trust to withhold from the amount distributable to

9  any Person the maximum amount needed to pay any tax or other charge that the Liquidation

10  Trustee has determined, based upon the advice of agents and/or professionals, may be required to

11  be withheld from such Distribution under the income tax or other laws of the United States or of

12  any state or political subdivision thereof.

13           (r)     In reliance initially solely upon the Debtor's schedules and the official

14  claims register maintained in the Debtor's Chapter 11 Case, review, and where appropriate, cause

15  the Liquidation Trust to allow or object to Claims and Interests; and supervise and administer the

16  Liquidation Trust's commencement, prosecution, settlement, compromise, withdrawal, or

17  resolution of all objections to Disputed Claims required to be administered by the Liquidation

18  Trust.

19           (s)     In reliance upon the Debtor's schedules and the official Claims register

20  maintained in the Chapter 11 Case, maintain a register evidencing the beneficial interest herein

21  held by the Liquidation Trust Beneficiary and, in accordance with section 3.09 of the Liquidation

22  Trust, such register may be the official Claims register maintained in the Chapter 11 Case.

23           (t)     Cause the Liquidation Trust to make all tax withholdings, file tax

24  information returns, file and prosecute tax refund claims, make tax elections by and on behalf of

25  the Liquidation Trust, and file tax returns for the Liquidation Trust as a grantor trust under IRC

26  section 671 and Treasury Income Tax Regulation section 1.671-4 pursuant to and in accordance

27  with the Plan and Article VII of the Liquidation Trust Agreement, and pay taxes, if any, payable

28  for and on behalf of the Liquidation Trust; provided, however, that notwithstanding any other

1  provision of the Plan or Liquidation Trust Agreement, the Liquidation Trustee shall have no

2  personal responsibility for the signing or accuracy of the Debtor's income tax returns that are due

3  to be filed after the Effective Date or for any tax liability related thereto.

4        (u)    Cause the Liquidation Trust to send annually the Liquidation Trust

5  Beneficiary, in accordance with the tax laws, a separate statement stating the Liquidation Trust

6  Beneficiary's interest in the Liquidation Trust and the Liquidation Trust Beneficiary's share of the

7  Liquidation Trust's income, gain, loss, deduction or credit, and to instruct the Liquidation Trust

8  Beneficiary to report such items on the Liquidation Trust Beneficiary's federal tax returns;

9        (v)    Cause the Liquidation Trust to seek a determination of tax liability or

10  refund under section 505 of the Bankruptcy Code.

11        (w)    Cause the Liquidation Trust to establish such reserves for taxes,

12  assessments, and other expenses of administration of the Liquidation Trust as may be necessary

13  and appropriate for the proper operation of matters incident to the Liquidation Trust.

14        (x)    Cause the Liquidation Trust to purchase and carry all insurance policies that

15  the Liquidation Trustee deems reasonably necessary or advisable and to pay all associated

16  insurance premiums and costs out of the Liquidation Trust Assets.

17        (y)    If the Liquidation Trustee has a conflict or if any of the Liquidation Trust

18  Assets are situated in any state or other jurisdiction in which the Liquidation Trustee is not

19  qualified to act as trustee, nominate and appoint a Person duly qualified to act as trustee in such

20  state or jurisdiction in accordance with the terms of the Liquidation Trust Agreement.

21        (z)    Undertake all administrative functions of the Liquidation Trust, including

22  overseeing the winding down and termination of the Liquidation Trust.

23        (aa)    Undertake all administrative functions remaining in the Chapter 11 Case,

24  including reporting and making required payments of fees to the US Trustee and overseeing the

25  closing of the Chapter 11 Case.

26        (bb)    Exercise, implement, enforce, and discharge all of the terms, conditions,

27  powers, duties, and other provisions of the Plan, the Confirmation Order, and the Liquidation

28  Trust Agreement.

(cc)    Take all other actions consistent with the provisions of the Plan that the Liquidation Trustee deems reasonably necessary or desirable to administer the Liquidation Trust, including filing all motions, pleadings, reports, and other documents in connection with the administration and closing of the Chapter 11 Case.

71.    To the extent necessary to give full effect to the Liquidation Trustee's administrative rights and duties under the Plan, the Liquidation Trustee shall be deemed to be vested with all rights, powers, privileges, and authorities of (i) an appropriate corporate officer or manager of the Debtor under any applicable nonbankruptcy law and (ii) a "trustee" of the Debtor under Bankruptcy Code sections 704 and 1106.

72.    The Liquidation Trustee shall plug and abandon all wells formerly operated by the Debtor on the PDC Parcel and remove appurtenant structures, equipment, and flow lines so that the area in which the wells have been plugged and abandoned is clean, level, safe, and at a sufficient depth beneath the surface to accommodate residential development of the PDC Parcel (collectively, the "P&A Work").  The P&A Work shall be performed in strict accordance with all applicable laws and the terms and conditions of any applicable contracts or leases, and will be approved by the requisite regulatory authorities.  The P&A Work shall be undertaken by a licensed contractor engaged with the approval of the Court and pursuant to a work plan approved by the Court.

73.    Once the P&A Work is complete:

(a)    The Liquidation Trustee shall take whatever steps are necessary to fully terminate and disclaim all right, title, and interest in or to any portion of the PDC Parcel;

(b)    No Person other than PDC shall have any surface rights to the PDC Parcel or any oil or gas extraction rights within five hundred (500) feet of the surface of the PDC Parcel;

(c)    This Confirmation Order may be recorded in the applicable land records and relied upon by title insurers and subsequent purchasers with respect to the PDC Parcel; and

(d)    PDC and the Liquidation Trustee (acting as successor to the Debtor) will file a satisfaction of judgment with respect to the PDC Judgment, specifying that the monetary portion of the PDC Judgment has been satisfied and disclaiming any further rights under the PDC

Judgment (including but not limited to rights with respect to the PDC Parcel), and the Liquidation Trustee (acting as successor to the Debtor) will dismiss the Appeal with prejudice, with each party to bear its own fees and costs.

74.    The Liquidation Trustee shall enjoy all of the rights, powers, immunities, and privileges applicable to a Bankruptcy Code chapter 7 trustee with respect to limitations of liability.  The Liquidation Trustee may, in connection with the performance of the Liquidation Trustee's functions, in the Liquidation Trustee's sole and absolute discretion, consult with attorneys, accountants, advisors, and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such Persons, regardless of whether such advice or opinions were in writing.  Notwithstanding such authority, the Liquidation Trustee shall be under no obligation to consult with any such attorneys, accountants, advisors, or agents, and the Liquidation Trustee's determination not to do so shall not result in the imposition of liability on the Liquidation Trustee unless such determination is based on willful misconduct, gross negligence, or fraud.  Persons dealing with the Liquidation Trustee shall look only to the Liquidation Trust Assets to satisfy any liability incurred by the Liquidation Trustee to such Person in carrying out the terms of the Plan or the Liquidation Trust Agreement, and the Liquidation Trustee shall have no personal obligation to satisfy such liability.

75.    Upon completion of the P&A Work, the Liquidation Trustee will Distribute all remaining Cash of the Liquidation Trust to PDC, and PDC shall have the right, but not the obligation, to take any other remaining Liquidation Trust Assets.  To the extent PDC declines to take such remaining assets, the Liquidation Trust shall dispose of such remaining Liquidation Trust Assets, if any, in a manner the Liquidation Trustee determines to be reasonable, appropriate, and consistent with applicable law.

76.    The Liquidation Trustee and the Liquidation Trust shall be discharged or terminated, as the case may be, at such time as: (a) the P&A Work is complete; (b) the Liquidation Trustee determines that the pursuit of any Liquidation Trust Actions is not

1   likely to yield sufficient additional proceeds to justify further pursuit of such Liquidation

2   Trust Actions, and (c) all Distributions required to be made by the Liquidation Trust under

3   the Plan and the Liquidation Trust Agreement have been made, but in no event shall the

4   Liquidation Trust be terminated later than five (5) years from the Effective Date unless the

5   Court, upon motion made within the six-month period before such fifth anniversary (and,

6   in the event of further extension, by order of the Bankruptcy Court, upon motion made at

7   least six (6) months before the end of the preceding extension), determines that a fixed

8   period extension (not to exceed three (3) years, together with any prior extensions, unless

9   the Liquidation Trustee determines that any further extension would not adversely affect

10  the status of the Liquidation Trust as a liquidating trust for federal income tax purposes) is

11  necessary to facilitate or complete the recovery on, and liquidation of, the Liquidation

12  Trust Assets.  The Liquidation Trustee may, but is not required to, seek entry of a Court

13  order confirming the termination of the Liquidation Trust and/or the discharge of the

14  Liquidation Trustee; *provided*, *however*, that nothing in this Confirmation Order or Section

15  5.3.16 of the Plan shall be construed to eliminate or modify the requirement that the

16  Liquidation Trustee move for entry of a Final Decree upon satisfaction of the conditions

17  set forth in Section 5.7 of the Plan.  The pendency of any appeal of any order entered in the

18  Chapter 11 Case shall not preclude or limit the termination or discharge of the Liquidation

19  Trust or Liquidation Trustee, as applicable.  Upon termination of the Liquidation Trust,

20  any remaining Liquidation Trust Assets shall be distributed in accordance with Section

21  5.3.12 of the Plan.

22          77.     Notwithstanding anything else in the Plan, the Liquidation Trust

23  Agreement, or this Order, the Liquidation Trust's obligation to satisfy any Allowed Claim

24  fully and finally adjudicated on account of the four "Subject Claims" (as hereinafter

25  defined) shall be backstopped by PDC solely in its capacity as Liquidation Trust

26  Beneficiary in an amount not to exceed, in the aggregate (for all four Subject Claims),

27  three hundred thousand dollars ($300,000) (the "Backstop").  Specifically, if, as, and when

28  any of the Subject Claims become Allowed Claims and the Liquidation Trust does not

23

have sufficient funds to satisfy such Allowed Subject Claims in full and in cash, then the

Liquidation Trust Beneficiary shall transfer to the Liquidation Trust funds necessary to

satisfy such Allowed Subject Claims in full and in cash; *provided, however,* that under no

circumstances shall the Liquidation Trust Beneficiary's aggregate obligations under this

Backstop exceed $300,000 in total.  The Backstop does not create, alter, or affect any legal

relationship between PDC and any other party, including but not limited to the Liquidation

Trust.  The "Subject Claims" are the *Administrative Claim Arising Between October 14,*

*2020 and April 30, 2021* filed by John Kraemer [Claim No. 32-1 and Docket No. 461]; the

*Administrative Claim Arising Between October 14, 2020 and April 30, 2021* filed by

Christine Vetter Pate [Claim No. 33-1 and Docket No. 462]; the *Administrative Claim*

*Arising Between October 14, 2020 and April 30, 2021* filed by Susan Elizabeth Vetter

[Claim No. 34-1 and Docket No. 463]; and the *Administrative Claim Arising Between*

*October 14, 2020 and April 30, 2021* filed by Laughlin E. Waters [Claim No. 35-1 and

Docket No. 464].  Each of the Subject Claims is subject to a pending and unresolved

objection, and the claimants who filed the Subject Claims (the "Subject Claimants")

specifically acknowledge and agree that: (i) the Backstop is not an estimation of the

Subject Claims; (ii) the amount of the Backstop is in no way indicative of the value (if any)

or merit (if any) of the Subject Claims; (iii) Bridgemark explicitly disputes that any

amounts are owed on account of the Subject Claims; and (iv) the Backstop does not create,

alter, or affect any legal relationship between PDC and any other party, including but not

limited to the Subject Claimants.  The Subject Claimants nonetheless consent to entry of

this Order notwithstanding that the Subject Claims are unliquidated and unresolved.

78.    The failure to specifically identify in the Plan any potential or existing

Avoidance Action or Cause of Action as a Liquidation Trust Action is not intended to and

shall not limit the rights of the Liquidation Trust to pursue any such Avoidance Action or

Cause of Action.  Unless a Liquidation Trust Action is expressly waived, relinquished,

released, compromised, or settled in the Plan or any Final Order (including the

Confirmation Order), the Debtor expressly reserves such Liquidation Trust Action for later

1  resolution by the Liquidation Trust (including any Avoidance Actions or Causes of Action

2  not specifically identified or of which the Debtor may presently be unaware or that may

3  arise or exist by reason of additional facts or circumstances unknown to the Debtor at this

4  time or facts or circumstances that may change or be different from those the Debtor now

5  believes to exist).  As such, no preclusion doctrine, including the doctrines of *res judicata*,

6  collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable,

7  or otherwise), or laches will apply to any such Avoidance Actions or Causes of Action

8  upon or after Confirmation of the Plan based on the Plan or the Confirmation Order.  In

9  addition, the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor

10  or the Liquidation Trust is a plaintiff, defendant, or an interested party is fully reserved.

11       79.    The source of all Distributions and payments under the Plan will be the

12  Liquidation Trust Assets and the proceeds thereof, including, without limitation, the

13  Debtor's Cash on hand and proceeds from any sale or other disposition of the Debtor's

14  assets and prosecution of Liquidation Trust Actions.  The Liquidation Trustee may request

15  funding from time to time from the Liquidation Trust Beneficiary as the Liquidation

16  Trustee reasonably believes is necessary to meet expenses, claims and contingent liabilities

17  of the Liquidation Trust, and the Liquidation Trust Beneficiary, in its sole discretion, may

18  elect to provide or arrange for such additional funding on such terms as the Liquidation

19  Trust Beneficiary and the Liquidation Trustee may agree; *provided*, *however*, that the

20  aggregate amount of funding to be provided by the Liquidation Trust Beneficiary shall not

21  exceed ten percent (10%) of the Customer DIP Account Funds.

22       80.    The executory contract and unexpired lease provisions of Article VI of the

23  Plan are approved.  Except for any executory contracts or unexpired leases:  (i) that

24  previously were rejected by an order of the Bankruptcy Court, pursuant to section 365 of

25  the Bankruptcy Code; (ii) that have expired or terminated by their own terms on or before

26  the Effective Date; (iii) as to which a motion for approval of the assumption or rejection of

27  such contract or lease has been Filed and served prior to the Effective Date; or (iv) that

28  were previously sold, conveyed or otherwise assigned pursuant to Final Order, each

executory contract and unexpired lease entered into by the Debtor shall be assumed and

assigned to the Liquidation Trust pursuant to section 365 of the Bankruptcy Code as of the

Effective Date.  This Confirmation Order constitutes an order of the Court approving such

assumptions and assignments, pursuant to section 365 of the Bankruptcy Code, as of the

Effective Date.  The Cure Amount for each executory contract or unexpired lease assumed

pursuant to Section 6.1 of the Plan is $0.00.

81.    Without limiting the generality of Section 6.1 of the Plan, to the extent they

constitute executory contracts within the meaning of Bankruptcy Code section 365, the

following insurance policies of the Debtor shall be assumed and assigned to the

Liquidation Trust as of the Effective Date, and no Cure Amounts shall be owing or payable

by the Debtor or the Liquidation Trust in connection with such assumption:

(i) employment practices liability policy (Policy No. EPL2560083A) with Mt. Vernon Fire

Insurance; (ii) site pollution liability policy (Policy No. EIL1900019302) with Axis

Surplus Insurance Co.; (iii) general liability policy (Policy No. WCENCGL000084901)

with Clear Blue Specialty Insurance Co.; (iv) workers' compensation policy (Policy No.

1980858-2020) with State Compensation Insurance Fund; and (v) commercial property

policy (Policy No. CPS7379651) with Scottsdale Insurance Company.

82.    The Liquidation Trust shall succeed to the Debtor's rights and obligations

under any and all surety bonds, indemnity bonds, and similar contracts in favor of, or that

benefit, the Debtor.  Subject to payment of any past due premiums on the Effective Date

by the Debtor or the Liquidation Trust, all such contracts shall be reinstated on the

Effective Date and the Liquidation Trust shall pay any premiums due under such contracts

from and after the Effective Date.

83.    The Liquidation Trustee shall make all Distributions under the Plan and

such Distributions shall be in accordance with the Plan.  Whenever any payment or

distribution to be made under the Plan shall be due on a day other than a Business Day,

such payment or distribution shall instead be made, without interest, by the Liquidation

Trustee (or the Liquidation Trustee's agent) on the immediately following Business Day.

84.     Any objections to Claims shall be filed on or before the Objection Deadline (as may be extended pursuant to the Plan).

85.     Except as otherwise provided in the Plan, requests for payment of Administrative Expenses arising on or after May 1, 2021, other than for which a request and/or proof of Claim has previously been filed, must be filed and served on the Liquidation Trust and the U.S. Trustee by no later than thirty (30) calendar days after the Effective Date.  Holders of Administrative Expenses that are required to, but do not, file and serve a request for payment of such Administrative Expenses by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Expenses against the Debtor or the Liquidation Trust.  The bar date for all Administrative Expenses arising on or prior to April 30, 2021 has already passed.

86.     Notwithstanding the foregoing paragraph, Professional Persons requesting compensation or reimbursement of expenses incurred after the Petition Date and prior to the Effective Date must file and serve, on all parties entitled to notice thereof, a fee application for final allowance of compensation and reimbursement of expenses no later than thirty (30) calendar days after the Effective Date and any objections to such applications must be made in accordance with applicable rules of the Bankruptcy Court. Professional Fee Claims shall be paid in accordance with the terms of the order(s) authorizing such payments as soon as practicable after such obligation to pay becomes due unless otherwise agreed upon by the applicable Professional.

87.     From and after the Effective Date, the Liquidation Trustee shall in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professionals thereafter incurred by the Liquidation Trust.

88.     The following release, injunction, and exculpation provisions set forth in Article IX of the Plan are hereby approved and authorized in their entirety:

> **9.1.1  Generally.  Unless otherwise provided in the Plan or the Confirmation Order, all injunctions and stays provided for in the Chapter 11 Case pursuant to sections 105 and 362 of the Bankruptcy**

Code or otherwise in effect on the date of entry of the Confirmation Order, shall remain in full force and effect until the Effective Date. From and after the Effective Date, all Persons are permanently enjoined from, and restrained against, commencing or continuing in any court any suit, action or other proceeding, or otherwise asserting any claim or interest, seeking to hold (i) the Liquidation Trust or the Estate, or (ii) the property of the Debtor or the Estate, liable for any Claim, obligation, right, interest, debt or liability that has been released pursuant to the Plan.

9.1.2  **Non-Discharge of Debtor; Injunction.**  In accordance with section 1141(d)(3) of the Bankruptcy Code, this Plan does not discharge the Debtor.  Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtor.  As such, no Person may receive any payment from, or seek recourse against, any assets that are to be distributed under this Plan other than assets required to be distributed to that Person under the Plan.  As of the Effective Date, all parties are precluded from asserting against any property to be distributed under this Plan any Claims, rights, causes of action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in this Plan or the Confirmation Order.

9.2  **Exculpation.**  As of and subject to the occurrence of the Effective Date, for good and valuable consideration, including the consideration provided under the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act taken or omitted to be taken, on or after the Petition Date, in connection with, or related to, the formulation, preparation, dissemination, implementation, administration, Confirmation or Consummation of the Plan or any contract, instrument, waiver, release or other agreement or document created or entered into, in connection with the Plan, or any other act taken or omitted to be taken in connection with the Chapter 11 Case or the Debtor up to and including the Effective Date; provided, however, that the foregoing provisions of this subsection shall have no effect on the liability of any Person that results from any such act or omission that is determined in a Final Order to have constituted willful misconduct or actual fraud.  For the avoidance of doubt, the scope of the exculpation provided under this Section 9.2 does not include Hall or any Hall-Related Parties (as defined in the Settlement Agreement). Notwithstanding anything in the Plan to the contrary, no Person serving as Liquidation Trustee shall have or incur any personal liability as the manager, member or officer of the Debtor or Liquidation Trust for any act taken or omission made in connection with the wind-up or dissolution of the Debtor or any nondebtor subsidiary or affiliate; provided, however, that the foregoing shall have no effect on the liability of the Liquidation Trustee that results from any such act or omission that is determined in a Final Order to have constituted willful misconduct or actual fraud.

9.3  **Settlement Agreement Releases.**  Nothing in this Plan or the Confirmation Order shall be deemed to alter, impair, modify, or diminish in any way the releases set forth in Section 5 of the Settlement Agreement, all of which are incorporated herein by reference and shall

**remain in effect in accordance with the terms of the Settlement Agreement and the Approval Order.**

89.     All fees payable on or before the Effective Date pursuant to section 1930 of title 28 of the United States Code shall be paid by the Debtor on or before the Effective Date or as soon as practicable thereafter.  From and after the Effective Date, the Liquidation Trust shall pay the fees assessed against the Estate until such time as the Chapter 11 Case is closed, dismissed or converted.  In addition, the Liquidation Trust shall file post-confirmation quarterly reports in conformity with the U.S. Trustee guidelines until entry of an order closing or converting the Chapter 11 Case.  For the avoidance of doubt, the automatic vesting of the Liquidation Trust Assets in the Liquidation Trust pursuant to the Plan shall not be deemed a disbursement for purposes of 28 U.S.C. § 1930.

90.     The Liquidation Trustee shall file with the Bankruptcy Court a notice of the occurrence of the Effective Date, which shall include a copy of this Confirmation Order, no later than five (5) Business Days after the conditions in Article XII of the Plan have been satisfied or waived pursuant to Article XII of the Plan.  The Liquation Trustee shall serve, by U.S. Mail, notice of occurrence of the Effective Date pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on (i) known Holders of Claims and Interests, (ii) parties that requested notice in accordance with Bankruptcy Rule 2002, and (iii) all other parties on whom the notice of the Plan and the Confirmation Motion were served.  Notice need not be given or served to any Person for whom any prior notices sent during this Chapter 11 Case have been returned as undeliverable, unless the Debtor has been informed, on or before the date on which the notice of Effective Date is served, in writing by such Person of that Person's new address, or unless previous mail to such address has been returned with a valid forwarding address on or before the date on which the notice Effective Date notice is served, in which case the notice of Effective Date shall be mailed to such forwarding address.  The notice described herein is adequate and appropriate and no other or further notice is necessary.

29

91.     Notwithstanding any other provisions of the Plan, this Confirmation Order or any other order of the Bankruptcy Court, on the Effective Date, all rights and obligations of any party related to (i) the Debtor's current surety bonds issued by Argonaut Insurance Company ("Argo" and the surety bonds, the "Argo Bonds"); (ii) any indemnity agreements setting forth Argo's rights against the Debtor, and the Debtor's obligations, among other things, to pay premiums and indemnify Argo from and against loss, costs or expense that Argo may incur, in each case, on account of the issuance of any Argo Bonds on behalf of the Debtor (the "Argo Indemnity Agreements"); (iii) any Argo collateral, including, without limitation, any letters of credit and the proceeds thereof (the "Argo Collateral"); and (iv) agreements governing Argo Collateral, if any, in connection with any of the Argo Bonds (the "Argo Collateral Agreements") (the Argo Bonds, the Argo Indemnity Agreements, the Argo Collateral and the Argo Collateral Agreements, collectively, the "Argo Bond Program", and the obligations arising therefrom, the "Argo Bond Obligations") shall be reaffirmed and ratified, shall continue in full force and effect, and shall not be discharged, enjoined, impaired or released by the Plan in any way.  For the avoidance of doubt, nothing in the Plan, this Confirmation Order, the Asset Purchase Agreement or otherwise, including, without limitation, Article IX of the Plan, shall bar, alter, limit, impair, release or modify or enjoin any aspect of the Argo Bond Program or any of the Argo Bond Obligations.  The provisions of this paragraph and paragraph 92 of this Confirmation Order are specifically excluded from any release, exculpation and injunction provisions of the Plan, including, without limitation, Article IX of the Plan. Nothing in this Order or the Plan shall alter, limit, modify or release any rights and claims that Argo has or may have against any non-Debtor in respect of the Argo Bond Obligations.

92.     In order to facilitate and effectuate the terms of the Plan, and to preserve the Liquidation Trust Assets for the benefit of the Liquidation Trust Beneficiary, the Argo Bond Program and all Argo Bond Obligations shall be treated as if the Debtor's Chapter 11 case had not been commenced, and shall continue as obligations of the Liquidation Trustee

(as successor-in-interest to the Debtor) and otherwise encumber and be secured by the

Liquidation Trust Assets, until such time as all Argo Bonds have been released, and all

Argo Bond Obligations have been fully paid and performed.  In furtherance thereof, the

Liquidation Trust hereby assumes, and shall pay and perform any and all payment and

performance obligations that are or may be covered by any Argo Bond, including, without

limitation, any P&A Work, and agrees to indemnify and hold harmless Argo from and

against any and all loss, cost and expense, including, without limitation, attorneys' fees, of

Argo under the Argo Bonds, the Argo Bond Program and/or in respect of the Argo Bond

Obligations.  The Liquidation Trustee shall execute any and all documents as may be

necessary, in Argo's discretion, to further evidence the continuation of the Argo Bond

Program, and the indemnity obligations to Argo as set forth herein, including, any riders to

the Argo Bonds naming the Liquidation Trust and/or the Liquidation Trustee as an

additional principal under the Argo Bonds; provided, however, that nothing in the

foregoing shall be deemed to alter, limit, modify or expand any such Argo Bond

Obligations.  Nothing in the Confirmation Order or the Plan shall be deemed to authorize

the substitution of any principal under any Argo Bond.  In addition, the Liquidation Trust

Beneficiary is specifically benefitted by the continuation of the Argo Bond Program, and

agrees that the Liquidation Trust's obligations to indemnify and hold harmless Argo from

and against any loss, costs and expense incurred by Argo under the Bonds and any riders

thereto shall be secured by all of the Liquidation Trust Beneficiary's rights and interests

under the Liquidation Trust Agreement.

93.    Notwithstanding the entry of the Confirmation Order or the occurrence of

the Effective Date, the Bankruptcy Court shall retain jurisdiction and power over the

Chapter 11 Case and any of the proceedings related to the Chapter 11 Case pursuant to

section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted

by applicable law, including, without limitation, such jurisdiction and power as appropriate

to ensure that the purpose and intent of the Plan are carried out.

94.     The failure specifically to include or to refer to any particular article, section, or provision of the Plan or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, and such article, section, or provision shall have the same validity, binding effect, and enforceability as every other article, section, or provision of the Plan, it being the intent of the Court that the Plan be confirmed in its entirety and that all Plan-related documents be approved.

95.     This Confirmation Order shall control and take precedence in the event of any inconsistency between this Confirmation Order and any provision of the Plan, the Liquidation Trust Agreement, or any related document.

96.     Notwithstanding Bankruptcy Rules 3020(e), 6004(h), and 7062, to the extent applicable, there is no reason for delay in the implementation of this Confirmation Order and, thus, this Confirmation Order shall be effective and enforceable immediately upon entry.

97.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

###

Date: August 18, 2021

Theodor C. Albert
United States Bankruptcy Judge